1  Douglas N. Letter, *General Counsel* (D.C. Bar No. 253492)
2  Todd B. Tatelman, *Deputy General Counsel* (VA Bar No. 66008)
   Megan Barbero, *Associate General Counsel* (MA Bar No. 668854)
3  Kristin A. Shapiro, *Assistant General Counsel* (D.C. Bar No. 1007010)
   Brooks M. Hanner, *Assistant General Counsel* (D.C. Bar No. 1005346)
4  Sarah E. Clouse, *Attorney* (MA Bar No. 688187)

5  OFFICE OF GENERAL COUNSEL
   U.S. HOUSE OF REPRESENTATIVES
6  219 Cannon House Office Building
   Washington, D.C.  20515
7  (202) 225-9700 (telephone)
   (202) 226-1360 (facsimile)
8  douglas.letter@mail.house.gov

9  *Counsel for Amicus Curiae the United States House of Representatives*

10              **UNITED STATES DISTRICT COURT**
             **NORTHERN DISTRICT OF CALIFORNIA**
11                   **OAKLAND DIVISION**

12

13  SIERRA CLUB and SOUTHERN BORDER         Case No. 4:19-cv-00892-HSG
    COMMUNITIES COALITION,
14                                          P.I. Hearing Date: May 17, 2019
                          *Plaintiffs*,     Time: 10:00 AM
15
            v.                              **BRIEF OF THE U.S. HOUSE OF**
16                                          **REPRESENTATIVES AS *AMICUS***
    DONALD J. TRUMP, President of the United **CURIAE* IN SUPPORT OF**
17  States, in his official capacity, *et al.*, **PLAINTIFFS' MOTION FOR A**
                                            **PRELIMINARY INJUNCTION**
18                        *Defendants.*

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION PROHIBITING
DEFENDANTS FROM SPENDING FUNDS ON A BORDER WALL WITHOUT A VALID
APPROPRIATION .............................................................................................................. 3

    A.  Congress Did Not Appropriate $8.1 Billion for a Border Wall .......................................... 4

    B.  Defendants' Asserted Authority Does Not Excuse Their Expenditure of Funds on a
        Border Wall in the Absence of a Valid Appropriation ....................................................... 8

        1.  *Defendants' Transfer and Expenditure of $2.5 Billion under Section 284 on a
            Border Wall Violates the Appropriations Clause* ....................................................... 8

        2.  *Defendants' Expenditure of $3.6 Billion under Section 2808 on a Border Wall
            Violates the Appropriations Clause* ........................................................................... 11

CONCLUSION ..................................................................................................................... 17

1

2

# TABLE OF AUTHORITIES

**Cases**

*Circuit City Stores, Inc. v. Adams,*
  532 U.S. 105 (2001) ........................................................................... 14, 15

*City & Cty. of San Francisco v. Trump,*
  897 F.3d 1225 (9th Cir. 2018) ...................................................................... 3, 4

*Delta Data Sys. Corp. v. Webster,*
  744 F.2d 179 (D.C. Cir. 1984) ............................................................................ 4

*Gordon v. Holder,*
  721 F.3d 638 (D.C. Cir. 2013) .................................................................... 3, 17

*Hernandez v. Sessions,*
  872 F.3d 976 (9th Cir. 2017) ....................................................................... 3, 17

*I.N.S. v. Phinpathya,*
  464 U.S. 183 (1984) .......................................................................................... 16

*Schneider v. Smith,*
  390 U.S. 17 (1968) ........................................................................................... 16

*U.S. House of Representatives v. Mnuchin,*
  1:19-cv-00969 (D.D.C.) ..................................................................................... 3

*United States v. Dreyer,*
  804 F.3d 1266 (9th Cir. 2015) .......................................................................... 12

*U.S. Dep't of the Navy v. FLRA,*
  665 F.3d 1339 (D.C. Cir. 2012) ................................................................ 1, 3, 4

**Constitution**

U.S. Const. art. I, § 9, cl. 7 ..................................................................................... 1

**Statutes**

8 U.S.C. § 1521 ..................................................................................................... 13

8 U.S.C. § 1522 ..................................................................................................... 13

10 U.S.C. § 284 ............................................................. 1, 2, 3, 4, 8, 9, 11, 15, 17

10 U.S.C. § 2801 ......................................................................................... 11, 14

ii

10 U.S.C. § 2808 ........................................................... 2, 3, 4, 8, 11, 12, 14, 15, 16, 17

31 U.S.C. § 1532 ............................................................................................................ 9

31 U.S.C. § 9705 .......................................................................................................... 12

Consolidated Appropriations Act, 2019, Pub L. No. 116-6 (2019)
    (to be printed at 133 Stat. 13)........................................................................... 7, 13

Department of Defense and Labor, Health and Human Services, and Education
    Appropriations Act, 2019 and Continuing Appropriations Act, 2019, Pub. L. No.
    115-245 (2018) (to be printed at 132 Stat. 2981)............................................. 8, 9

Further Additional Continuing Appropriations Act, 2019, Pub. L. No. 116-5 (2019)
    (to be printed at 133 Stat. 10)............................................................................... 6

National Emergencies Act, 50 U.S.C. § 1601 et seq................................................... 12

Posse Comitatus Act, 18 U.S.C. § 1385...................................................................... 12

Pub. L. No. 93-238, 87 Stat. 1026 (1974) .................................................................. 10

**Other Authorities**

*The Federalist No. 51* (James Madison) ........................................................................ 1

Further Additional Continuing Appropriations Act, 2019, H.R. 695, 115th Cong. (2018)............ 5

H. Rep. No. 93-662 (1973)................................................................................... 10, 11

H. Rep. No. 94-238 (1975)........................................................................................ 16

H. Rep. 99-106 (1985) ......................................................................................... 10, 11

S. Rep. 94-1168 (1976) ............................................................................................. 16

**INTRODUCTION**

The United States House of Representatives submits this *amicus* brief in support of plaintiffs' motion for a preliminary injunction.  The House has a compelling institutional interest in the Court's grant of expedited relief prohibiting defendants from spending federal funds without a valid appropriation.  This case arises out defendants' flagrant disregard for the bedrock constitutional principle that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."  U.S. Const. art. I, § 9, cl. 7.  The Appropriations Clause vests Congress with "exclusive power over the federal purse," and it is "one of the most important authorities allocated to Congress in the Constitution's 'necessary partition of power among the several departments.'"  *U.S. Dep't of the Navy v. FLRA*, 665 F.3d 1339, 1346 (D.C. Cir. 2012) (quoting *The Federalist No. 51* (James Madison)).  Notwithstanding this clear constitutional command, on the same day that President Trump signed legislation providing only $1.375 billion for the construction of barriers along the southern border, he announced that his Administration would in fact spend up to $8.1 billion.[1]  To support this expenditure, President Trump declared a national emergency, despite acknowledging that whether the amount spent is "$8 billion or $2 billion or $1.5 billion, it's going to build a lot of wall" and stating that "I didn't need to do this."[2]  This decision to build a border wall in the absence of a valid appropriation usurps Congress's authority under the Appropriations Clause.

Attempting to paper over its unconstitutional expenditure of funds, the Administration incorrectly asserts the authority to spend billions of dollars on a border wall under three separate statutory provisions: (1) "[a]bout $601 million from the Treasury Forfeiture Fund"; (2) "[u]p to $2.5 billion under the Department of Defense funds transferred for Support for Counterdrug Activities," 10 U.S.C. § 284; and (3) "[u]p to $3.6 billion reallocated from Department of Defense

---

[1] *See Fact Sheet: President Donald J. Trump's Border Security Victory*, White House (Feb. 15, 2019) (Border Victory Fact Sheet), http://tinyurl.com/WHBorderVictory.

[2] *Remarks by President Trump on the National Security and Humanitarian Crisis on Our Southern Border*, White House (Feb. 15, 2019, 10:39 AM) (Feb. 15 Rose Garden Remarks), http://tinyurl.com/TrumpRoseGardenRemarks; *see* Proclamation No. 9844, 84 Fed. Reg. 4949 (Feb. 20, 2019) (National Emergency Proclamation).

military construction projects under the President's declaration of a national emergency," 10 U.S.C. § 2808.[3]  As discussed below, two of the provisions on which the Administration purports to rely to spend up to $6.1 billion provide no authority for such expenditures – and, absent a valid Congressional appropriation, those expenditures violate the Appropriations Clause.

*First*, defendants' expenditure of up to $2.5 billion on the construction of a border wall under 10 U.S.C. § 284 violates the Appropriations Clause.  Section 284 authorizes the Secretary of Defense to construct fences to block drug smuggling corridors along the border.  The House understands that most of the fiscal year 2019 funding Congress appropriated for such purposes has already been used.  Thus, defendants plan to spend nearly $2.5 billion that Congress appropriated for *other* purposes on the construction of a border wall under the section – and defendants have already transferred $1 billion for such construction and awarded contracts against this funding.  Defendants claim that section 8005 of the 2019 Department of Defense Appropriations Act authorizes the transfer of these funds.  However, that section only authorizes transfers for "higher priority items, based on unforeseen military requirements" and "in no case where the item for which funds requested has been denied by Congress."  In this case, the transfers are not based on "unforeseen military requirements," and President Trump's request for up to $5 billion for a border wall was "denied by Congress."  Notably, section 8005 also excludes transfers for purposes of "military construction."

*Second*, defendants' expenditure of up to $3.6 billion on the construction of a border wall under 10 U.S.C. § 2808 violates the Appropriations Clause.  Section 2808(a) provides that, when the President declares a national emergency, the Secretary of Defense may redirect unobligated military construction funds to other projects subject to three specific limitations: (1) there must be a national emergency "that requires the use of the armed forces," (2) the funding must be spent on a "military construction project," and (3) the project must be "necessary to support [the] use of the armed forces."  Here, the Administration's border wall fails all three conditions: there is no emergency that requires the use of the armed forces, and, even if there were, a border wall is not necessary to support the use of the armed forces.  In addition, a border wall is not a "military

---

[3] *See* Border Victory Fact Sheet, http://tinyurl.com/WHBorderVictory.

1    construction project."  As noted above, the justification for defendants' transfer of funds under

2    section 8005 *depends* on the argument that the border wall does *not* constitute military construction.

3         Underscoring the Administration's disregard for the Constitution, Mick Mulvaney, Acting

4    White House Chief of Staff and Director of the Office of Management and Budget, recently stated

5    that the wall "is going to get built with or without Congress."[4]  The Appropriations Clause dictates,

6    however, that defendants may only spend money to build a wall *with* Congress.  Even the monarchs

7    of England long ago lost the power to raise and spend money without the approval of Parliament.[5]

8         Plaintiffs are therefore very likely to succeed on the merits of their claims that defendants

9    are unconstitutionally transferring and spending funds under sections 284 and 2808(a) on the

10   construction of a border wall.  Because "the Constitution is the ultimate expression of the public

11   interest," *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) (quotation marks omitted), and

12   "all citizens have a stake in upholding the Constitution," *Hernandez v. Sessions*, 872 F.3d 976, 996

13   (9th Cir. 2017) (quotation marks omitted), this Court should issue a preliminary injunction

14   prohibiting defendants from spending funds on the construction of a border wall in the absence of

15   a valid Congressional appropriation.[6]

16                                          **ARGUMENT**

17   **THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION PROHIBITING DEFENDANTS FROM SPENDING FUNDS ON A BORDER WALL WITHOUT A VALID APPROPRIATION**

18

19        "Decisions of the Supreme Court and this Court have strictly enforced the constitutional

20   requirement . . . that uses of appropriated funds be authorized by Congress."  *FLRA*, 665 F.3d at

21   1342; *see also City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018).  Indeed,

---

23        [4] Andrew O'Reilly, *Mulvaney Says Border Wall Will Get Built, 'With or Without' Funding from Congress*, Fox News (Feb. 10, 2019), https://tinyurl.com/MulvaneyFoxNewsSunday.

24        [5] *See The Civil War: The Long Parliament*, U.K. Parliament,

25   https://tinyurl.com/UKLongParliament (last visited Apr. 10, 2019) (discussing Parliament's condemnation of King Charles I's "personal rule" from 1629-1640 and Parliament's declaration in

26   the 1640s that nonparliamentary taxation would be illegal).

27        [6] On April 5, 2019, the House filed suit in the U.S. District Court for the District of Columbia, seeking redress for its injury caused by defendants' unconstitutional actions.  *See U.S. House of Representatives v. Mnuchin*, 1:19-cv-00969 (D.D.C.).  The House submits this amicus

28   brief in further defense of its constitutional authority.

the Executive Branch cannot buy so much as a single plank of wood without a valid appropriation. *See FLRA*, 665 F.3d at 1346-47.  In considering whether defendants' proposed expenditures comply with Congress's specific statutory limitations, "it is the court that has the last word and it should not shrink from exercising its power." *Delta Data Sys. Corp. v. Webster*, 744 F.2d 197, 202 (D.C. Cir. 1984) (quotation marks and punctuation omitted); *accord FLRA*, 665 F.3d at 1349.  As explained below, defendants' expenditure of funds under sections 284 and 2808 on the construction of a border wall has not been authorized by Congress.  In the absence of a valid Congressional appropriation, these transfers and expenditures violate the Appropriations Clause.  The Court should enjoin defendants' unconstitutional activities.  Plaintiffs' request for preliminary injunctive relief is particularly urgent given that defendants have begun awarding contracts to construct a border wall without a valid appropriation.

## A.  Congress Did Not Appropriate $8.1 Billion for a Border Wall

Congress decidedly rejected President Trump's request for $5 billion to build a border wall. Indeed, Congress's rejection of President Trump's request precipitated the longest Federal Government shutdown in history.  In the absence of a valid appropriation, the Administration's expenditure of funds on the construction of a border wall plainly violates the Appropriations Clause. *See City & Cty. of San Francisco*, 897 F.3d at 1231; *FLRA*, 665 F.3d at 1342.

Specifically, for fiscal year 2019, President Trump officially requested from Congress "$1.6 billion to construct approximately 65 miles of border wall."[7]  Around July 2018, however, President Trump informally "pressed Republicans to give him $5 billion as a down payment on his wall."[8]  President Trump never amended his formal budget request, nor did he provide any additional details concerning his informal request for $5 billion.

---

[7] Office of Mgmt. & Budget, *Fiscal Year 2019: Efficient, Effective, Accountable: An American Budget* 57 (2018), http://tinyurl.com/WHFY19BudgetRequest; *see also Stronger Border Security: 2019 Budget Fact Sheet*, White House (Feb. 2018), http://tinyurl.com/WHFY18BudgetFactSheet (noting request for "1.6 billion for new border wall in locations identified by the Border Patrol as necessary to obtain operational control of the border and impede illegal crossings").

[8] Rachel Bade, *Immigration Storm Bears Down on Republicans*, Politico (July 2, 2018, 5:05 AM), http://tinyurl.com/PoliticoImmigrationStorm.

4

The initial Senate appropriations bill for DHS included $1.6 billion for approximately 65 miles of border fencing – the figure officially requested by the White House.[9]  S. 3109, 115th Cong., tit. 2 (as reported by S. Comm. on Appropriations, June 21, 2018).  Democrats indicated that they would agree to pass the measure "so long as the language d[id] not *require* [the $1.6 billion] to be spent on the wall."[10]  Near the end of the 115th Congress, however, Congress and the President reached an impasse on appropriations for a border wall.

On December 11, 2018, President Trump held a televised meeting with Speaker of the House (then-Minority Leader) Nancy Pelosi and Senate Minority Leader Chuck Schumer to negotiate fiscal year 2019 appropriations for a border wall.[11]  At that meeting, President Trump reiterated his demand for $5 billion for a border wall.[12]  He also warned that "[i]f we don't get what we want one way or the other, whether it's through you, through a military, through anything you want to call, I will shut down the government, absolutely."[13]  He declared, "I am proud to shut down the government for border security."[14]

On December 19, 2018 – two days before funding for nine federal departments, including DHS, was set to expire – the Senate passed a continuing resolution to fund the Government through February 8, 2019.[15]  The Senate resolution did not include funding for a border wall.[16]  The next day, the House approved a short-term funding bill appropriating $5.7 billion for "U.S. Customs and Border Protection – Procurement, Construction, and Improvements." [17]   However, because

---

[9]*See* Lindsey McPherson, *$1.6 Billion for Border Security, Not Just Wall, Could Be Agreed To, Hoyer Says*, Roll Call (Dec. 4, 2018, 12:46 PM), http://tinyurl.com/RollCallDec18.

[10] *Id.* (emphasis added).

[11] Aaron Blake, *Trump's Extraordinary Oval Office Squabble with Chuck Schumer and Nancy Pelosi, Annotated*, Wash. Post (Dec. 11, 2018), https://tinyurl.com/WaPoOvalOfficeSquabble.

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *See* Further Additional Continuing Appropriations Act, 2019, H.R. 695, 115th Cong. § 101(1) (Dec. 19, 2018).

[16] *See id.*

[17] *See* H.R. 695, 115th Cong. § 141 (Dec. 20, 2018).

"Democrats w[ere] not . . . willing to support \$5 billion in wall funding," the Senate never considered the House's version of the legislation.[18]

Consistent with President Trump's threats, appropriations for a substantial portion of the Federal Government expired on December 21, 2018, *see* Pub. L. No. 115-298 (2018) (to be published at 132 Stat. 4382), beginning the longest Federal Government shutdown in history.  On January 2, 2019, Speaker Pelosi stated that the incoming House would provide "nothing for the wall."[19]  On January 8, 2019, President Trump addressed the nation from the Oval Office, stating that "there is a growing humanitarian and security crisis at our southern border."[20]  He stated that his "administration ha[d] presented Congress with a detailed proposal to secure the border," including "\$5.7 billion for a physical barrier."[21]  He implored Congress to "do[] its job" and "pass a bill that ends this crisis."[22]

On January 25, 2019, after it became apparent that the Government's closure was causing serious disruption throughout the nation, President Trump agreed to end the shutdown by signing a continuing resolution to fund the Government through February 14, 2019.[23]  Between January 25 and February 14, a bipartisan conference committee was established to negotiate a deal to fund the

---

[18] *See* Bo Erickson et al., *House Passes Spending Bill with \$5 Billion Border Wall Funding, Increasing Likelihood of Shutdown*, CBS News (Dec. 20, 2018, 9:00 PM), http://tinyurl.com/CBSHousePassesBill.

[19] Tal Axelrod, *Pelosi on Negotiations with Trump: "Nothing for the Wall*," Hill (Jan. 2, 2019, 5:48 PM), http://tinyurl.com/HillNothingForWall.

[20] *Full Transcripts: Trump's Speech on Immigration and the Democratic Response*, N.Y. Times (Jan. 8, 2019) (National Address Transcript), http://tinyurl.com/TrumpNationalAddress.

[21] *Id.*; *see also* Letter from Russell T. Vought, Acting Dir., Office of Mgmt. & Budget, to Senator Richard Shelby, Chairman, Senate Comm. on Appropriations (Jan. 6, 2019), http://tinyurl.com/ShelbyLettertoApprops.  The process for submitting and amending budget and appropriations requests to Congress is subject to rigorous and well-established guidelines and procedures that were not followed here.  *See generally* Office of Mgmt. & Budget, OMB Circular No. A-11, *Preparation, Submission, and Execution of the Budget* (2018), https://tinyurl.com/OMBCircularA11; U.S. Gov't Accountability Office, GAO-16-464SP, *Principles of Federal Appropriations Law* 2-15 (4th ed. 2016) (noting "long and exhaustive administrative process of budget preparation and review"), https://tinyurl.com/GAORedBook.

[22] National Address Transcript, http://tinyurl.com/TrumpNationalAddress.

[23] *See* Further Additional Continuing Appropriations Act, 2019, Pub. L. No. 116-5 (2019) (to be printed at 133 Stat. 10); Kevin Liptak, *Flight Delays Pile Pressure on Trump Amid Shutdown*, CNN (Jan. 25, 2019, 12:17 PM), http://tinyurl.com/CNNFlightDelays.

Government for fiscal year 2019.[24]  The committee ultimately reached a compromise that included $1.375 billion for fencing along the border.[25]

On February 14, 2019, Congress passed the Consolidated Appropriations Act, 2019.  Pub L. No. 116-6 (2019) (to be printed at 133 Stat. 13).  The Act appropriated $1.375 billion for construction of fencing in the Rio Grande Valley area of the border but provided that in that area "[n]one of the funds made available by this Act or prior Acts are available for the construction of pedestrian fencing – (1) within the Santa Ana Wildlife Refuge; (2) within the Bentsen-Rio Grande Valley State Park; (3) within La Lomita Historical Park; (4) within the National Butterfly Center; or (5) within or east of the Vista del Mar Ranch tract of the Lower Rio Grande Valley National Wildlife Refuge."  *Id.* § 231, 133 Stat. 28.  Congress limited the funding for new fencing to "operationally effective designs" that had been deployed as of 2017, "such as currently deployed steel bollard designs, that prioritize agent safety."  *Id.* § 230(b), 133 Stat. 28.  No other funding was designated for the construction of a border wall.

On February 15, 2019, President Trump signed the 2019 Consolidated Appropriations Act into law.[26]  Yet, on the same day he signed the Act, President Trump expressed his dissatisfaction with the $1.375 billion that Congress had appropriated and announced that his Administration would instead spend up to $8.1 billion on construction of a border wall.[27]  To use the words of Mr. Mulvaney, the Administration decided to build the wall "without Congress."[28]

Simply put, this is emphatically not how the Constitution designed the appropriations process to operate: the Appropriations Clause dictates that defendants may only spend funds to build a border wall *with* Congress.  Because Congress has not appropriated $8.1 billion for the

---

[24] *See* Jacob Pramuk, *Trump Signs Bill to Temporarily Reopen Government after Longest Shutdown in History*, CNBC (Jan. 25, 2019, 9:58 PM), https://tinyurl.com/CNBCTrumpSignsBill.

[25] Senate Appropriations Comm., *Summary of DHS Fiscal Year 2019 Appropriations Agreement*, 2 (2019), http://tinyurl.com/SenateFY19AppropsSummary.

[26] *See Statement by the President*, White House (Feb. 15, 2019), https://tinyurl.com/WHTrumpStatement.

[27] *See* Border Victory Fact Sheet, http://tinyurl.com/WHBorderVictory; Feb. 15 Rose Garden Remarks, http://tinyurl.com/TrumpRoseGardenRemarks.

[28] Andrew O'Reilly, *Mulvaney Says Border Wall Will Get Built, 'With or Without' Funding from Congress*, Fox News (Feb. 10, 2019), https://tinyurl.com/MulvaneyFoxNewsSunday.

construction of a border wall, defendants may not constitutionally spend this amount on such construction.

### B. Defendants' Asserted Authority Does Not Excuse Their Expenditure of Funds on a Border Wall in the Absence of a Valid Appropriation

Defendants attempt to avoid the constitutional requirements by asserting the authority to spend "[u]p to $2.5 billion under the Department of Defense funds transferred for Support for Counterdrug Activities," 10 U.S.C. § 284, and "[u]p to $3.6 billion reallocated from Department of Defense military construction projects under the President's declaration of a national emergency," 10 U.S.C. § 2808.[29]   However, these statutory provisions do not authorize such expenditures, and therefore provide no justification for the Administration's blatant circumvention of Congress's constitutional authority over appropriations.

#### 1. Defendants' Transfer and Expenditure of $2.5 Billion under Section 284 on a Border Wall Violates the Appropriations Clause

Defendants are not authorized to spend up to $2.5 billion of transferred funds under section 284 on the construction of a border wall.  Section 284(a) provides that "[t]he Secretary of Defense may provide support for the counterdrug activities . . . of any other department or agency of the federal government" if "such support is requested[] by the official who has responsibility for the counterdrug activities . . . of the department or agency of the Federal Government[.]"  10 U.S.C. § 284(a), (a)(1)(A).  Section 284(b) further provides that "[t]he purposes for which the Secretary may provide support" include "[c]onstruction of roads and fences and installation of lighting to block drug smuggling corridors across international boundaries of the United States."  *Id.* § 284(b), (b)(7).  Authority under this section does not depend on the President declaring a national emergency.

For fiscal year 2019, Congress appropriated $517.171 million to the Drug Interdiction and Counterdrug Activities appropriation fund (drug interdiction fund), which is the source of funding for counter-narcotics support under section 284.  Department of Defense and Labor, Health and Human Services, and Education Appropriations Act, 2019 and Continuing Appropriations Act,

---

[29] *See* Border Victory Fact Sheet, http://tinyurl.com/WHBorderVictory.

2019, Pub. L. No. 115-245, div. A, tit. VI (2018) (to be printed at 132 Stat. 2981, 2997).  The House understands that most of this funding has already been used.  To spend up to $2.5 billion under section 284, defendants plan to first transfer funds that Congress appropriated for other purposes into the drug interdiction fund.[30]  On March 25, 2019, defendants transferred an initial batch of $1 billion from funds that Congress appropriated for military personnel costs to the drug interdiction fund.[31]  And on April 9, 2019, the Department of Defense (DOD) notified the House that contracts have been awarded against this funding.[32]  DOD has also announced that "[t]hese funds will be used to support DHS's request to build 57 miles of 18-foot-high pedestrian fencing, constructing and improving roads, and installing lighting within the Yuma and El Paso Sectors of the border[.]"[33]

It is a fundamental principle of appropriations law that "[a]n amount available under law may be withdrawn from one appropriation account and credited to another or to a working fund *only when authorized by law*."  31 U.S.C. § 1532 (emphasis added).  Defendants incorrectly claim that section 8005 of the 2019 Department of Defense Appropriations Act authorizes the transfers here.  In pertinent part, section 8005 provides that

> [u]pon determination by the Secretary of Defense that such action is necessary in the national interest, he may, with the approval of the Office of Management and Budget, transfer not to exceed $4,000,000,000 of working capital funds of the Department of Defense or funds made available in this Act to the Department of Defense for military functions (except military construction) between such appropriations or funds or any subdivision thereof, to be merged with and to be available for the same purposes, and for the same time period, as the appropriation or fund to which transferred: *Provided*, That such authority to transfer may not be used unless for higher priority items, based on unforeseen military requirements, than those for which originally appropriated and in no case where the item for which funds are requested has been denied by the Congress.

Pub. L. No. 115-245, § 8005, 132 Stat. 2981, 2999.  Three limitations on the transfer authority provided by this section independently preclude defendants from transferring funds – including the $1 billion already transferred – to construct a border wall.

---

[30] *See* Border Victory Fact Sheet, http://tinyurl.com/WHBorderVictory.

[31] *See* Office of the Under Secretary of Defense (Comptroller), DOD Serial No. FY 19-01 RA, Reprogramming Action (Mar. 25, 2019), https://tinyurl.com/March25Transfer.

[32] *See* Press Release, U.S. Dep't of Def., Contracts for April 9, 2019 (Apr. 9, 2019), http://tinyurl.com/DoDApril9Contracts.

[33] Press Release, U.S. Dep't of Def., DOD Authorizes Support to Counter Drug Border Security (Mar. 25, 2019), http://tinyurl.com/DoDMarch25PressRelease.

*First*, section 8005 only authorizes transfers of funds "for higher priority items, based on unforeseen military requirements."  Congress included this limitation to confine DOD's transfer authority to situations where unanticipated circumstances justify a departure from Congress's previously authorized spending.  For example, in the past, DOD has used this authority to transfer funds to pay for unexpected hurricane and typhoon damage to bases.[34]  Here, defendants' supposed need to transfer money clearly does not arise from unforeseen circumstances.  President Trump has been demanding $5 billion for a border wall since summer 2018,[35] and he has been complaining about a supposed crisis at the border since the start of his campaign.[36]  Defendants' alleged need to build a border wall was therefore entirely foreseen – Congress simply disagreed with President Trump's opinion that $5 billion for a border wall was necessary and proper.

*Second*, section 8005 does not authorize the transfer of funds in cases "where the item for which funds are requested has been denied by the Congress."  The "denied by the Congress" restriction was added to DOD's transfer authority starting in fiscal year 1974, to "tighten congressional control of the reprogramming process."  H. Rep. No. 93-662, at 16 (1973); *see* Pub. L. No. 93-238, § 735, 87 Stat. 1026, 1044 (1974).  The House committee report on the 1974 appropriations bill explained that "[n]ot frequently, but on some occasions, the Department ha[d] requested that funds which have been specifically deleted in the legislative process be restored through the reprogramming process," and that "[t]he Committee believe[d] that to concur in such actions would place committees in the position of undoing the work of the Congress."  H. Rep. No. 93-662, at 16.  Indeed, of considerable significance here, the Committee stated that such a position would be "untenable."  *Id.*  Consistent with its purpose, this sort of appropriations restriction is intended to be "construed strictly" to "prevent the funding for programs which have been considered by Congress and for which funding has been denied."  *See* H. Rep. No. 99-106, at 9

---

[34] Office of the Under Secretary of Defense (Comptroller), DOD Serial No. FY 04-37 PA, Reprogramming Action (Sept. 3, 2004), http://tinyurl.com/DOD2004ReprogrammingAction.

[35] *See* Rachael Bade, *Immigration Storm Bears Down on Republicans*, Politico (July 2, 2018, 5:05 AM), http://tinyurl.com/PoliticoImmigrationStorm.

[36] *See Here's Donald Trump's Presidential Announcement Speech*, Time (June 16, 2015), http://tinyurl.com/TrumpAnnouncement.

(1985) (discussing analogous appropriations restriction in Pub. L. No. 99-169, § 502(b), 99 Stat. 1005 (codified at 50 U.S.C. § 3094(b))).

In the striking factual circumstances surrounding the Administration's repeated demands for border wall funding – which culminated in the longest Federal Government shutdown in history – Congress's rejection of President Trump's request for $5 billion for a border wall was absolutely clear.  *See supra* section A.  DOD's use of its transfer authority to restore the funds "which have been considered by Congress and . . . denied," H. Rep. No. 99-106, at 9, is therefore "untenable," H. Rep. No. 93-662, at 16.

*Finally*, section 8005 does not authorize transfers for "military construction."  Section 2801(a) provides that "[t]he term 'military construction' as used in this chapter or any other provision of law includes any construction development, conversion, or extension of any kind carried out with respect to a military installation."  10 U.S.C. § 2801(a).  For the reasons set forth in the next section, the construction of a border wall does not constitute "military construction" because the border is not a "military installation."  If, however, the Court were to hold that the construction of a border wall *does* constitute "military construction" – as defendants appear to urge by invoking section 2808(a) – then defendants' transfer of funds is not authorized under section 8005.

Accordingly, defendants' transfer and expenditure of up to $2.5 billion to construct a border wall under section 284 is unauthorized and violates the Appropriations Clause.

> 2. *Defendants' Expenditure of $3.6 Billion under Section 2808 on a Border Wall Violates the Appropriations Clause*

Defendants are likewise not authorized to spend up to $3.6 billion on the construction of a border wall under section 2808.  In full, section 2808(a) provides that

> [i]n the event of a declaration of war or the declaration by the President of a national emergency in accordance with the National Emergencies Act (50 U.S.C. 1601 et seq.) that requires use of the armed forces, the Secretary of Defense, without regard to any other provision of law, may undertake military construction projects, and may authorize the Secretaries of the military departments to undertake military construction projects, not otherwise authorized by law that are necessary to support such use of the armed forces.  Such projects may be undertaken only within the total amount of funds that have been appropriated for military construction, including funds appropriated for family housing, that have not been obligated.

11

10 U.S.C. § 2808(a).  Defendants may not rely on section 2808(a) here because they comply with none of its limitations.

The House does not dispute that the President has declared a national emergency pursuant to the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, a threshold requirement under section 2808(a).  However, even where the President has declared a national emergency, section 2808(a) sets forth three independent limitations on the expenditure of funds: (1) there must be a national emergency "that requires the use of the armed forces," (2) the funding must be spent on a "military construction project," and (3) the project must be "necessary to support the use of the armed forces."  10 U.S.C. § 2808(a).

*First*, there is no national emergency "that requires the use of the armed forces."  President Trump's emergency proclamation recognizes that the "problem of large-scale unlawful migration . . . is longstanding."[37]  Although the proclamation also states that "[t]he southern border is a major entry point for criminals, gang members, and illicit narcotics,"[38] border security is a matter for *domestic* law enforcement.[39]  Indeed, that is precisely the job that Congress has tasked and equipped Customs and Border Protection (CBP) – not the armed forces – to do.[40]  CBP is the "largest federal law enforcement agency in the United States," and its mission is to "safeguard America's borders."[41]  Not only is it CBP's job to ensure the security of the nation's borders, but the military is expressly prohibited by the Posse Comitatus Act, 18 U.S.C. § 1385,[42] from making "direct active use of Federal troops" to execute domestic law.  *United States v. Dreyer*, 804 F.3d

---

[37] *See* National Emergency Proclamation.

[38] *See id.*

[39] Defendants' use of $601 million for the Treasury Forfeiture Fund to construct a border wall, *see* Border Victory Fact Sheet, http://tinyurl.com/WHBorderVictory, also confirms that construction of a border wall is a matter for law enforcement, because money from this fund may only be applied to "law enforcement activities," *see* 31 U.S.C. § 9705(g)(4)(B).

[40] *See, e.g.*, *Snapshot: A Summary of CBP Facts and Figures*, U.S. Customs & Border Protection (Dec. 2018), http://tinyurl.com/CBPSnapshotDec18.

[41] *Id.*

[42] The Posse Comitatus Act applies only to "the Army or the Air Force."  18 U.S.C. § 1385.  Similar restrictions, however, apply to other branches of the armed forces by statute and regulation.  *See* Jennifer K. Elsea, Cong. Research Serv., R42669, *The Posse Comitatus Act and Related Matters* 3-5 (2018), https://tinyurl.com/CRSPosseComitatus.

1266, 1272 (9th Cir. 2015) (quotation marks omitted).  It cannot be credibly maintained that the armed forces are "required" to address the current supposed emergency.  In fact, the Acting Secretary of Defense recently admitted that the situation at the southern border is "not a military threat."[43]

President Trump's proclamation claims that the situation at the border has "worsened" due to "sharp increases in the number of family units entering and seeking entry to the United States and an inability to provide detention space."[44]  However, this trend has been apparent for years,[45] and the humanitarian issues it raises are a matter for the domestic law enforcement agencies,[46] not the armed forces.  Congress has equipped CBP to address the needs of these families, such as by providing for family case management, supporting alternatives to detention, and increasing the number of immigration judges.[47]  In addition, Congress's fiscal year 2019 appropriation for CBP provided "$14.959 billion for [CBP's budget], $942 million more than fiscal year 2018," specifically to fund 600 additional CBP officers, and nearly half a billion dollars "to address humanitarian concerns at the border, including medical care, more efficient transportation, and holding facility requirements with better conditions and services for migrants."[48]  As President

---

[43] *Department of Defense Budget Posture: Hearing Before the S. Comm. on Armed Servs.*, 116th Cong. (2019) (statement of Patrick Shanahan, Acting Sec'y, Dep't of Def.) (pre-published stenographic transcript available at https://tinyurl.com/DefenseBudgetHearing).

[44] National Emergency Proclamation.

[45] *See, e.g.*, *Southwest Border Migration FY2017*, U.S. Customs & Border Protection (Dec. 15, 2017), https://tinyurl.com/CBPFY17SWStats.

[46] The Department of Health and Human Services also assists with caring for immigrant children, *see* 8 U.S.C. §§ 1521, 1522(d) ("establish[ing], within the Department of Health and Human Services, an office to be known as the Office of Refugee Resettlement," which provides "[a]ssistance for refugee children"), and it is not even a law enforcement agency, much less a military one.

[47] *Compare* Pub. L. No. 116-6 (FY 2019 CBP appropriations), *with* Pub. L. No. 115-141 (FY 2018 CBP appropriations).  *See generally* H. Rep. No. 116-9, at 478-84 (2019) (explaining the 2019 increase in funds for family case management and directing ICE "to prioritize the use of ATD [alternatives to detention] programs for families, including family case management, for which the bill provides significant additional resources").

[48] Senate Appropriations Comm., *Summary of DHS Fiscal Year 2019 Appropriations Agreement*, 1 (2019), http://tinyurl.com/SenateFY19AppropsSummary.

1   Trump expressed, Democrats appropriated for border security "so much money, we don't know

2   what to do with it."[49]

3       *Second*, a border wall is not a "military construction project" as that term is defined by

4   statute.   *See* 10 U.S.C. § 2801(b) (defining "military construction project" as "all *military*

5   *construction* work . . . necessary to produce a complete and usable facility or a complete and usable

6   improvement to an existing facility[.]" (emphasis added)).   The statute defines "military

7   construction project" with reference to the specifically defined term "military construction," which

8   includes "any construction, development, conversion, or extension of any kind carried out with

9   respect to a military installation."  *Id.* § 2801(a).[50]  And a "military installation" is defined to mean

10  "a base, camp, post, station, yard, center, or other activity under the jurisdiction of the Secretary of

11  a military department."[51]  *Id.* § 2801(c)(4).   Thus, a "military construction project" is "military

12  construction work" "carried out with respect to a military installation" – *i.e.*, "a base, camp, post,

13  station, yard, center, or other activity under the jurisdiction of the Secretary of a military

14  department."

15      In this case, the border wall is not a "military construction project" because it is not "carried

16  out with respect to a military installation."[52]  The southern border is clearly not a "base, camp, post,

17  station, yard, [or] center."  Nor is it some "other activity under the jurisdiction of the Secretary of

18  a military department."  "[W]here general words follow specific words in a statutory enumeration,

19  the general words are construed to embrace only objects similar in nature to those objects

20  enumerated by the preceding specific words."  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105,

21        [49] *See* Feb. 15 Rose Garden Remarks, http://tinyurl.com/TrumpRoseGardenRemarks.

22        [50] Section 2801(a) further states that military construction includes "any acquisition of land or construction of a defense access road (as described in section 210 of title 23)."

23        [51] This is the definition applicable to domestic military installations.  "[I]n the case of an
24  activity in a foreign country," the activity must be "under the operational control of the Secretary of a military department or the Secretary of Defense."  10 U.S.C. § 2801(c)(4).

25        [52] Previous projects under section 2808 have included the construction of barracks hangars and improvements to airfield runways.  *See* Michael J. Vassalotti & Brendan W. McGarry, Cong.
26  Research Serv., IN11017, *Military Construction Funding in the Event of a National Emergency* 2 (2019), https://tinyurl.com/CRS-MilConFunding (listing all military construction projects under
27  section 2808(a) between 2001 and 2014).  Notably – with the exception of one project related to "[s]ecurity measures for weapons of mass destruction" – every project carried out under section
28  2808(a) has occurred abroad.  *See id.* at 2-3.

114-15 (2001) (quotation marks omitted).  Thus, for the southern border to qualify as some "other activity under the jurisdiction of the Secretary of a military department" for purposes of section 2808(a), it must be "similar in nature" to a military "base, camp, post, station, yard, [or] center." The southern border of the United States obviously is like none of these places.

Defendants' use of section 284 to build a border wall confirms that such construction does not constitute "military construction."  As explained earlier, section 8005 does not authorize transfers for purposes of "military construction," *see supra* pp. 16-17, and defendants therefore appear to concede that a border wall does not constitute military construction by invoking this transfer authority to justify their transfer and expenditure of $2.5 billion.  The Administration cannot have it both ways: section 2808 prohibits reprogramming *except for* military construction projects, while section 8005 prohibits the transfer of funds *for* military construction.  Moreover, section 284 authorizes the Secretary of Defense to construct fencing along the border *only* to "provide support for the counterdrug activities . . . of *any other* department or agency of the Federal Government" and *only* if "such support is requested . . . by the official who has responsibility" for such activities.  10 U.S.C. § 284(a) (emphasis added).  But if the border were "similar in nature" to a "base, camp, post, station, yard, [or] center," it would make little sense for Congress to have limited the Secretary of Defense to constructing fencing only at the request of another agency.

*Finally*, a border wall is not "necessary to support [the] use of the armed forces."  Over the last year, President Trump has ordered a few thousand troops to assist DHS and CBP at the border.[53] Consistent with the Posse Comitatus Act, *see supra* p. 18, these troops are strictly limited to a supporting role.  They do not actively participate in law enforcement efforts but instead provide assistance such as "aerial reconnaissance, ground surveillance, search and rescue support and medical support."[54]  There is no reason a border wall is "necessary" to support the troops in their

---

[53] *See* Jim Garamone, *Additional Personnel to Deploy to Southwest Border*, U.S. Dep't of Def. (Oct. 26, 2018), https://tinyurl.com/BorderTroops.

[54] Jim Garamone, *DOD Officials Testify on Military Support to Southwest Border*, U.S. Dep't of Def. (Jan. 29, 2019), http://tinyurl.com/DODJan29Article.

1    provision of such assistance, and President Trump himself admitted that he "didn't need to do
2    this."[55]

3                                          *        *        *

4          Defendants cannot satisfy the "strict threshold criteria" set forth in section 2808(a).  *I.N.S.*
5    *v. Phinpathya*, 464 U.S. 183, 195 (1984).  Defendants' expenditure of section 2808(a) funds
6    circumvents the will of Congress and insults our "tripartite scheme of government" in which it is
7    "up to Congress" to control the federal purse.  *Id.* at 196.  Indeed, Congress's rejection of President
8    Trump's requested $5 billion for the construction of a border wall could not have been clearer.

9          Nor should the Court "stretch th[e] words [of section 2808(a)'s three limitations] beyond
10   their normal meaning" to excuse defendants' transgression.  *Schneider v. Smith*, 390 U.S. 17, 27
11   (1968).  Section 2808 is one of scores of statutes that the President may invoke by declaring a
12   national emergency under the National Emergencies Act.[56]  That statute was enacted in 1976 "to
13   reform the existing maze of statutes which has resulted from the states of emergency under which
14   the country has been operating for over 40 years."[57]  The National Emergencies Act was "not
15   intended to grant additional authority to the President," but instead to make clear that "[t]he
16   President can only exercise those powers delegated to him in other statutes."  S. Rep. 94-1168, at
17   4 (1976); *accord* H. Rep. 94-238, at 5-6 (1975).  That is why the Act itself "ma[de] no attempt to
18   define when a declaration of national emergency is proper."  S. Rep. 94-1168, at 3.  Rather, "[t]he
19   circumstances authorizing a declaration of national emergency are defined by the statutes giving
20   the President the extraordinary powers to use in the case of a national emergency."  *Id.* at 4.

21         In other words, Congress declined to define what constitutes a "national emergency" in the
22   National Emergencies Act because it intended for the underlying statutes that provide emergency
23   authority – statutes like section 2808(a) – to limit the circumstances and manner in which such
24   authority could be exercised.  *See, e.g.*, *supra* pp. 15, 17.  If courts refuse to enforce the limitations

25

26   _____
      [55] *See* Feb. 15 Rose Garden Remarks, http://tinyurl.com/TrumpRoseGardenRemarks.
27   [56] *See A Guide to Emergency Powers and Their Use*, Brennan Ctr. (Jan. 23, 2019),
      http://tinyurl.com/BrennanCenterEmergencyPowers.
28   [57] Press Release, White House, Statement by the President on Signing H.R. 3884, the
      "National Emergencies Act" (Sept. 14, 1976), https://tinyurl.com/PressReleaseNEA.

set forth in such statutes, then the President's emergency authority will once again be practically unbounded. Only by strictly enforcing the limits of the President's emergency statutory authority can we ensure that it is not deployed with respect to "frivolous or partisan matters," *National Emergencies Act: Hearing on H.R. 3884 Before the S. Comm. on Gov't Operations*, 94th Cong. 7 (1976) (statement of Sen. Frank Church), or – to use the words of President Trump's proclamation – "longstanding" problems that should be addressed through the proper political channels.

Accordingly, as with defendants' proposed expenditure under section 284, defendants' proposed expenditure of up to $3.6 billion under section 2808(a) on the construction of a border wall is unauthorized and violates the Appropriations Clause.

## CONCLUSION

Defendants have evaded the Constitution in their haste to build a wall along the southern border "with or without Congress." The Constitution – not President Trump's desire to build the wall "faster" – is the "ultimate expression of the public interest," *Gordon*, 721 F.3d at 653 (quotation marks omitted), and "all citizens have a stake" in ensuring that defendants do not irrevocably offend that document during the period required to litigate this case, *Hernandez*, 872 F.3d at 996 (quotation marks omitted). The Court should therefore issue a preliminary injunction prohibiting defendants from transferring and spending funds in excess of what Congress appropriated for counter-narcotics support under 10 U.S.C. § 284 and from spending funds under 10 U.S.C. § 2808(a) on the construction of a wall along the southern border.

1                                               Respectfully submitted,

2                                               */s/ Douglas N. Letter*

3                                               DOUGLAS N. LETTER (D.C. Bar No. 253492)
         *General Counsel*

4                TODD B. TATELMAN (VA Bar No. 66008)
         *Deputy General Counsel*

5                MEGAN BARBERO (MA Bar No. 668854)
         *Associate General Counsel*

6                KRISTIN A. SHAPIRO (D.C. Bar No. 1007010)
         *Assistant General Counsel*

7                BROOKS M. HANNER (D.C. Bar No. 1005346)
         *Assistant General Counsel*

8                SARAH E. CLOUSE (MA Bar No. 688187)
         *Attorney*

9

10              OFFICE OF GENERAL COUNSEL[*]

11             U.S. HOUSE OF REPRESENTATIVES
         219 Cannon House Office Building

12             Washington, D.C.  20515
         (202) 225-9700 (telephone)

13             (202) 226-1360 (facsimile)
         douglas.letter@mail.house.gov

14

15             *Counsel for Amicus Curiae the United States House of Representatives*

16  April 15, 2019

17

18

19

20

21

22

23

24

25

26        [*] Attorneys for the Office of General Counsel for the U.S. House of Representatives are "entitled, for the purpose of performing the counsel's functions, to enter an appearance in any proceeding before any court of the United States or of any State or political subdivision thereof without compliance with any requirements for admission to practice before such court."  2 U.S.C. § 5571.

1

2

3

4

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2019, I caused the foregoing document to be filed via the U.S. District Court for the Northern District of California's CM/ECF system, which I understand caused service on all registered parties.

5

6

*/s/ Douglas N. Letter*
Douglas N. Letter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28