1    Richard Mancino (*pro hac vice pending*)
         rmancino@willkie.com
2    Shaimaa M. Hussein (*pro hac vice pending*)
         shussein@willkie.com
3    Matthew Dollan (*pro hac vice pending*)
         mdollan@willkie.com
4    **WILLKIE FARR & GALLAGHER LLP**
     787 Seventh Avenue
5    New York, NY 10019
     Telephone:  (212) 728-8000
6    Facsimile:  (212) 728-9000

         David W. Evans
         **HAIGHT BROWN & BONESTEEL LLP**
         Three Embarcadero Center, Suite 200
         San Francisco, CA 94111
         Telephone: (415) 281-7624
         Facsimile: (415) 546-7505
             devans@hbblaw.com

7    Richard D. Bernstein (*pro hac vice forthcoming*)
8    1875 K Street, N.W.
     Washington, D.C. 20006-1238
9    Telephone:  (301) 775-2064
         rbernsteinlaw@gmail.com

10   *Counsel for Amici Curiae* Christopher Shays, Christine Todd Whitman, Peter Keisler, Carter Phillips,
     John Bellinger III, Stanley Twardy, and Richard Bernstein
11

12                  **UNITED STATES DISTRICT COURT**
13                **NORTHERN DISTRICT OF CALIFORNIA**
                          **OAKLAND DIVISION**
14

15   STATE OF CALIFORNIA, et al.,                      **MEMORANDUM OF CHRISTOPHER**
16                                                     **SHAYS, CHRISTINE TODD WHITMAN,**
                              *Plaintiffs,*            **PETER KEISLER, CARTER PHILLIPS,**
17                                                     **JOHN BELLINGER III, STANLEY**
            v.                                         **TWARDY, AND RICHARD BERNSTEIN**
18                                                     **AS AMICI CURIAE IN SUPPPORT OF**
     DONALD J. TRUMP, in his official capacity as      **PLAINTIFFS' MOTION FOR A**
19   President of the United States of America, et al.,**PRELIMINARY INJUNCTION**
20                              *Defendants.*          Case No. 4:19-CV-00872-HSG
21
                                                       P.I. Hearing Date:   May 9, 2019
22                                                     Time:                2:00 PM

23   SIERRA CLUB and SOUTHERN BORDER
     COMMUNITIES COALITION,
24
                              *Plaintiffs,*
25
            v.
26                                                     Case No. 4:19-CV-00892-HSG
     DONALD J. TRUMP, President of the United
27   States, in his official capacity, et al.,         P.I. Hearing Date:   May 17, 2019
                                                       Time:                10:00 AM
28                              *Defendants.*

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

ARGUMENT ..........................................................................................................1

I.  SECTION 739's PROHIBITION CLAUSE APPLIES TO ALL THE
    PROPOSED ADDITIONAL FUNDS ..........................................................1

    A.  All $6.7 Billion in Proposed Increased Funds Are Funds Made Available
        in an Appropriations Act.........................................................................2

    B.  The President's Budget Requests Have Sought $12.825 Billion in
        Increases in Funding for a Southern Border Wall That Congress Has Not
        Enacted.....................................................................................................4

II.  NONE OF THE PROPOSED INCREASES IN FUNDING SATISFIES
     SECTION 739'S EXCEPTION ...................................................................8

    A.  The Only Exception to Section 739's Prohibition Is When the Executive
        Branch Uses Funds Exclusively "Pursuant To The Reprogramming and
        Transfer Provisions of This or Any Other Appropriations Act".......................8

    B.  10 U.S.C. § 284(b)(7) Does Not Increase Funding For the Wall "Pursuant
        to the Reprogramming or Transfer Provisions of . . . Any Other
        Appropriations Act".....................................................................................9

    C.  10 U.S.C. § 2808(a) Does Not Increase Funding for The Wall "Pursuant
        To the Reprogramming or Transfer Provisions of . . . Any Other
        Appropriations Act"....................................................................................10

III.  TWO CANONS FAVOR CONSTRUING SECTION 739 TO BAR THE
      EXECUTIVE'S PROPOSED FUNDING INCREASES ............................11

    A.  Because Spending Billions to Construct a Southern Border Wall Is an
        Issue of Immense Economic and Political Significance, Section 739
        Should Be Construed So That This Issue Is Not Delegated to Agency
        Heads........................................................................................................12

    B.  Section 739 Should Be Construed to Avoid a Violation of the
        Presentment Clause and Separation of Powers.................................................12

CONCLUSION........................................................................................................14

PB99-0000120
12965196.1

i

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Clinton v. City of New York,*
    524 U.S. 417 (1998)......................................................................................13

*FDA v. Brown & Williamson Tobacco Corp.,*
    529 U.S. 120 (2000)......................................................................................12

*Freytag v. Comm'r,*
    501 U.S. 868 (1991)........................................................................................9

*Gutierrez-Brizuela v. Lynch,*
    834 F.3d 1142 (10th Cir. 2016) ...................................................................11

*Nielsen v. Preap,*
    No. 16-1363, slip. op. (U.S. Mar. 19, 2019) .................................................3

*Robertson v. Seattle Audubon Soc.,*
    503 U.S. 429 (1992)........................................................................................8

*United States Nat'l Bank of Oregon v. Independent Ins. Agents of America, Inc.,*
    508 U.S. 439 (1993)........................................................................................3

*Util. Air Regulatory Grp. v. E.P.A.,*
    573 U.S. 302 (2014)......................................................................................12

*Zadvydas v. Davis,*
    533 U.S. 678 (2001)......................................................................................12


**Statues, Rules and Regulations**

1 U.S.C. § 105.......................................................................................................8

2 U.S.C. § 622(5)...................................................................................................8

10 U.S.C. § 2214(b)............................................................................................10

10 U.S.C. § 2808..............................................................................................2, 10

27 Comp. Dec. 923 (1921)....................................................................................8

Border Security and Immigration Enforcement Improvements, 82 Fed. Reg. 8793
(Jan. 25, 2017)........................................................................................................4

Consolidated Appropriations Act, 2018, Pub. L. 115-141 (Mar. 23, 2018) .......4, 11, 14

Department of Defense Appropriations Act, 2019, Pub. L. 115-245 ...............................................2

Military Construction Appropriation Act, 1982, Pub. L. 97-106, 96 Stat. 1503 et seq. (Dec. 23, 1981) ...............................................................................................................................2

Military Construction Appropriation Act, 1983, Pub. L. 97-323, 96 Stat. 1591 et seq. (Oct. 15, 1982) ...............................................................................................................................2

Treasury, Postal Services, and General Appropriations Act, 1993, Pub. L. 102-393, 106 Stat. 1729, 184–85 (Oct. 6, 1992) ......................................................................................4

**Other Authorities**

2020 Budget Fact Sheet: A Budget for a Better America (2019) ....................................................6

GAO, Principles of Federal Appropriations Law (4th ed. rev. 2016)..........................................7, 8

Fact Sheet: The Funds Available to Address the National Emergency at Our Border (Feb. 26, 2019) ...............................................................................................................2, 10, 11

Fact Sheets: President Donald J. Trump is Promoting a Fiscally Responsible and Pro-American 2020 Budget (Mar. 11, 2019) .................................................................................6

*Hereafter,* POWERTHESAURUS.ORG, www.powerthesaurus.org/hereafter/synonyms/adverb ..........7

Scalia & Garner, Reading Law: The Interpretation of Legal Texts (2012) .....................................3

*Subsequently,* MERRIAM-WEBSTER.COM, www.merriam-webster.com/dictionary/subsequently ....7

## INTRODUCTION AND SUMMARY OF ARGUMENT

Section 739 of Division D ("Section 739") of the Consolidated Appropriations Act 2019, Pub. L. 116-6 ("Consolidated 2019"), prohibits the proposed use of funds under 10 U.S.C. § 284 ("284"), 10 U.S.C. § 2808 ("2808"), or 31 U.S.C. § 9705 ("9705"), to construct the southern border barrier. Section 739 applies "Government-Wide" and states in pertinent part: "None of the funds made available in this or any other appropriations Act may be used to increase . . . funding for a program, project, or activity as proposed in the President's budget request for a fiscal year until such proposed change is subsequently enacted in an appropriation Act, or unless such change is made pursuant to the reprogramming or transfer provisions of this or any other appropriations Act." Section 739 has two clauses. This memo refers to the clause before "or unless" as Section 739's "prohibition clause," and the clause from "or unless" through the end as Section 739's "unless exception." Part I below demonstrates that Section 739's prohibition clause applies to all $6.7 billion of proposed increased funding. Part II demonstrates that none of the proposed uses of 284, 2808, or 9705 to increase funding for the southern border barrier satisfies Section 739's unless exception because none makes an increase in funding solely pursuant to the provisions of an "appropriations Act." Although Section 739 is unambiguous, Part III below shows that two canons of construction favor interpreting Section 739 to preclude the proposed increased funding.

## ARGUMENT

### I. SECTION 739's PROHIBITION CLAUSE APPLIES TO ALL THE PROPOSED ADDITIONAL FUNDS

Section 739's prohibition clause applies when two conditions are satisfied: (a) The executive branch proposes to use appropriated funds (b) to increase funding for a program, project, or activity that a President's budget for a fiscal year requested but that Congress has not enacted.[1] Both

---

[1] Section 739 would not apply if a President had not made a budget request to increase funding for the program, project, or activity. For example, if a President, without making a budget request, immediately invoked 2808 following a terrorist

conditions are satisfied here.

**A.   All $6.7 Billion in Proposed Increased Funds Are Funds Made Available in an Appropriations Act**

Section 739's prohibition clause applies to all of the additional $6.7 billion in funds that the administration has proposed to use because those are all "funds made available in . . .  any other appropriations Act."  Indeed, the White House issued a statement on Feb. 26, 2019, titled "The Funds Available to Address the National Emergency at Our Border," that acknowledged that the full $6.7 billion constitutes "funds appropriated by Congress" for other purposes. Fact Sheet: The Funds Available to Address the National Emergency at Our Border (Feb. 26, 2019), https://www.whitehouse.gov/briefings-statements/funds-available-address-national-emergency-border/ ("Feb. 26, 2019 White House Statement").

**1. 284(b)(7):**  The two sources of proposed funds for 284(b)(7) construction both use "funds made available in . . . any other appropriations Act."  First, 284(b)(7) spending uses appropriations, typically made in an annual appropriations act, to the Department of Defense account for "drug interdiction and counter-drug activities."  Department of Defense Appropriations Act, 2019, Pub. L. 115-245, at 17 ("Defense 2019"). Second, the government has stated that appropriations made by Section 8005 of Division A ("Section 8005") of Defense 2019 have been transferred to the same "FY 2019 Drug Interdiction and Counter-Drug Activities account."  Feb. 26, 2019 White House Statement.

**2. 2808(a):**  Under its second sentence, 2808(a) uses "only . . . funds that have been appropriated for military construction."  This refers to appropriations made by Military Construction Appropriation Acts, typically one for each fiscal year, since before 2808 was enacted on July 12, 1982. *See, e.g.*, Military Construction Appropriation Act, 1982, Pub. L. 97-106, 96 Stat. 1503 et seq. (Dec. 23, 1981); Military Construction Appropriation Act, 1983, Pub. L. 97-323, 96 Stat. 1591 et

attack, Section 739 would not apply.

seq. (Oct. 15, 1982).

Although the first sentence of 2808(a) authorizes certain military construction projects "without regard to any other provision of law," this does not exempt the use of appropriated funds in 2808(a)'s second sentence from Section 739's prohibition. "[T]he meaning of a statute will typically heed the commands of its punctuation." *United States Nat'l Bank of Oregon v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 454 (1993). In particular, "[p]eriods . . . insulate words from grammatical implications that would otherwise be created by the words that precede or follow them." Scalia & Garner, Reading Law: The Interpretation of Legal Texts at 162 (2012) (hereinafter "Scalia & Garner, Reading Law"); *see also Nielsen v. Preap*, No. 16-1363, slip op. at 14 (U.S. Mar. 19, 2019) (explaining that typically "the 'rules of grammar govern'") (quoting Scalia & Garner at 140). Here, the phrase "without regard to any other provision of law" modifies only the authority in the first sentence of 2808(a) to undertake certain military construction projects. The period after the first sentence means that the "without regard" phrase that appears only in the first sentence does not apply to the second sentence. It is only the second sentence of 2808(a) that permits using "funds that have been appropriated for military construction."

Even if that critical period in Section 2808(a) were absent, the clear and unlimited words of the later Section 739 displace the particular application of 2808(a) to provide funding for the wall. Nothing in 2808(a) could limit Congress's power to enact a later statute, such as Section 739, that displaced a particular application of 2808(a). *See* Scalia & Garner, at 279 ("A later legislature's power . . . to make exceptions without specific reference [to a prior statute], and even to make exceptions by implication, cannot be eliminated."). Section 739's statement that "[n]one of the funds made available in this or any other appropriations Act may be used" expressly and clearly prohibits the only potential source of funds under 2808(a)—namely, "funds that have been appropriated for military construction." *See* Scalia & Garner, at 327 (there is "no doubt" that when a

later statute "specifically . . . prohibits what [an earlier statute] permitted," this repeals the particular application of the earlier statute's permission of the now prohibited use). That is, the express and clear phrase "funds made available in . . . any other appropriations Act" in Section 739 includes the funds appropriated in every Military Construction Appropriation Act.

    **3.  9705(g)(4)(B):** This provision was enacted as part of the Treasury, Postal Services, and General Appropriations Act, 1993, and appears in the subsection titled "APPROPRIATIONS." Pub. L. 102-393, 106 Stat. 1729, 184–85 (Oct. 6, 1992).

**B.  The President's Budget Requests Have Sought $12.825 Billion in Increases in Funding for a Southern Border Wall That Congress Has Not Enacted**

    The southern border barrier was a "program, project, or activity" before fiscal year 2019. In particular, Section 230(a)(1-4) of the Consolidated Appropriations Act, 2018 ("Consolidated 2018") had appropriated $1.337 billion "for fencing along the southern border." Pub. L. 115-141 (Mar. 23, 2018). Indeed, the February 15, 2019 White House Fact Sheet ("February 15, 2019 White House Statement") correctly said that "sections of the border wall are already being built." Plaintiffs' Request for Judicial Notice ("RJN"), Ex. G. That statement described both the $1.375 billion appropriated by Consolidated 2019 and the proposed $6.7 billion in additional funds as "building on that progress." *Id.*

    As with "the border wall," a program, project, or activity often has intertwined parts. The Apollo program, also known as Project Apollo, had 14 flights. A season ticketholder for a major league baseball team who attends all 81 home games is engaging in an activity.

    The President's planned wall for the southern border has been and remains one program, project, or activity that uses multiple agencies acting in coordination to carry out intertwined parts. Since the President's Executive Order 13767, issued January 25, 2017, it has been and remains "the policy of the executive branch" to construct "a physical wall on the southern border," defined as "a contiguous, physical wall, or other similarly secure, contiguous, and impassable

physical barrier." Border Security and Immigration Enforcement Improvements, 82 Fed. Reg. 8793, sections 2(a) and 3(e) (Jan. 25, 2017). On January 6, 2019, the President requested $5.7 billion for fiscal 2019 "for construction of a steel barrier for the Southwest border," with construction by DHS "[i]n concert with the U.S. Army Corps of Engineers." RJN, Ex. A, at 1.

The February 15, 2019 White House Statement said that the executive branch would use both the $1.375 billion appropriated by Section 230 of Division A of Consolidated 2019 ("Section 230") and the $6.7 billion of additional funds to "build the border wall." RJN, Ex. G. That statement further noted that the DHS, DOD, and the Army Corps of Engineers were coordinating "a work plan for the remainder of FY 2019 and beyond." *Id.* That same day, Treasury informed congressional appropriations subcommittees that Treasury would use 9705(g)(4)(B) to provide "$601 million requested by the Department of Homeland Security" and that DHS "has been working in partnership with the United States Army Corps of Engineers." RJN, Ex. H. On February 25, 2019, DHS wrote the Department of Defense "requesting that the Department of Defense assist DHS," specifically with "the construction of fences" under 284. RJN, Ex. I, at 1–2. DHS stated: "DHS will accept custody of the completed infrastructure and account for that infrastructure in its real property records . . . and maintain the completed infrastructure." *Id.* at 10; *see also id.* at 4 ("DHS now requires pedestrian fencing."); *id.* at 8–10 (same). DHS set the "DHS order of priority" and DHS "plans to coordinate closely with DOD throughout project planning and execution." *Id.* at 9-10. On March 25, 2019, the Secretary of Defense agreed, including to "DHS custody of the completed infrastructure," DHS accounting "for that infrastructure in its property records," and DHS operation and maintenance of the completed infrastructure. RJN, Ex. O. The Secretary of Defense also agreed that the "U.S. Army Corps of Engineers" will "coordinate directly with DHS." *Id.*

Both the President's budget for fiscal year 2020 and budget message, each issued March 11, 2019, continued to refer to one coordinated initiative—"the border wall." The accompanying White

House statement issued the same day said that the budget for fiscal year 2020 was proposing "$8.6 billion for the border wall, funded by Department of Defense (DOD) and Department of Homeland Security (DHS)." Fact Sheets: President Donald J. Trump is Promoting a Fiscally Responsible and Pro-American 2020 Budget (Mar. 11, 2019), https://www.whitehouse.gov/briefings-statements/president-donald-j-trump-promoting-fiscally-responsible-pro-american-2020-budget/. OMB's Budget Fact Sheet, also issued the same day, likewise referred to "a border wall" and stated that the DOD's "new military construction" was "to assist DHS." 2020 Budget Fact Sheet: A Budget for a Better America (2019), https://www.whitehouse.gov/wp-content/uploads/2019/03/FY20-Fact-Sheet_Overview_FINAL.pdf.

The upshot is that the President's various requests for, and the executive branch's unilateral actions to provide, funding for "the wall" or "a barrier" for fiscal 2019 and fiscal 2020 are all attempts to increase funding for a single, coordinated "program, project, or activity"—building the wall. This triggers Section 739's prohibition clause against making previously requested, but unenacted, increases in funding for a program, project, or activity.

The President has made a total of $12.825 billion in unenacted budget requests for the program, project, or activity of building the wall. The Executive Office of the President formally requested an increase of $5.7 billion for fiscal year 2019 funding for a "barrier for the Southwest border." RJN, Ex. A (increasing prior request of $1.6 billion). Section 230 appropriated only $1.375 billion for "fencing" and limited the design and locations. As then-DHS Secretary Nielsen admitted to the House Homeland Security Committee in testimony on March 6, 2019, the Administration would not have invoked the other statutes if Consolidated 2019 had provided the additional $4.225 billion in funds for fiscal 2019 that the executive branch had "requested." *See* RJN ¶ 22 (referring to video recording of that testimony). President Trump has made similar statements. *See* RJN, Ex. F (President Trump stating that because the amount in Consolidated 2019 is "not doing the trick . . .

I'm adding things to it."); RJN, Ex. E (President Trump's stating that because the amount in Consolidated 2019 for "the wall . . . skimped," the President is going to "do the wall . . . much faster").  Congress has not yet enacted any of the additional $8.6 billion requested for fiscal 2020.

Section 739's express prohibition of the use of requested but unenacted funds extends beyond the end of fiscal year 2019. This is because Section 739 states that its prohibition is triggered by a "budget request for a fiscal year" and continues to apply "until such change is subsequently enacted in an appropriation Act."  The adverb "subsequently" means "at a later or subsequent time." *Subsequently*, MERRIAM-WEBSTER.COM, www.merriam-webster.com/dictionary/subsequently.  This adverb alone denotes that Section 739's prohibition extends beyond this fiscal year.  Indeed, it has been held numerous times that, when a provision in an appropriation Act uses the adverb "hereafter," which similarly means "after this in sequence or time," *id.*, that the provision applies after the end of the current fiscal year. *See* GAO Principles of Federal Appropriations Law, 2-86 to 2-87 (4th ed. Rev. 2016) ("GAO Principles") (citing authorities); *see Hereafter*, POWERTHESAURUS.ORG, www.powerthesaurus.org/hereafter/synonyms/adverb (listing "subsequently" as a synonym of "hereafter").  Moreover, "a fiscal year" is indistinguishable from "any fiscal year," which has been held to extend an appropriation act's limit on the use of funds beyond that fiscal year. *See* GAO Principles, at 2-88 (citing authorities).

Finally, it has become routine for there to be a gap between the expiration of one fiscal year and the enactment of a Consolidated Appropriations Act for the next fiscal year.  For example, Consolidated 2019 was enacted four-and-one-half months after the expiration of fiscal year 2018. It would be nonsensical for Congress to enact a prohibition in Section 739 that barred most executive branch run-arounds for seven and one-half months only to permit them all the next day.

## II. NONE OF THE PROPOSED INCREASES IN FUNDING SATISFIES SECTION 739'S EXCEPTION

### A. The Only Exception to Section 739's Prohibition Is When the Executive Branch Uses Funds Exclusively "Pursuant To The Reprogramming and Transfer Provisions of This or Any Other Appropriations Act"

The February 15, 2019 White House Statement states that all $6.7B of additional funds are being "reprogrammed." But that is not enough under Section 739's unless exception.  The text limits 739's exception to when "such change"—the use of appropriated funds to increase funding— "is made pursuant to the reprogramming or transfer provisions of this or any other appropriations Act."  In the federal budgeting and appropriations process, "'appropriation Act' means" only an Act whose "title" begins: "'An Act making appropriations . . . .'" 2 U.S.C. § 622(5); 1 U.S.C. § 105. Indeed, "[t]he expression 'authorized to be appropriated' . . . clearly indicates that no appropriation is made or intended to be made . . . ." 27 Comp. Dec. 923 (1921).

Section 739's requirement that the transfer or reprogramming authority be provided by an "appropriations Act" contrasts with Section 731. Section 731's exception more broadly states "[u]nless otherwise authorized by existing law."

Section 739's narrower exception protects Congress's power over the purse under Article I in two significant ways.  First, statutory transfer authority is sometimes provided by other legislation that is not an appropriation Act, such as authorizing legislation. *See* GAO, Principles, at 2-39.  Transfer authority from provisions in statutes other than an appropriations Act does not fit within Section 739's exception.  There is no issue of the presumption against implied repeals because the *express* terms in Section 739 specify when Section 739 displaces other statutes. *See Robertson v. Seattle Audubon Soc.*, 503 U.S. 429, 440 (1992) (when a statutory provision "*by its terms*" sets forth the interaction between that provision and previously existing statutes, "the intent to modify was not only clear, but express") (emphasis in original).

Second, reprogramming authority may be limited by a statute. *See* GAO Principles, at 2-44

to 2-45. Section 739 limits reprogramming authority so that reprogramming provides an exception to 739's prohibition only if "made pursuant to the reprogramming . . . provisions of . . . [an] appropriations Act."

To satisfy Section 739's unless exception, every step in the increase in funding must be "made pursuant to the . . . provisions of . . . [an] appropriations Act." The unless exception in Section 739 applies only if "such change"—that is, using appropriated funds "to increase . . . funding for a program, project, or activity"—"is made pursuant to *the reprogramming or transfer provisions of this or any other appropriations Act.*" (Emphasis added.) The combination of the plural "provisions," the canon that the expression of one thing implies the exclusion of others, and the narrowing connotation of "the" in "the reprogramming and transfer provisions of . . . any other appropriations Act" excludes any use of appropriated funds to increase funding for a program, project, or activity that is "made" even in part pursuant to either a provision of a non-appropriations Act or to non-statutory authority. *Cf. Freytag v. Comm'r*, 501 U.S. 868, 902 (1991) ("The definite article 'the' obviously narrows . . . ."). For example, if a proposed increase in funding for the southern border barrier "is made pursuant to" two or more statutory provisions, Section 739's unless exception is not satisfied unless all of the steps necessary to use appropriated funds to increase funding for the barrier employ "the reprogramming or transfers provisions of this or any other appropriations Act."

### B. 10 U.S.C. § 284(b)(7) Does Not Increase Funding For the Wall "Pursuant to the Reprogramming or Transfer Provisions of . . . Any Other Appropriations Act"

The "unless" exception in Section 739 does not permit the use of 284(b)(7) for increasing funds for the wall above the funds appropriated in Section 230. This is because Section 284 was not enacted as part of an appropriations Act. Rather, 284 was enacted as part of the National Defense Authorization Act, Pub. L. 114-328, 130 Stat. 2000, 2381, 2497 (Dec. 23, 2016). More than four months later, Congress enacted a different statute as the Department of Defense Appropriations Act,

2017, Pub. L. 115-31, 131 Stat. 135, 229 (May 5, 2017).

The government cannot piggyback 284(b)(7) onto Section 8005 of Defense 2019 in order to convert 284(b)(7) into a provision of an appropriations Act.  Section 8005 has been used here to authorize only the first step necessary for increasing funding for the wall—"transfer" from DOD's working capital funds to the Defense Department's "FY 2019 Drug Interdiction and Counter-Drug Activities account." Feb. 26, 2019 White House Statement. The second necessary step is the reprogramming or transfer of funds from the "Drug Interdiction and Counter-Drug Activities account" to fund construction of the wall.  For that essential step, the government has invoked 284(b)(7) as the sole claimed statutory authority pursuant to which funds from that Drug Interdiction and Counter-Drug Activities account would be used to construct "fences . . . to block drug smuggling corridors." *See id.* ("Under 10 U.S.C. 284(b)(7), the United States military may construct 'fences . . . '"). Thus, regardless of Section 8005, because 284(b)(7) is not a "reprogramming or transfer provision of . . . any other appropriations Act," the unless exception in Section 739 is not satisfied.

Moreover, by its own terms, 8005 does not apply "where the item for which funds have been requested has been denied by Congress." *Accord* 10 U.S.C. § 2214(b). In Section 230, Congress denied funding for border fencing above $1.375 billion, for barriers that are not "fences," for all but certain designs, and at all but certain locations.

### C.    10 U.S.C. § 2808(a) Does Not Increase Funding for The Wall "Pursuant To the Reprogramming or Transfer Provisions of . . . Any Other Appropriations Act"

The "unless" exception in Section 739 does not permit the use of 2808(a) to increase funding for the wall because 2808(a) also is not a "provision[] of this or any other appropriations Act." 2808(a) is a provision of the Military Construction Codification Act ("MCCA"), Pub. L. 97-124, 96 Stat. 153-177 (July 12, 1982). The MCCA is not an appropriations Act.  Neither the title nor any of the provisions of the MCCA make appropriations.

Rather, 2808(a) provides: "Such projects may be undertaken only within the total amount of *funds that have been appropriated for military construction . . .* that have not been obligated." (Emphasis added.) The phrase "have been appropriated for military construction" refers to a different group of statutes—the Military Construction Appropriation Acts—that have made the appropriations. *See supra*, part I.A.3. Because 2808(a) is not a part of those Appropriation Acts or any other appropriations Act, 2808(a) does not satisfy the unless exception in Section 739.

### D. Using 31 U.S.C. § 9705(g)(4)(B) Does Not By Itself Increase Funding for The Wall "Pursuant to the Reprogramming or Transfer Provisions of . . . Any Other Appropriations Act"

As the government has acknowledged, here 9705(g)(4)(B) merely makes funds "available *to DHS* for use in law enforcement border security efforts." Feb. 26, 2019 White House Statement. (Emphasis added.) Those efforts are "conducted by U.S. Customs and Border Protection." RJN, Ex. H. What those statements mean is that Treasury funds have been added to a DHS account, likely the account named "U.S. Customs and Border Protection—Procurement, Construction, and Improvements." Section 230.

There remains a necessary second step "pursuant to" which DHS is reprogramming or transferring funds from the DHS account to increase funds for a southern border barrier. The unless exception in Section 739 requires that this second step by DHS itself be "made pursuant to the reprogramming or transfer provisions of this or any other appropriations Act." The government has not even asserted that 9705 or any other provision of any appropriations Act authorizes DHS to take that necessary second step. Accordingly, regardless of 9705(b)(4)(B), Section 739 bars DHS from using any funds in a DHS account, no matter the original source of those funds, to increase funding to construct a southern border barrier above the $1.375 billion appropriated in Section 230.

### III. TWO CANONS FAVOR CONSTRUING SECTION 739 TO BAR THE EXECUTIVE'S PROPOSED FUNDING INCREASES

As the founders knew, "executives throughout history had sought to exploit ambiguous laws

as license for their own prerogative." *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1152 (10th Cir. 2016) (Gorsuch, J. concurring) (citation omitted).  To prevent this from recurring, courts have employed at least two canons of construction to reject agency interpretations of arguably ambiguous text in a statute.  If Section 739 were ambiguous, these canons independently confirm that Section 739 prohibits the $6.7 billion in additional funding.

### A.   Because Spending Billions to Construct a Southern Border Wall Is an Issue of Immense Economic and Political Significance, Section 739 Should Be Construed So That This Issue Is Not Delegated to Agency Heads

A statute will be read to "delegate a decision of" substantial "economic and political significance" to an agency only if the statute does so clearly and expressly. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159–60 (2000).  Absent such textual clarity, statutes are construed narrowly to avoid conferring upon agency heads, including the Secretaries of Defense, Treasury, and DHS, the power to make such fundamental policy choices.  *Id.*; *accord Util. Air Regulatory Grp. v. E.P.A.*, 573 U.S. 302, 323–24 (2014).  Whether to spend billions of dollars on constructing a southern border wall, and the location of any such wall, has been an issue of immense economic and political significance since before Section 739 was enacted.  Nothing in Section 739 clearly and expressly delegates the authority to make that decision to the Secretaries of Defense, Treasury, or DHS, who are the agency heads here claiming the statutory authority to spend billions more on constructing a southern border wall than what Congress appropriated.

### B.   Section 739 Should Be Construed to Avoid a Violation of the Presentment Clause and Separation of Powers

"[I]t is a cardinal principle of statutory interpretation . . . that when an Act of Congress raises a serious doubt as to its constitutionality, [a] Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (quotations and citations omitted).  Courts "have read significant limitations into . . . statutes in order to avoid their constitutional invalidation." *Id.* (citation omitted).  Any government

reading of Section 739 that permits increasing funding for the wall beyond the $1.375 billion that Section 230 appropriated would be unconstitutional.

Under such a reading, Consolidated 2019 appropriated only $1.375 billion for southern border fencing at specified locations, using specified designs, but Section 739 would permit the executive branch effectively to amend (here, increase and expand) the amounts of funding, types of barrier, and locations based on facts and circumstances that existed before Consolidated 2019 was enacted. It violates the Presentment Clause, however, when a statute appropriates a certain amount for a certain subject but, "based on the same facts and circumstances that Congress considered," gives the executive the option of "rejecting the policy judgment made by Congress and relying on [its] own policy judgment." *Clinton v. City of New York*, 524 U.S. 417, 444 & n.35 (1998). Rather, even when foreign affairs are at issue, a statute may confer on the executive branch authority effectively to change a part of an appropriations Act, or any other statute, only "upon the occurrence of particular events subsequent to enactment." *Id.* at 445. Surely, *Clinton v. City of New York* equally voids statutory permission for either a unilateral executive decrease or increase in spending when there has been no change in facts and circumstances.

The executive branch's announcement on February 15, 2019, that it was using 284, 2808, and 9705(g)(4)(B) was simultaneous with the enactment of Section 739. Accordingly, the executive branch cannot be acting based "upon the occurrence of particular events subsequent to enactment" of Section 739. *Id.* at 445. Rather, such executive action "will necessarily be based on the same facts and circumstances that Congress considered, and therefore constitute[s] a rejection of the policy [judgment] made by Congress." *Id.* at 444 & n.35. Accordingly, any government interpretation that Section 739 permits a simultaneous executive increase in funding for the wall would violate the Presentment Clause. At a minimum, a court should construe Section 739 to avoid the serious constitutional issue raised by such a government interpretation.

This makes particular sense because a different provision of Consolidated 2019 provides a way for the executive branch to obtain more funding for the wall for fiscal years 2019 and 2020 that does not raise any constitutional issue. Section 230(c) requires DHS to submit to the congressional appropriations committees a plan "that includes the elements required under section 231(a) of Division F of the Consolidated Appropriations Act, 2018." The required elements include the planned "fencing [and] other physical barriers" and "estimates for the planned obligations of funds for fiscal years 2019 through 2027." Consolidated 2018, Div. F., section 230(a)(1), (4). After DHS submits those estimates, the Comptroller General must report its evaluation to the congressional appropriations committees within 120 days. *Id.* Section 231(b); Section 230(c) (readopting this evaluation requirement). The process enacted in Section 230(a) enables the executive branch to persuade Congress to appropriate more money for the wall. Given that Section 230(c) enacted a process for the executive branch to persuade Congress, it makes no sense that Section 739 would enable the executive branch instead to cut Congress out of the picture altogether.

## CONCLUSION

The Court should grant the motion for preliminary injunction.

Dated: April 23, 2019                          Respectfully submitted,

Richard Mancino (*pro hac vice pending*)        David W. Evans
Shaimaa M. Hussein (*pro hac vice pending*)
Matthew Dollan (*pro hac vice pending*)             /s/ David W. Evans
**WILLKIE FARR & GALLAGHER LLP**              **HAIGHT BROWN & BONESTEEL LLP**
787 Seventh Ave                                Three Embarcadero Center, Suite 200
New York, NY 10019                             San Francisco, CA 94111
Telephone: (202) 728-8000                      Telephone: (415) 281-7624
Facsimile: (202) 728-9000                      Facsimile: (415) 546-7505

Richard D. Bernstein (*pro hac vice forthcoming*)
1875 K Street, N.W.
Washington, D.C. 20006-1238
Telephone: (301) 775-2064

*Counsel for Amici Curiae* Christopher Shays, Christine Todd Whitman, Peter Keisler, Carter Phillips,
John Bellinger III, Stanley Twardy, and Richard Bernstein

# APPENDIX A

PB99-0000120
12965196.1

16

# LIST OF *AMICI CURIAE*

**Christopher Shays**, Representative, U.S. Congress, 1987–2009; Chairman, Subcommittee of National Security and Foreign Affairs of the House Oversight and Government Reform Committee; Member, Subcommittee on Intelligence, Information Sharing and Terrorism Risk Assessment of the House Homeland Security Committee.

**Christine Todd Whitman**, Administrator, Environmental Protection Agency, 2001–2003; Governor, New Jersey, 1994–2001.

**Peter Keisler**, Acting Attorney General, 2007; Assistant Attorney General for the Civil Division, 2003–2007; Principal Deputy Associate Attorney General and Acting Associate Attorney General, 2002–2003; Assistant and Associate Counsel to the President, 1986–1988.

**Carter Phillips**, Assistant to the Solicitor General, 1981–1984.

**John Bellinger III**, Legal Adviser to the Department of State, 2005–2009; Senior Associate Counsel to the President and Legal Adviser to the National Security Council, 2001–2005.

**Stanley Twardy**, U.S. Attorney for the District of Connecticut, 1985–1991.

**Richard Bernstein**, Appointed by this Court to argue in *Cartmell v. Texas*, 529 U.S. 513, 515 (2000); *Montgomery v. Louisiana*, 136 S. Ct. 718, 725 (2016).

# **CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2019, I caused the foregoing document to be filed via the U.S. District Court for the Northern District of California's CM/ECF system, which I understand caused service on all registered parties

*/s/ Paula Johnson*
Paula Johnson