JAMES M. BURNHAM
Deputy Assistant Attorney General
JOHN R. GRIFFITHS
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch
ANDREW I. WARDEN (IN #23840-49)
Senior Trial Counsel
KATHRYN C. DAVIS
MICHAEL J. GERARDI
LESLIE COOPER VIGEN
RACHAEL WESTMORELAND
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:    (202) 616-5084
Fax:     (202) 616-8470

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| SIERRA CLUB, *et al.*, | No. 4:19-cv-00892-HSG |
| Plaintiffs, | |
| v. | **DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL** |
| DONALD J. TRUMP, *et al.*, | |
| Defendants. | Hearing Date:  October 3, 2019 |
| | Time:  10:00 a.m. |
| | Place:  Oakland Courthouse |
| | Courtroom 2, 4th Floor |

**<u>TABLE OF CONTENTS</u>**

NOTICE OF MOTION .................................................................................................... 1

MOTION TO STAY PRELIMINARY INJUNCITON PENDING APPEAL .............................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

    INTRODUCTION ..................................................................................................... 2

    ARGUMENT ............................................................................................................ 4

        A.   The Balance of Harms Tip Decidedly in Favor of a Stay Pending Appeal ........ 4

        B.   The Government Is Likely to Prevail on the Merits ........................................... 8

        C.   Request for an Expedited Ruling on this Motion .............................................. 14

    CONCLUSION ........................................................................................................ 14

*Sierra Club, et al. v. Donald J. Trump, et al.*, 4:19-cv-00892-HSG – Defs.' Mot. to Stay Prelim. Inj.

i

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*All. for the Wild Rockies v. Cottrell,*
4
    632 F.3d 1127 (9th Cir. 2011) ............................................. 4, 8

5

*Armstrong v. Exceptional Child Ctr., Inc.,*
6
    135 S. Ct. 1378 (2015) ........................................................ 9

7

*Beck v. Prupis,*
    529 U.S. 494 (2000) ........................................................... 11
8

9

*Bos. Stock Exch. V. State Tax Comm'n.,*
    429 U.S. 318 (1977) ........................................................... 10

10

*City of Houston, Tex. v. Dep't of Housing & Urban Dev.,*
11
    24 F.3d 1421 (D.C. Cir. 1994) ........................................... 16

12

*Clarke v. Sec. Indus. Ass'n,*
13
    479 U.S. 388 (1987) ........................................................... 10

14

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.,*
    527 U.S. 308 (1999) ........................................................... 10
15

16

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*,
    752 F.3d 755 (9th Cir. 2014) ............................................. 8

17

*Lexmark Int'l, Inc. v. Static Control Components, Inc,*
18
    572 U.S. 118 (2014) ........................................................ 9, 10

19

*Markham v. Allen,*
20
    326 U.S. 490 (1946) ........................................................... 10

21

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
    567 U.S. 209 (2012 ............................................................ 10
22

23

*Nat'l Treasury Employees Union v. Von Raab,*
    489 U.S. 656 (1989) ........................................................... 4

24

*Nken v. Holder,*
25
    556 U.S. 418 (2009) ........................................................... 4

26

*United States v. Guzman-Padilla,*
    573 F.3d 865 (9th Cir 2009) ........................................... 2, 3, 6
27

28

*Sierra Club, et al. v. Donald J. Trump, et al.*, 4:19-cv-00892-HSG – Defs.' Mot. to Stay Prelim. Inj.

ii

*Winter v. Nat. Res. Def. Council,*
  555 U.S. 7 (2008)..............................................................................................................4

**Statutes**

10 U.S.C. § 284 ..................................................................................................*passim*

DoD Appropriations Act for Fiscal Year 2019, Pub. L. No. 115-245 (§ 8005) ...................*passim*

Consolidated Appropriations Act, 2019, Pub. L. No. 116-6.................................................11

**Other Authorities**

Federal Rule of Civil Procedure 62 .....................................................................................1

Declaring a Nat'l Emergency Concerning the S. Border of the United States, Pres. Proc. No.
  9844, 84 Fed. Reg. 4949 (Feb. 15, 2019) ......................................................................5

H.R. 2745, Fiscal Year 2020 Military Construction Bill.....................................................11

H. Rep. 93-662 (Nov. 26, 1973) ........................................................................................12

Veto Message for H.J. Res. 46 (Mar. 15, 2019) ..................................................................5

*Sierra Club, et al. v. Donald J. Trump, et al.*, 4:19-cv-00892-HSG – Defs.' Mot. to Stay Prelim. Inj.

iii

## NOTICE OF MOTION

PLEASE TAKE NOTICE that Defendants, by and through undersigned counsel, hereby move the Court for a stay pending appeal of its Order Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction, ECF No. 144 (Order).  Defendants respectfully request that the Court rule on this motion expeditiously.  If upon reviewing this motion the Court does not believe Defendants have met the requirements for a stay, Defendants request that the Court summarily deny the motion without awaiting a response from Plaintiffs.  Otherwise, Defendants respectfully ask that the Court rule on the motion no later than June 5, 2019, at which time Defendants intend to seek relief in the United States Court of Appeals for the Ninth Circuit. Defendants' have noticed this motion for the Court's first available hearing date (October 3, 2019), but are filing a separate motion pursuant to Civil Local Rule 6-3(a)(4), formally requesting that the Court shorten the time to hear Defendants' motion to stay.  In all events, Defendants respectfully request that the Court decide this motion on the papers submitted, without oral argument, pursuant to Civil Local Rule 7-1(b).

## MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

Pursuant to Federal Rule of Civil Procedure 62, Defendants respectfully move for a stay pending appeal of the Order, which enjoins Defendants from "taking any action to construct a border barrier in the areas Defendants have identified as Yuma Sector Project 1 and El Paso Sector Project 1 using funds reprogrammed by DoD under Section 8005 of the Department of Defense Appropriations Act, 2019."  *See* Order at 55.  The reasons for this Motion are set forth in the following Memorandum of Points and Authorities and all previous filings in this action, including but not limited to Defendants' brief in opposition to Plaintiffs' motion for a preliminary injunction (ECF No. 64) and the argument presented to the Court on May 17, 2019.  Counsel for the parties have conferred and Plaintiffs oppose Defendants' motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

On May 24, 2019, this Court entered an order granting in part and denying in part Plaintiffs' motion for a preliminary injunction. *See* ECF No. 144. In its order, the Court enjoined Defendants from "taking any action to construct a border barrier in the areas Defendants have identified as Yuma Sector Project 1 and El Paso Sector Project 1 using funds reprogrammed by DoD under Section 8005 of the Department of Defense Appropriations Act, 2019." *See* Order at 55. Defendants have filed a timely notice of appeal, *see* ECF No. 145, and now move to stay the Court's preliminary injunction pending appeal, so that construction and funding for these two border barrier projects can continue.

Unless stayed, the Court's injunction will irreparably harm the Government (and the public) by prohibiting the Government from taking critical steps to stop the flow of illegal drugs from entering the country through the southern border. Large quantities of illegal drugs are being smuggled into the country through the Yuma and El Paso sectors, including by transnational criminal organizations. This fiscal year, there have already been approximately 800 drug events between border crossings in these sectors, resulting in the seizure of thousands of pounds of illegal drugs, including substantial amounts of methamphetamine and fentanyl. *See* Declaration of Millard LeMaster ¶¶ 4-5 (attached as Exhibit 1). Indeed, the projects in Yuma and El Paso enjoined by the Court's order were the Department of Homeland Security's (DHS) first and third highest priority counter-drug fencing projects across the entire southern border. The Court's injunction preventing the construction of these two projects harms the Government's "strong interest" in "interdicting the flow of drugs" entering the United States. *United States v. Guzman-Padilla*, 573 F.3d 865, 889 (9th Cir. 2009).

Additionally, the Court's injunction prevents the Department of Defense (DoD) from obligating the remaining approximately $424 million of unobligated funds that is expected to be needed for the two projects. *See* Declaration of Eric M. McFadden ¶ 6 (attached as Exhibit 2). That money will be permanently unavailable to DoD for these projects unless it is obligated before the fiscal year ends on September 30, 2019. *Id.* ¶ 7. Moreover, DoD must have sufficient time

*Sierra Club, et al. v. Donald J. Trump, et al.*, 4:19-cv-00892-HSG – Defs.' Mot. to Stay Prelim. Inj.

2

before the end of the fiscal year to complete the complex contracting process required to obligate the remaining funds. *Id.* ¶¶ 8-10.  In the event the funds are not obligated before the end of the fiscal year, DoD will be unable to complete the projects as planned, and the contracts will have to be significantly de-scoped or terminated.  *Id.* ¶ 10.  Consequently, the Court's preliminary injunction will, if not stayed, impose irreparable injury on DoD by forever denying it the ability to use these funds for the projects unless stayed in sufficient time for the unobligated funds to be obligated before they expire.

Further, as a result of the Court's injunction, DoD has suspended work on the contracts for Yuma Sector Project 1 and El Paso Sector Project 1. *Id.* ¶ 11.  That suspension of work will require DoD to reimburse costs incurred by the contractors during this period of inactivity—costs that DoD would not have to pay but for the Court's injunction.  *Id.* ¶ 13.  These fees include the cost to keep equipment ready for use at multiple locations, security costs to avoid equipment and materials from being stolen or vandalized, and labor costs during the period of contract suspension. *Id.*  DoD estimates that these costs will be approximately $195,000 per day for El Paso Sector Project 1 and $20,000 per day for Yuma Sector Project 1. *Id.* ¶¶ 14-15.  In addition, the contractors have incurred significant costs for work already undertaken on the projects, but the Court's injunction prevents DoD from paying those costs.  *Id.* ¶ 16.  The inability to pay the contractors for the work undertaken to date will result in additional costs to the Government in the form of penalty fees that DoD estimates could collectively total approximately $774,000 per year.  *Id.* ¶¶ 16-18.  Therefore, if the contracts remain suspended, the Government could incur estimated additional expenses of $6,020,000 monthly, plus any interest. *Id.* ¶ 19.  Should DoD ultimately prevail, these expenditures will come out of the finite funds available for border barrier construction and will thus irreparably harm the Government's border barrier construction efforts. Indeed, these costs will quickly become unsustainable for the Government, and if the contracts remain suspended for too long, DoD will be forced to de-scope or terminate the contracts.  *Id.*

Taken together, these harms significantly outweigh the alleged injury to Plaintiffs' members' aesthetic and recreational interests that the Court found sufficient to warrant a preliminary injunction.  *See* Order at 49-50.  Defendants are also likely to succeed on the merits

*Sierra Club, et al. v. Donald J. Trump, et al.*, 4:19-cv-00892-HSG – Defs.' Mot. to Stay Prelim. Inj.

3

1  of the claim that DoD lawfully transferred $1 billion in accordance with the statutory requirements

2  of § 8005.  For these reasons, as explained further below, the Court should grant Defendants'

3  motion for a stay of the preliminary injunction pending appeal.

4  **ARGUMENT**

5  In deciding a motion to stay pending appeal, courts consider four factors: "(1) whether the

6  stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether

7  the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will

8  substantially injure the other parties interested in the proceeding; and (4) where the public interest

9  lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009).  Alternatively, in this Circuit, it is sufficient for

10  the moving party to show that "there are serious questions going to the merits" and "the balance

11  of hardships tips sharply" in the moving party's favor.  *All. for the Wild Rockies v. Cottrell*, 632

12  F.3d 1127, 1134-35 (9th Cir. 2011).[1]

13  **A.  The Balance of Harms Tip Decidedly in Favor of a Stay Pending Appeal.**

14  This Court's preliminary injunction prohibiting any action to construct the Yuma Sector 1

15  and El Paso Sector 1 border barrier projects will cause serious and irreparable harms to the

16  Government that significantly outweigh any aesthetic and recreational harms the handful of

17  Plaintiffs' members who filed declarations might suffer if the injunction is stayed.

18  The Supreme Court has recognized that the Government has "compelling interests in safety

19  and in the integrity of our borders," *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656,

20  672 (1989), but the Court's injunction directly interferes with the Government's ability to advance

21  those compelling interests.  Specifically, the injunction prohibits the Government from taking

22  critical steps needed to prevent the continuing surge of illegal drugs from entering the country

23  through the southern border.  As the President recently explained in declaring a national emergency

24  along the southern border, tens of thousands of pounds of illegal drugs are smuggled across the

25  southern border each year and the border is a "major entry point" for "illegal narcotics."  *See*

26
27  [1] The Government respectfully submits that the Ninth Circuit's sliding scale approach to
   stays and preliminary injunctions, as set forth in *All. for the Wild Rockies*, is contrary to the
   Supreme Court's holding in *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). But it is
28  nonetheless the approach that the Ninth Circuit has held the Court must apply here.

Declaring a Nat'l Emergency Concerning the S. Border of the United States, Pres. Proc. No. 9844, 84 Fed. Reg. 4949 (Feb. 15, 2019); Veto Message for H.J. Res. 46 (Mar. 15, 2019); *see also* Remarks by President Trump in Briefing on Drug Trafficking on the Southern Border (Mar. 13, 2019), at https://www.whitehouse.gov/briefings-statements/remarks-president-trump-briefing-drug-trafficking-southern-border/.

In this case, DHS identified the two border barrier projects enjoined by the Court as its first and third highest priority counter-drug fencing projects across the entire southern border because of the high rates of drug smuggling between ports of entry in the El Paso and Yuma border patrol sectors. *See* First Rapuano Declaration, Ex. A at 10 (ECF No. 64-8). As set forth in DHS's February 25, 2019 request to DoD for assistance pursuant to 10 U.S.C. § 284, the United States Border Patrol had more than 700 separate drug-related events between border crossings in the El Paso Sector in fiscal year 2018, through which it seized over 15,000 pounds of marijuana, over 342 pounds of cocaine, over 40 pounds of heroin, and over 200 pounds of methamphetamine. *Id.* at 8. These high rates of drug smuggling have continued into fiscal year 2019, with the Border Patrol having already seized over 9,500 pounds of marijuana, over 113 pounds of cocaine, and over 228 pounds of methamphetamine. LeMaster Decl. ¶ 4. The existing vehicle barriers currently in place along the 46-mile stretch of territory in New Mexico where El Paso Sector Project 1 will be built are no longer able to effectively stop illegal drugs from entering the United States. *See* First Rapuano Declaration, Ex. A at 8. Transnational criminal organizations have adapted their tactics to thwart the vehicle barriers by switching to foot traffic, cutting the barrier, or simply driving over it to smuggle their illicit cargo into the United States. *Id.* In order to respond to these changes in tactics, U.S. Customs and Border Patrol has requested the construction of pedestrian fencing and has asked that DoD provide that support pursuant to 10 U.S.C. § 284(b)(7). *Id.* The Court's injunction, however, prevents DoD from taking action to construct the requested barrier project to assist DHS's efforts to counter the significant drug smuggling activity in this area.

The Yuma border patrol sector has experienced similarly high rates of illegal drug activity. In fiscal year 2018, there were over 1,400 separate drug-related events between border crossings in the Yuma Sector, through which the Border Patrol seized over 8,000 pounds of marijuana, over

*Sierra Club, et al. v. Donald J. Trump, et al.*, 4:19-cv-00892-HSG – Defs.' Mot. to Stay Prelim. Inj.

5

78 pounds of cocaine, over 102 pounds of heroin, over 1,700 pound of methamphetamine, and over 6 pounds of fentanyl.  *Id.* at 4.  In fiscal year 2019, the Border Patrol has already seized over 664 pounds of methamphetamine and over 36 pounds of fentanyl.  *See* LeMaster Decl. ¶ 5. Additionally, the Sinaloa Cartel operates in the Yuma area and controls illicit networks and operations in the United States.  *See* First Rapuano Declaration, Ex. A at 4.  The 5-mile area where Yuma Sector Project 1 will be built currently has ineffective vehicle barriers that must be replaced with new pedestrian fencing in order to counter the current tactics of transnational criminal organizations operating in the Yuma Sector.  *See id.*; Declaration of Paul Enriquez ¶ 12 (ECF No. 64-9).  Without the ability to move forward with the Yuma Sector 1 Project, the Court's injunction harms the Government's "strong interest" in "interdicting the flow of drugs" entering the United States.  *Guzman-Padilla*, 573 F.3d at 889.

In addition to these severe harms to the public, the preliminary injunction harms DoD's ability to complete the Yuma and El Paso projects in two other distinct, serious, and irreparable ways.  *See* McFadden Decl.  *First*, the Court's preliminary injunction forbids DoD from spending approximately $424 million it has transferred for border barrier construction but has not yet obligated via construction contracts.  *See id.* ¶¶ 6-7.  Those funds came from appropriations Congress previously provided to DoD, which DoD transferred into its counter-narcotics account using transfer authority Congress conferred in § 8005, and then further transferred into the Operation and Maintenance, Army account for border barrier construction.  *See* First Rapuano Declaration ¶¶ 5-6.  Should DoD ultimately prevail on the merits, DoD would be entitled to spend those funds on border barrier construction.  But unless those funds are obligated by the end of the fiscal year on September 30, 2019, this money will no longer remain available to DoD.  *See* McFadden Decl. ¶ 7; *see City of Houston, Tex. v. Dep't of Housing & Urban Dev.*, 24 F.3d 1421, 1424, 1426–27 (D.C. Cir. 1994) (applying the "well-settled [principle] of constitutional law that when an appropriation has lapsed . . . federal courts cannot order the expenditure of funds that were covered by that obligation" to dismiss a lawsuit filed after appropriation had lapsed on mootness grounds).  And because the contracting process required to obligate the remaining money is complex and time consuming, DoD will need to begin that process sufficiently in advance of

*Sierra Club, et al. v. Donald J. Trump, et al.*, 4:19-cv-00892-HSG – Defs.' Mot. to Stay Prelim. Inj.

6

September 30 in order to meet that deadline.  *See* McFadden Decl. ¶¶ 8-10.  If that fiscal year deadline is not met, the remaining unobligated funds would be unavailable, DoD will be unable to complete the projects as planned, and the contracts will have to be significantly de-scoped or terminated.  *Id*. ¶ 10.  That means an injunction that continues past September (and likely well before then) will effectively operate as a final judgment as to the unobligated money that DoD currently has allocated to the two border barrier projects at issue, which, again, amounts to approximately $424 million.  The Court's preliminary injunction would thus irreparably harm the Government's ability to complete the two projects at issue by effectively cancelling this substantial amount of funding that Congress previously appropriated and has not rescinded.

*Second*, and relatedly, each day the Court's preliminary injunction continues and contract performance on the projects is suspended, DoD will incur liabilities to the contractors for significant, otherwise-unnecessary costs, all of which DoD would not have incurred but for the Court's injunction.  McFadden Decl. ¶ 13.  As explained above and in the McFadden Declaration, DoD will be required to pay various additional costs incurred by the contractors during this period of inactivity, including for labor and equipment maintenance costs, that would otherwise be spent on actual barrier construction.  *Id.*  DoD estimates incurring liabilities of approximately $195,000 per day for El Paso Sector Project 1 and $20,000 for Yuma Sector Project 1 for each day that the injunction bars performance of the contracts.  *See* McFadden Decl. ¶¶ 14-15.  In addition, the injunction's prohibition against DoD's paying the contractors for the work they have undertaken to date will result in additional costs to the Government in the form of interest assessed under the Prompt Payment Act that DoD estimates could collectively total approximately $774,000 per year.  *Id.* ¶¶ 17-18.  If the contracts remain suspended, the Government could incur estimated additional expenses of $6,020,000 monthly, plus any interest.  *Id.* ¶ 19. These costs will quickly become unsustainable for the Government, and if the contracts remain suspended for too long, DoD will be forced to de-scope or terminate the contracts.  *Id.*  Should DoD eventually prevail on the merits, these liabilities that the injunction caused it to incur along the way will irreparably harm its programmatic interests by diverting scarce funding and leaving less total money for planned border barrier construction.

*Sierra Club, et al. v. Donald J. Trump, et al.*, 4:19-cv-00892-HSG – Defs.' Mot. to Stay Prelim. Inj.

7

Plaintiffs cannot present any comparable harm that would outweigh these significant public and governmental interests. The Court's Order enjoining the El Paso and Yuma projects was based solely on a finding that "Plaintiffs have demonstrated a likelihood of irreparable harm to their members' aesthetic and recreational interests" in the two project areas. *See* Order at 49. But the vast majority of the construction activity in these areas will occur within a 60-foot strip of land that parallels the international border on areas that are already heavily disturbed, include existing barriers and roads, and function primarily as a law enforcement zone. *See* Enriquez Decl. ¶ 63. The proposed construction projects will not make any change to the existing land use within or near the project areas. *Id.* ¶¶ 63-64. Any alleged diminution of Plaintiffs' members' recreation and aesthetic interests in these area must be evaluated against this backdrop. Accordingly, this case does not present a situation similar to the cases cited by the Court's Order, such as *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1128 (9th Cir. 2011), where the Forest Service authorized extensive cutting of trees on over 1,600 acres in a national forest, which the Court of Appeals found would harm the plaintiffs' "members' ability to view, experience, and utilize the areas in their undisturbed state." *See also League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 764 (9th Cir. 2014) (finding irreparable injury due "to the logging of thousands of mature trees"). Nothing comparable to those cases is happening here to change the existing natural landscape or prevent residents from recreating in the project areas. In the absence of any such comparable injury, the "diminishing [ ] pleasures" and "sense of fulfillment" plaintiffs' handful of members may experience as a result of Defendants' proposed construction projects are insufficient to overcome the compelling harms to the public and Government explained above. *See* Del Van Decl. ¶ 10 (ECF No. 30); Munro Decl. ¶ 11 (ECF No. 31).

**B.      The Government Is Likely to Prevail on the Merits.**

The Government respectfully submits that it is also likely to succeed on the merits of its appeal with respect to the Court's analysis of § 8005, which was the legal basis for the Court's injunction. *See* Order at 27 ("Applying the *Winter* factors, the Court finds Plaintiffs are entitled to a preliminary injunction as to Defendants' use of Section 8005's reprogramming authority to

*Sierra Club, et al. v. Donald J. Trump, et al.*, 4:19-cv-00892-HSG – Defs.' Mot. to Stay Prelim. Inj.

8

1    channel funds into the drug interdiction fund so that those funds may be ultimately used for border

2    barrier construction in El Paso Sector Project 1 and Yuma Sector Project 1.").

3              At the outset, the Court erred in concluding that Plaintiffs have standing to challenge DoD's

4    use of § 8005.  *See* Order at 23-25.  The Court's Order identified no prior cases in which a court

5    has held that a private party has standing to challenge a federal agency's decision to transfer funds

6    between internal budget accounts.  The absence of such authority is not surprising because

7    Plaintiffs simply are not injured within the meaning of Article III when an agency moves money

8    from one budget column to another.  *See* Defs' Opp. at 13-14.  Plaintiffs' alleged injuries would

9    only be traceable to DoD's construction of border barriers under § 284, not the separate transfer

10   of funds pursuant to § 8005.

11             The Court also erred in reasoning that Plaintiffs have a non-statutory cause of action to

12   enforce § 8005 and that the zone of interests test does not apply to § 8005.  *See* Order at 28-30.

13   The Court principally relied on *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1387

14   (2015), to support its conclusion that private plaintiffs may bring a non-statutory equitable action

15   to enforce the Executive's compliance with federal statutes, but *Armstrong* cannot be read that

16   broadly.  *Armstrong* rejected a type of implied equitable action similar to what Plaintiffs seek here

17   in the context of a Supremacy Clause challenge.  And there was no discussion in *Armstrong* that

18   would suggest the Supreme Court was authorizing a sweeping implied *ultra vires* cause of action

19   to enforce federal statutory requirements against the Executive Branch.  *See id.* at 1384-85 ("The

20   ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts

21   of equity," and as such is available only in "some circumstances" that present "a proper case" and

22   "is subject to express and implied statutory limitations.")

23             This Court also held that the zone of interests test "has no application in an *ultra vires*

24   challenge," *id.* at 29, but the Supreme Court's most recent discussion of the test made clear that

25   the zone of interests requirement is a general presumption about the scope of all causes of action.

26   *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (stating that

27   "it is a requirement of general application" and that "the limitation *always* applies and is never

28   negated") (emphasis in original).  The Court's Order cited a passage in *Lexmark* for the proposition

*Sierra Club, et al. v. Donald J. Trump, et al.*, 4:19-cv-00892-HSG – Defs.' Mot. to Stay Prelim. Inj.

that the zone of interests test "only relates to statutorily-created causes of action," *id.*, but even assuming a non-statutory *ultra vires* claim is available here, the Supreme Court has made clear that such equitable claims are still statutory—namely, they are inferred from Congress's grant of equity jurisdiction to the federal courts.  *See Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 332 (1999) (stating that the federal courts "equitable powers" were "conferred by the Judiciary Act of 1789"); *Markham v. Allen*, 326 U.S. 490, 494 (1946) (same). Further, the Supreme Court has emphasized that the zone of interests test applies with even greater rigor in cases such as this in which Plaintiffs assert a statutory violation outside of the Administrative Procedure Act's "generous review provisions." *Id.* at 130; *see also Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 400 n.16 (1987).  Indeed, the Supreme Court has applied the zone of interests test in a case involving a non-statutory cause of action*, see Bos. Stock Exch. v. State Tax Comm'n*, 429 U.S. 318, 320 (1977) (noting that plaintiffs "suffer[ed] an actual injury within the zone of interests protected by the Commerce Clause"), as well as a case asserting that the Executive Branch acted in excess of its statutory authority, *see Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012) (plaintiff alleged that "the Secretary [of the Interior] exceeded her authority under [25 U.S.C.] § 465" and "this statutory violation will cause him economic, environmental, and aesthetic harm").  This Court's holding that the zone of interests test does not apply in cases "where a plaintiff seeks equitable relief against a defendant for exceeding its statutory authority" cannot be reconciled with this binding contrary authority. *See* Order at 20.  If applied correctly, the zone of interests test supports dismissal of Plaintiffs' § 8005 claim because that statute exists to govern the relationship between Congress and DoD with respect to military spending, not to protect Plaintiffs' private, recreational interests.

With respect to the Court's analysis of the merits of § 8005, *see* Order at 31-42, Defendants respectfully submit the Court erred in concluding that "the item" at issue for purposes of § 8005 is general "[b]order barrier construction."  *See id.* at 34.  DoD's transfer of funds was consistent with § 8005's limitation restricting transfers "where the item for which funds are requested has been denied by the Congress."  Congress has not "denied" any request by DoD to fund "the item" to which DoD transferred funds—namely counter-drug funding and fence construction under § 284.

*Sierra Club, et al. v. Donald J. Trump, et al.*, 4:19-cv-00892-HSG – Defs.' Mot. to Stay Prelim. Inj.

10

Congress's affirmative appropriation of $1.375 billion to DHS in the Consolidated Appropriations Act for the construction of "primary pedestrian fencing" in the Rio Grande Valley Sector is not a "denial" of appropriations to DoD for its counter-drug activities.  *See* Pub. L. No. 116-6, div. A, § 230.  This is clear from the text of that appropriation, which says nothing whatsoever about DoD border barrier projects or § 284 even as it *does* expressly deny funding for a different, specific use: "None of the funds made available by this Act or prior Acts are available for the construction of pedestrian fencing" in five specified locations.  *See id.* § 231; *see also id.* § 219.  By including that specific denial in the Consolidated Appropriations Act, Congress made clear that it knows how to deny funding when it wants to.  And indeed, the House of Representatives recently added a restriction on the use of military construction money for border barriers to the pending bill for military construction projects in fiscal year 2020 using language that would directly address—as opposed to simply say nothing about—the sorts of projects at issue here.  *See* H.R. 2745, Fiscal Year 2020 Military Construction Bill § 612 (attached as Exhibit 3).  But Congress has not yet imposed such restrictions on DoD's ability to utilize its § 284 counter-narcotics funding for border fence construction and thus has not "denied" funding for that program.

The Court's construction of Congress's mere appropriation of finite funds to DHS for border barrier construction as constituting an affirmative "denial" under § 8005 would, in contrast, severely constrain that statutory authority because virtually every transfer of funds will be to an item that has received at least *some* level of appropriated funding.  *See Beck v. Prupis*, 529 U.S. 494, 506 (2000) (statutes "should not be construed so as to render any provision of that statute meaningless or superfluous").  Under the Court's rationale, every decision by Congress to provide *some* funding for an item also implicitly denies any additional funding, such that § 8005 can never be used to transfer additional funds for that item.  But the purpose of § 8005 is to transfer money to areas where *additional* funds are needed to augment existing appropriations, and the Court's construction would preclude any such transfers.  Neither the statutory text nor the history of this provision suggests that Congress intended this result, particularly in a situation where the purported denial comes not from a situation in which "the Department [of Defense] has requested that funds which have been specifically deleted in the legislative process be restored," but rather

*Sierra Club, et al. v. Donald J. Trump, et al.*, 4:19-cv-00892-HSG – Defs.' Mot. to Stay Prelim. Inj.

11

1    from the Court construing an affirmative appropriation of funds to a separate federal agency as an

2    implicit "denial" of funds to DoD.  H. Rep. 93-662, at 16 (Nov. 26, 1973).

3          The Court also concluded that the need for additional funding for border barriers was not

4    "unforeseen" under § 8005 because of "the Administration's multiple requests for funding for

5    exactly that purpose dating back to at least early 2018" and the President's April 2018 directive

6    that DoD provide support to DHS at the southern border.  Order at 35-36.  But the Court's

7    construction of "unforeseen" would expand the meaning of that term beyond its context and would

8    restrict § 8005 to events that "the government as a whole plainly cannot predict (like the need to

9    repair hurricane damage)."  *Id.* at 36.  This narrow construction far outstrips the self-evident

10   purpose of § 8005, which is to accord DoD the financial management flexibility it requires to meet

11   anticipated budgetary needs within the congressional budgeting process.  DoD did not evade the

12   budgetary process even by Plaintiffs' account since there is no indication that DoD foresaw in the

13   summer of 2018 that it would receive these § 284 requests to engage in border barrier construction

14   many months later, such that it should have requested additional funding for its § 284 account.

15         That this was not an expenditure DoD could have foreseen and sought funding for in the

16   summer of 2018 is particularly clear given the unique nature of § 284 projects.  Unlike most DoD

17   projects—in which DoD spends DoD appropriated funds to build projects DoD will use—DoD

18   engages in § 284 construction at the behest of a civilian law enforcement agency to aid that agency

19   in its separate mission.  DoD is not even permitted to undertake § 284 construction unless and until

20   it receives a request from a civilian law enforcement agency, 10 U.S.C. § 284(a)(1), and thus has

21   no foreseeable use for counter-narcotics support funds absent a specific § 284 request.  DoD would

22   accordingly not request an appropriation for its "Drug Interdiction and Counter-drug Activities,

23   Defense" account (the transfer account used to fund DoD counter-drug activities, including those

24   under § 284) beyond historical levels unless it knew a specific request for § 284 support would be

25   forthcoming—knowledge it did not have in the summer of 2018, particularly about the specific

26   § 284 projects at issue here.

27         Moreover, the Court's broad interpretation of foreseeability in this context—and

28   concomitant limitation of § 8005 to national disasters or similar events—is inconsistent with the

way Congress and DoD have understood the provision for many years.  For example, in 2007, Congress concurred in a proposed transfer of funds under § 8005 from the "Military Personnel, Army" account into the "Drug Interdiction and Counter-drug Activities, Defense" account for the purpose of a "construction of an infrastructure project" in Nicaragua. *See* Reprogramming Application & Congressional Approvals, Sept. 2007 (attached as Exhibit 4).  Further, Congress has not objected to the transfer of funds under § 8005 to support DoD's involvement in CBP's border security mission, which included using the National Guard to construct border barriers.  *See* Reprogramming Application & Congressional Approvals, Sept. 2006 (transferring funds to support the National Guard's involvement to support Operation Jump Start, the CBP operation that DoD supported in 2006-08 to assist CBP's border security efforts, which included construction efforts by the National Guard) (attached as Exhibit 5); *see also* Joint Statement of Rood and Gilday (describing Operation Jump Start and the National Guard's role in "building more than 38 miles of fence") (ECF No. 64-3).  Neither of these projects resulted from a sudden emergency akin to a typhoon or hurricane.  For these reasons, as well those set forth in Defendants' opposition brief, "unforeseen" should be construed within the context of the DoD budget process.  And here, the need for DoD to provide support for DHS's requested projects was an unforeseen military requirement at the time of the President's fiscal year 2019 budget request, and it remained an unforeseen military requirement through Congress's passage of DoD's fiscal year 2019 budget in September 2018, which was, again, five months before DHS's sent specific requests to DoD under § 284.  *See* Defs.' Opp at 16-17.

Finally, Defendants respectfully disagree with the Court's conclusion that Defendants' proposed construction of § 8005 "would pose serious problems under the Constitution's separations of powers principles."  Order at 36.  Congress has provided DoD with statutory authorization to transfer funds with appropriate notifications to Congress over the course of the fiscal year that is the subject of the DoD appropriations act, and that authority is not unconstitutional.  There is nothing extraordinary about this authority, which Congress has routinely and repeatedly granted over many years and which is no different from the broad discretion Congress frequently gives agencies over how to use appropriated funds.  Nor would

1   there be any constitutional problem with an unambiguous appropriation of $4 billion to DoD for

2   DoD to use as it saw fit within its substantive jurisdiction.  The absence of any constitutional defect

3   in such a lump sum appropriation makes clear that there are no constitutional issues presented by

4   § 8005, such that there is no need to put a thumb on the statutory-construction scale via the canon

5   of constitutional avoidance.  If the § 8005 issue is presented, as the Court found it is, the Court

6   should simply interpret that provision according to its terms and within its broader statutory

7   context—terms and context that make clear DoD acted well within its statutory authority here.

8                    **C.      Request for an Expedited Ruling on this Motion**

9           For the reasons stated above, as well as in Defendants' brief in opposition to the preliminary

10  injunction motion, and at oral argument on the motion, no preliminary injunction should have been

11  issued and this stay motion should be granted.  Absent the injunction from this Court, construction

12  on the Yuma Sector 1 project would begin this week.  *See* Order at 9.  In Defendants' judgment,

13  therefore, every day that this injunction remains in place irreparably harms the Government's

14  ability to stop the flow of illegal drugs entering the United States, including by preventing DoD

15  from obligating appropriated funds that expire at the end of the fiscal year, and wasting taxpayer

16  funds on needless costs and penalties paid to contractors that would otherwise go toward actual

17  construction.

18          Accordingly, Defendants respectfully request that the Court rule on this motion quickly.  If

19  the Court, upon reviewing this motion, concludes that a stay is inappropriate, Defendants

20  respectfully ask that the Court summarily deny the motion without awaiting a response from

21  Plaintiffs, so that Defendants can seek relief from the Ninth Circuit without further delay.  In any

22  event, Defendants respectfully request a ruling on this motion no later than June 5, 2019, at which

23  time Defendants intend to seek relief in the United States Court of Appeals for the Ninth Circuit.

24                                      **CONCLUSION**

25          For the foregoing reasons, the Court should stay its Order granting Plaintiffs' preliminary

26  injunction in part pending final resolution of Defendants' appeal.  A proposed order is attached.

27

28

*Sierra Club, et al. v. Donald J. Trump, et al.*, 4:19-cv-00892-HSG – Defs.' Mot. to Stay Prelim. Inj.

14

DATE:  May 29, 2019

Respectfully submitted,

JAMES M. BURNHAM
Deputy Assistant Attorney General

JOHN G. GRIFFITHS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

/s/ *Andrew I. Warden*
ANDREW I. WARDEN
Senior Trial Counsel (IN Bar No. 23840-49)

RACHAEL L. WESTMORELAND
KATHRYN C. DAVIS
MICHAEL J. GERARDI
LESLIE COOPER VIGEN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:   (202) 616-5084
Fax:   (202) 616-8470