DROR LADIN*
NOOR ZAFAR*
JONATHAN HAFETZ*
HINA SHAMSI*
OMAR C. JADWAT*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2660
dladin@aclu.org
nzafar@aclu.org
jhafetz@aclu.org
hshamsi@aclu.org
ojadwat@aclu.org
**Admitted* pro hac vice

CECILLIA D. WANG (SBN 187782)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 343-0770
cwang@aclu.org

*Attorneys for Plaintiffs* (Additional counsel listed on following page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO-OAKLAND DIVISION**

| | |
|---|---|
| SIERRA CLUB and SOUTHERN BORDER COMMUNITIES COALITION,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, President of the United States, in his official capacity; PATRICK M. SHANAHAN, Acting Secretary of Defense, in his official capacity; KEVIN K. MCALEENAN, Acting Secretary of Homeland Security, in his official capacity; and STEVEN MNUCHIN, Secretary of the Treasury, in his official capacity,<br><br>*Defendants.* | Case No.: 4:19-cv-00892-HSG<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUPPLEMENTAL PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: October 3, 2019<br>Judge: Honorable Haywood S. Gilliam, Jr.<br>Dept: Oakland<br>Date Filed: May 29, 2019<br>Trial Date: Not set |

Additional counsel for Plaintiffs:

SANJAY NARAYAN (SBN 183227)**
GLORIA D. SMITH (SBN 200824)**
SIERRA CLUB ENVIRONMENTAL LAW PROGRAM
2101 Webster Street, Suite 1300
Oakland, CA 94612
Tel: (415) 977-5772
sanjay.narayan@sierraclub.org
gloria.smith@sierraclub.org
**Counsel for Plaintiff SIERRA CLUB

MOLLIE M. LEE (SBN 251404)
CHRISTINE P. SUN (SBN 218701)
AMERICAN CIVIL LIBERTIES UNION
 FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 621-2493
Fax: (415) 255-8437
mlee@aclunc.org
csun@aclunc.org

DAVID DONATTI*
ANDRE I. SEGURA (SBN 247681)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
 OF TEXAS
P.O. Box 8306
Houston, TX 77288
Tel: (713) 325-7011
Fax: (713) 942-8966
ddonatti@aclutx.org
asegura@aclutx.org
**Admitted* pro hac vice

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION ......................... 1

MEMORANDUM OF POINTS AND AUTHORITIES.............................................................. 1

    INTRODUCTION ...................................................................................................................... 1

    FACTS ........................................................................................................................................ 2

    ARGUMENT ............................................................................................................................. 3

        I.   Plaintiffs Are Likely to Succeed on the Merits of Their Claims ................................. 3

        II.  Plaintiffs Have Shown Irreparable Harm ...................................................................... 6

        III. The Balance of Harms and Public Interest Favor Plaintiffs ......................................... 7

    CONCLUSION ......................................................................................................................... 8

## NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

PLEASE TAKE NOTICE that Plaintiffs Sierra Club and Southern Border Communities Coalition hereby move the Court pursuant to Federal Rule of Civil Procedure 65 for a preliminary injunction against Defendants Donald J. Trump, President of the United States of America; Patrick M. Shanahan, in his official capacity as Acting Secretary of Defense; and Kevin K. McAleenan, in his official capacity as Acting Secretary of Homeland Security[1] (collectively, "Defendants"). Plaintiffs respectfully request that this motion be decided without argument. Should the Court deem oral argument appropriate, Plaintiffs respectfully request that such argument be scheduled for the earliest available date prior to July 1, 2019.

Plaintiffs respectfully move the Court to enter a preliminary injunction prohibiting Defendants and all persons associated with them from taking action to build a border wall to construct a border barrier in the areas Defendants have identified as El Centro Project 1 and Tucson Sector Projects 1, 2, and 3 using funds reprogrammed under Sections 8005 and 9002 of the Department of Defense Appropriations Act, 2019, and Section 1512 of the John S. McCain National Defense Authorization Act for Fiscal Year 2019. This motion is based on this Notice of Motion and Motion, the accompanying supporting Memorandum of Points and Authorities, the record filed in this case to date, and any other written or oral evidence or argument that may be presented at or before the time this motion is decided by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This motion presents virtually identical "legal questions regarding whether the proposed plan for funding border barrier construction exceeds the Executive Branch's lawful authority" to those decided in the Court's May 24, 2019 Order Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction. Dkt. No. 144 ("PI Order") at 2. At issue here are an additional $1.5 billion in military funds that Defendants intend to divert to construct President Trump's wall. Defendants intend to use these funds to erect sections of the wall on unique lands including the

---

[1] Acting Secretary McAleenan is automatically substituted for former Secretary Kirstjen M. Nielsen. *See* Fed. R. Civ. P. 25(d).

Cabeza Prieta National Wildlife Refuge, the Organ Pipe Cactus National Monument, the San Pedro River, the San Bernardino National Wildlife Refuge, and the El Centro valley. Construction of a 30-foot wall on these lands, along with the accompanying lighting and roads, will irreparably harm Plaintiff Sierra Club's members' recreational and aesthetic interests in the borderlands they live in, use, and treasure.

Defendants' proposed wall construction in California and Arizona is not authorized by the statutes they invoke, and violates both the restrictions Congress imposed in the Consolidated Appropriations Act, 2019, and by the Constitution. The Court should accordingly enjoin the unauthorized use of funds for construction of these additional wall sections.

**FACTS**

On May 9, 2019, "Defendant Shanahan authorized an additional $1.5 billion in funding for border barrier construction, in further response to DHS's February 25, 2019 request for support under Section 284, for four projects: one located in California—El Centro Project 1—and three located in Arizona—Tucson Sector Projects 1–3." PI Order at 11–12. In addition to Section 8005 of the Department of Defense Appropriations Act, 2019, Defendants invoked Section 9002 of the Department of Defense Appropriations Act, 2019, and Section 1512 of the John S. McCain National Defense Authorization Act for Fiscal Year 2019 ("NDAA"). PI Order at 12. Defendant Shanahan's reprogramming notices state that the $1.5 billion would be diverted from accounts that Congress appropriated for military pay and retirement plans, aircraft and missile funding, chemical weapon destruction, and support for Afghanistan National Defense and Security Forces. *See* Dkt. No. 131-2 ("Rapuano Third Decl."), Ex. A. Defendant Shanahan further ordered that reprogramming should occur "without regard to comity-based policies that require prior approval from congressional committees." Dkt. No. 118-1 ("Rapuano Second Decl."), Ex. B at 2.

Defendants intend to use the diverted $1.5 billion to construct "78.25 miles of 30-foot pedestrian fencing," accompanied by roads and lighting, in Arizona and California. Rapuano Second Decl., Ex. A at 1. Many miles of the proposed construction run along the Organ Pipe National Monument, and replace the wildlife-permeable vehicle barriers that currently exist in the National Park. According to the Department of Interior, the current barrier "has not been breached, and

monitoring has revealed a dramatic decline in illegal off-road vehicle activity." U.S. Dep't of Interior, *International Border Vehicle Barrier*, Nat'l Park Serv. (May 13, 2018), https://www.nps.gov/orpi/planyourvisit/barrier.htm. The current "barrier design allows water, and animals, including the highly endangered Sonoran Pronghorn, to safely roam their natural ranges uninterrupted." *Id.* Defendants' proposed new fence is much higher, much denser, and impermeable to most animals.

If not enjoined, construction of the fence sections at issue here could begin as early as July 1, 2019. *See* PI Order at 31 n.15 (noting representation from counsel for Defendants that "'no construction will start [with those funds] until at least 45 days from' the May 17, 2019 hearing date").

**ARGUMENT**

Defendants' efforts to divert an additional $1.5 billion to the President's wall suffer from the same legal flaws identified by the Court in its previous Order. Plaintiffs are likely to succeed on the merits of their claim that Defendants' proposed wall construction in El Centro Project 1 and Tucson Sector Projects 1–3 is unlawful. Congress did not appropriate funds for Defendants' proposed wall construction in these areas, and Defendants may not use Sections 8005 and 9002 of the Department of Defense Appropriations Act, 2019, and Section 1512 of the John S. McCain National Defense Authorization Act for Fiscal Year 2019 ("NDAA") to circumvent Congress's considered judgment.

In addition to their likely success on the merits, the declarations filed in support of this motion demonstrate a likelihood of irreparable harm to Plaintiffs' members' aesthetic and recreational interests in the areas identified as El Centro Project 1 and Tucson Projects 1–3. For the reasons set forth in the Court's PI Order, the balance of equities and public interest tip in favor of Plaintiffs. The Court should issue a preliminary injunction to preserve the status quo while this matter is pending.

**I.      Plaintiffs Are Likely to Succeed on the Merits of Their Claims.**

The wall projects at issue in this motion are funded entirely through transfers from accounts that were appropriated for uses other than counter-narcotics support under 10 U.S.C. § 284. *See* Second Rapuano Decl. ¶ 7, Ex. B; Third Rapuano Decl. ¶ 4, Ex. A. "In other words, every dollar of

Section 284 support to DHS and its enforcement agency, CBP is attributable to reprogramming mechanisms." PI Order at 16. Because "Plaintiffs have shown a likelihood of success as to their argument that Congress previously denied 'the item for which funds are requested,'" PI Order at 32, and because each of the reprogramming mechanisms that Defendants seek to use may not be used for an item that has been denied by Congress, the additional wall sections should be enjoined. In addition, because "Plaintiffs also have shown a likelihood of success as to their argument that Defendants fail to meet the 'unforeseen military requirement' condition for the reprogramming of funds under Section 8005," PI Order at 35, and because 10 U.S.C. § 2214 imposes an identical condition on all DoD transfer authorities (other than military construction), the additional wall sections should be enjoined.[2]

Defendants invoke three reprogramming authorities to justify their diversion of funds, each of which is subject to the limitation that it may not be used for an item that has been denied by Congress. Section 8005 may not be used "where the item for which funds are requested has been denied by Congress." PI Order at 41. Likewise, "Defendants' Section 9002 authority is, at a minimum, subject to Section 8005's limitations." PI Order at 12 n.7. Finally, Section 1512 is subject to the restrictions contained in Section 1001 of the NDAA. *See* NDAA, Pub. L. 115-232 § 1512(b) ("Transfers under this section shall be subject to the same terms and conditions as transfers under section 1001."); *see also* Dkt. No. 131, at 4 (acknowledging that "§ 1512 of NDAA incorporates the requirements of § 1001 by reference"). Section 1001, in turn, provides that transfer authorizations "may not be used to provide authority for an item that has been denied authorization by Congress." NDAA § 1001(b)(2).

As the Court held with respect to the Yuma and El Paso wall sections, "the reality is that Congress was presented with—and declined to grant—a $5.7 billion request for border barrier construction. Border barrier construction, expressly, is the item Defendants now seek to fund via the Section 8005 transfer, and Congress denied the requested funds for that item." PI Order at 34.

---

[2] Plaintiffs have standing to challenge the antecedent transfers because the wall construction is fairly traceable to the transfers. *See* PI Order at 23–25. In addition, because Plaintiffs "seek[] equitable relief against a defendant for exceeding its statutory authority, the zone-of-interests test is inapposite." PI Order at 30.

Moreover, Defendants' crabbed and implausible interpretation of the restriction on denied items, which would require Defendants to make and Congress to reject "a specific request for an appropriation to the Section 284 drug interdiction fund," would raise serious constitutional questions and "likely would violate the Constitution's separation of powers principles." PI Order at 38.

The three reprogramming authorities Defendants invoke are also subject to the condition that they be based on "unforeseen military requirements." Section 8005 incorporates this requirement explicitly, and Section 9002 incorporates it by reference to Section 8005. Section 1512 of the NDAA is similarly restricted because it is subject to the general restrictions on transfer authorities imposed in 10 U.S.C. § 2214. *See* 10 U.S.C. § 2214(a) (section applies "[w]henever authority is provided in an appropriation Act to transfer amounts in working capital funds or to transfer amounts provided in appropriation Acts for military functions of the Department of Defense (other than military construction) between such funds or appropriations (or any subdivision thereof)"). Section 2214(b)(1) restricts transfers "except to provide funds for a higher priority item, based on unforeseen military requirements, than the items for which the funds were originally appropriated."

Just as was true for the El Paso and Yuma projects, "Defendants' argument that the need for the requested border barrier construction funding was 'unforeseen' cannot logically be squared with the Administration's multiple requests for funding for exactly that purpose dating back to at least early 2018." PI Order at 35. "There is no logical reason to stretch the definition of 'unforeseen military requirement' from requirements that the government as a whole plainly cannot predict (like the need to repair hurricane damage) to requirements that plainly *were* foreseen by the government as a whole (even if DoD did not realize that it would be asked to pay for them until after Congress declined to appropriate funds requested by another agency)." PI Order at 36. Moreover, "if 'unforeseen' has the meaning that Defendants claim, Section 8005 would give the agency making a request for assistance under Section 284 complete control over whether that condition is met, simply by virtue of the timing of the request. As here, DHS could wait and see whether Congress granted a requested appropriation, then turn to DoD if Congress declined, and DoD could always characterize the resulting request as raising an 'unforeseen' requirement because it did not come earlier." PI

Order at 40. Such an "interpretation likely would pose serious problems under the Appropriations Clause, by ceding essentially boundless appropriations judgment to the executive agencies." PI Order at 40.

## II. Plaintiffs Have Shown Irreparable Harm.

Plaintiff Sierra Club's members face irreparable harm to their aesthetic and recreational interests if Defendants construct a border wall in the areas identified as El Centro Project 1 and Tucson Sector Projects 1, 2, and 3. As the Court noted in its Order, "it is well-established in the Ninth Circuit that an organization can demonstrate irreparable harm by showing that the challenged action will injure its members' enjoyment of public land." PI Order at 49. Here, Plaintiffs' members have demonstrated precisely the type of harm to their recreational and aesthetic interests that the Court previously found to be irreparable. *See* PI Order at 49–50 (recognizing harm stemming from additional construction and accompanying lighting to members' interests in hiking, camping, fishing, bird watching, and overall enjoyment of natural environment).

Sierra Club members' ability to hike, camp, and birdwatch in these areas will be impaired if a wall is constructed. *See, e.g.*, Declaration of Gayle Hartmann ¶ 9 ("The proposed wall segments will fundamentally alter my experience of these lands, by intruding upon the natural beauty, and historical connectedness of people and species, that I visit these areas to experience."); Declaration of Ralph Hudson ¶ 7 ("I cannot fathom seeing an 18 to 30 foot barrier when I focus my camera on Kino Peak or seeing a tall barrier strung out behind Monument Bluff . . . . These are special places which fulfill the Wilderness Act's goal of being places 'untouched by the hand of man.'"); Declaration of Kevin Arthur Dahl ¶ 7 ("Construction of a wall at and near Quitobaquito Springs will impede wildlife from crossing from Mexico to get to this vital source of water, impeding my enjoyment of wildlife observation at this biologically rich oasis."); Declaration of Bill Broyles ¶ 10 ("proposed barrier construction will blight a landscape whose core attractions include unimpeded views across the border"); Declaration of Patricia Gerrodette ¶ 8 ("noise, dust and unsightliness" will cause declarant to avoid visiting lands); Declaration of Margaret Case ¶ 8 ("The construction and expansion of the border wall, both as the construction proceeds and in the hard infrastructure that it will produce, will diminish the values that caused me to choose these borderlands as my home.");

Declaration of Carmina Ramirez ¶ 5 ("A great part of the aesthetic to me lies in the visually unimpaired, 360-degree views of the land, and mountains, on both sides of the border . . . . and putting up a big wall would have tremendous cultural and aesthetic impacts."); Declaration of Cyndi Tuell ¶ 10 ("construction of new border walls to replace the existing 'wildlife friendly' walls will destroy wildlife migration through these protected lands which will harm the wilderness character"); Declaration of Roy Armenta Sr. ¶ 6 ("The unimpeded views, in all directions, are centrally important to my enjoyment of this landscape. A wall will make us feel like we're in a prison, incarcerated in our own lands.").

Moreover, Sierra Club members will experience harm "from not only the bollard wall construction but also the accompanying lighting, which does not currently exist." PI Order at 50. The supporting declarations explain how increased lighting will disrupt their enjoyment of border lands. *See* Hudson Decl. ¶ 10 ("light pollution" will "drastically impact" present "ability to stargaze in this beautiful border region"); Dahl Decl. ¶ 8 ("[L]ights will prevent me from seeing the neighboring El Pinacate, impede the desert dark skies that are a hallmark of this landscape, and generally degrade my camping experience."); Case Decl. ¶ 12 ("In our part of the world, dark night skies are a pride and joy; law enforcement lighting, which I understand will be exacerbated by the proposed project, is an intrusive nuisance and decreases my enjoyment of the area."); Broyles Decl. ¶ 8 ("incessant lighting associated with the wall and its construction . . . will disrupt night flights of migrating birds, and mar my and others' view of the night skies—a central attraction of the Organ Pipe Cactus National Monument and other public lands in the area").

Absent an order from the Court enjoining construction in El Centro Project 1 and Tucson Sector Projects 1, 2, and 3, Plaintiffs will suffer irreparable harm.

### III.   The Balance of Harms and Public Interest Favor Plaintiffs.

Just as was true for Plaintiffs' injuries with respect to the El Paso and Yuma projects, Plaintiffs' injuries "are not speculative, and will be irreparable in the absence of an injunction." PI Order at 54. Moreover, "the public also has an interest in ensuring that statutes enacted by their representatives are not imperiled by executive fiat." PI Order at 54 (quoting *E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1255 (9th Cir. 2018)). "Accordingly, this factor favors Plaintiffs,

and counsels in favor of a preliminary injunction, to preserve the status quo until the merits of the case can be promptly resolved." PI Order at 54.

## CONCLUSION

For the reasons stated above, the Court should grant Plaintiffs a Preliminary Injunction.

Dated: May 29, 2019

Respectfully submitted,

/s/ *Dror Ladin*_____

| | |
|---|---|
| Mollie M. Lee (SBN 251404)<br>Christine P. Sun (SBN 218701)<br>American Civil Liberties Union Foundation of Northern California, Inc.<br>39 Drumm Street<br>San Francisco, CA 94111<br>Tel.: (415) 621-2493<br>Fax: (415) 255-8437<br>mlee@aclunc.org<br>csun@aclunc.org<br><br>David Donatti*<br>Andre I. Segura (SBN 247681)<br>American Civil Liberties Union Foundation of Texas<br>P.O. Box 8306<br>Houston, TX 77288<br>Tel.: (713) 325-7011<br>Fax: (713) 942-8966<br>ddonatti@aclutx.org<br>asegura@aclutx.org<br><br><br><br>Counsel for Plaintiffs<br><br>**Admitted* pro hac vice<br>***Counsel for Plaintiff* Sierra Club | Dror Ladin*<br>Noor Zafar*<br>Jonathan Hafetz*<br>Hina Shamsi*<br>Omar C. Jadwat*<br>American Civil Liberties Union Foundation<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>Tel.: (212) 549-2660<br>Fax: (212) 549-2564<br>dladin@aclu.org<br>nzafar@aclu.org<br>jhafetz@aclu.org<br>hshamsi@aclu.org<br>ojadwat@aclu.org<br><br>Cecillia D. Wang (SBN 187782)<br>American Civil Liberties Union Foundation<br>39 Drumm Street<br>San Francisco, CA 94111<br>Tel.: (415) 343-0770<br>Fax: (415) 395-0950<br>cwang@aclu.org<br><br>Sanjay Narayan (SBN 183227)**<br>Gloria D. Smith (SBN 200824)**<br>Sierra Club Environmental Law Program<br>2101 Webster Street, Suite 1300<br>Oakland, CA 94612<br>Tel.: (415) 977-5772<br>sanjay.narayan@sierraclub.org<br>gloria.smith@sierraclub.org |