DROR LADIN*
NOOR ZAFAR*
JONATHAN HAFETZ*
HINA SHAMSI*
OMAR C. JADWAT*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2660
dladin@aclu.org
nzafar@aclu.org
jhafetz@aclu.org
hshamsi@aclu.org
ojadwat@aclu.org
*Admitted pro hac vice

CECILIA D. WANG (SBN 187782)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 343-0770
cwang@aclu.org

Attorneys for Plaintiffs (Additional counsel listed on following page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO-OAKLAND DIVISION**

| | |
|---|---|
| SIERRA CLUB and SOUTHERN BORDER COMMUNITIES COALITION,<br><br>       *Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, President of the United States, in his official capacity; MARK T. ESPER, Acting Secretary of Defense, in his official capacity; KEVIN K MCALEENAN, Acting Secretary of Homeland Security, in his official capacity; and STEVEN MNUCHIN, Secretary of the Treasury, in his official capacity,<br><br>       *Defendants*. | Case No.: 4:19-cv-00892-HSG<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date: None set per Court order<br>Judge: Honorable Haywood S. Gilliam, Jr.<br>Dept: Oakland<br>Date Filed: June 24, 2019<br>Trial Date: Not Set |

Additional counsel for Plaintiffs:

SANJAY NARAYAN (SBN 183227)**
GLORIA D. SMITH (SBN 200824)**
SIERRA CLUB ENVIRONMENTAL LAW PROGRAM
2101 Webster Street, Suite 1300
Oakland, CA 94612
Tel: (415) 977-5772
sanjay.narayan@sierraclub.org
gloria.smith@sierraclub.org
**Counsel for Plaintiff SIERRA CLUB

MOLLIE M. LEE (SBN 251404)
CHRISTINE P. SUN (SBN 218701)
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 621-2493
Fax: (415) 255-8437
mlee@aclunc.org
csun@aclunc.org

DAVID DONATTI*
ANDRE I. SEGURA (SBN 247681)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
    OF TEXAS
P.O. Box 8306
Houston, TX 77288
Tel: (713) 325-7011
Fax: (713) 942-8966
ddonatti@aclutx.org
asegura@aclutx.org
*Admitted pro hac vice

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

    I.   Plaintiffs Can Sue to Enforce Sections 8005 and 284 ............................................ 2

    II.  Defendants Fail to Satisfy the Unambiguous Terms of Section 8005 and Section 284 ......... 5

        A.  Defendants' proposed transfer of DoD funds violates the restrictions imposed by Section 8005 .................................................................................... 5

        B.  Section 284 does not authorize a $2.5 billion wall construction project in defiance of Congress's express appropriations decision limiting border wall funding .................. 7

    III. Defendants' Transfer and Use of Funds Denied by Congress is Unconstitutional ................. 9

    IV. DHS Cannot Waive NEPA Obligations for DoD Wall Construction Under Section 284 ...................................................................................................................... 11

    V.  Plaintiffs Have Satisfied the Requirements for a Permanent Injunction .............................. 12

        A.  Plaintiffs will be irreparably injured if Defendants construct a $2.5 billion, 30-foot wall accompanied by 24-hour lighting ................................................ 12

        B.  The balance of equities and public interest favor a permanent injunction ..................... 14

CONCLUSION ............................................................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*All. for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) .................................................................................. 13, 14

*Chamber of Commerce v. Reich*,
    74 F.3d 1322 (D.C. Cir. 1996) ...................................................................................... 2, 10

*Clarke v. Sec. Indus. Ass'n*,
    479 U.S. 388 (1987) .......................................................................................................... 4

*Clinton v. City of New York*,
    524 U.S. 417 (1998) ........................................................................................................ 10

*Ctr. for Biological Diversity v. Hays*,
    No. 2:15-CV-01627-TLN-CMK, 2015 WL 5916739 (E.D. Cal. Oct. 8, 2015) ........................ 13

*Dalton v. Spector*,
    511 U.S. 462 (1994) ........................................................................................................ 10

*Dames & Moore v. Regan*,
    453 U.S. 654 (1981) .......................................................................................................... 2

*Davis v. Mineta*,
    302 F.3d 1104 (10th Cir. 2002) ...................................................................................... 14

*FDA v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) ........................................................................................................ 10

*Gallatin Wildlife Ass'n v. U.S. Forest Serv.*,
    No. CV-15-27-BU-BMM, 2018 WL 1796216 (D. Mont. Apr. 16, 2018) .......................... 12, 13

*House v. Mnuchin*,
    No. 19-cv-969 (D.D.C. May 23, 2019) ............................................................................ 5

*Leedom v. Kyne*,
    358 U.S. 184 (1958) .......................................................................................................... 2

*Mach Mining, LLC v. EEOC*,
    135 S. Ct. 1645 (2015) ...................................................................................................... 5

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012) ................................................................................................. passim

*McDonnell v. United States*,
    136 S. Ct. 2355 (2016) ...................................................................................................... 7

*Michigan v. E.P.A.*,
    135 S. Ct. 2699 (2015) ...................................................................................................... 5

*Organized Vill. of Kake v. U.S. Dep't of Agric.*,
    795 F.3d 956 (9th Cir. 2015) ............................................................................................ 2

*Sale v. Haitian Ctrs. Council, Inc.*,
   509 U.S. 155 (1993) ............................................................................................................ 2

*Scheduled Airlines Traffic Offices, Inc. v. Dep't of Def.*,
   87 F.3d 1356 (D.C. Cir. 1996) ......................................................................................... 2,3

*U.S. Dep't of Navy v. Fed. Labor Relations Auth.*,
   665 F.3d 1339 (D.C. Cir. 2012) ........................................................................................ 11

*United States v. McIntosh*,
   833 F.3d 1163 (9th Cir. 2016) ...................................................................................... 6, 10

*Util. Air Regulatory Grp. v. E.P.A.*,
   573 U.S. 302 (2014) ...................................................................................................... 8, 10

*White Stallion Energy Ctr., LLC v. E.P.A.*,
   748 F.3d 1222 (D.C. Cir. 2014) ......................................................................................... 5

## Statutes

1 U.S.C. § 105 ......................................................................................................................... 9

8 U.S.C.A. § 1103 ................................................................................................................. 11

10 U.S.C. § 284 .............................................................................................................. passim

2019 Department of Defense Appropriations Act, Pub. Law No. 115-245 ............................... passim

Consolidated Appropriations Act of 2019, Pub. Law No. 116-6, 133 Stat. 13 (2019) .............. passim

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. Law
   104-208 (1996) ........................................................................................................... 11, 12

National Environmental Protection Act, 42 U.S.C. § 4332 ................................................ 11, 12, 13

## Other Authorities

Availability of Receipts from Synthetic Fuels Projects for Contract Admin. Expenses of the
   Dep't of Treasury, Office of Synthetic Fuels Projects, B-247644, 72 Comp. Gen. 164
   (Apr. 9, 1993) ................................................................................................................... 8

H.R. Rep. No. 99-106 (1985) ................................................................................................... 6

**INTRODUCTION**

Since 2018, the President has requested billions of dollars from Congress to build a wall along the U.S.-Mexico border. Congress has repeatedly refused to appropriate these funds, most recently when it passed the Consolidated Appropriations Act of 2019. Frustrated with Congress's "absolute control over federal expenditures," the President declared a national emergency on February 15, 2019, and Defendants now seek to divert $2.5 billion in military funds to build the President's wall. Order Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction ("PI Order") at 54. Defendants' actions are unlawful and unconstitutional, and this Court correctly issued a preliminary injunction blocking them.

The material facts remain largely unchanged since the Court temporarily enjoined wall construction last month, and Defendants' position continues to be untenable. Defendants attempt to evade review of their unauthorized transfer and use of Department of Defense ("DoD") funds by arguing that Sections 284 and 8005 are essentially beyond challenge, as no injured plaintiff may sue to enforce their limits. On the merits, they put forth equally implausible statutory arguments claiming unbounded authority to divert and use military funds for a border wall that Congress specifically denied. Defendants' assertion that Congress never "denied" funding for a border wall and that its construction is an "unforeseen military requirement" "runs afoul of the plain language of Section 8005." PI Order 33. Their reading of Section 284 is similarly strained and, as this Court previously observed, "likely would raise serious questions as to the constitutionality of such an interpretation." PI Order 39. Defendants try to sidestep the constitutional concerns that their "massive reallocation of funds" implicates, but their arguments are unavailing "given that Congress has repeatedly rejected legislation" that would have granted the President the funds that he now seeks to unlawfully obtain. PI Order 38.

Defendants' planned construction in the El Paso, Yuma, El Centro, and Tucson sectors will forever alter the surrounding landscape and irreparably harm Plaintiffs' ability to recreate in and enjoy these historic monuments and picturesque lands. The balance of equities and public interest also "counsel[] in favor of a" permanent injunction, and the Court should grant one here. PI Order 54.

**ARGUMENT**

**I.    Plaintiffs Can Sue to Enforce Sections 8005 and 284.**

The Court properly reviewed Plaintiffs' ultra vires challenge to Defendants' usurpation of Congress's exclusive role in appropriations, and correctly held that Plaintiffs need not show that Congress created a right of action under Section 8005. *See* PI Order 28-29. Defendants attempt to shield their unlawful actions from judicial review by asserting that Plaintiffs fall outside the zone of interests for Sections 8005 and 284. Defendants are wrong on both counts.

To begin with, the Court correctly concluded that the zone-of-interests analysis "has no application in an *ultra vires* challenge." PI Order 29; Plaintiffs' Motion for Partial Summary Judgment ("Mot.") at 18-19. And, indeed, courts do not apply a zone-of-interests limitation to such actions. *See, e.g.*, *Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 187-88 (1993) (challenge to executive order issued under Immigration and Nationality Act); *Dames & Moore v. Regan*, 453 U.S. 654, 667 (1981) (reviewing whether officials' actions "were beyond their statutory and constitutional powers"); *Leedom v. Kyne*, 358 U.S. 184, 188-89 (1958) (challenge to executive order despite lack of final agency action); *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1327-28 (D.C. Cir. 1996) (review of presidential action through a challenge brought against Secretary of Labor). As the Court pointed out, "[t]he very nature of an *ultra vires* action posits that an executive officer has gone beyond what the statute permits, and thus beyond what Congress contemplated. It would not make sense to demand that Plaintiffs—who otherwise have standing—establish that Congress contemplated that the statutes allegedly violated would protect Plaintiffs' interests." PI Order 30.

But even if Plaintiffs were required to satisfy a zone-of-interests test with respect to Sections 8005 and 284, they easily do so here. "[T]he test forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized the plaintiff to sue." *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 964 (9th Cir. 2015) (quotations omitted). As Plaintiffs explained, their stake and involvement in Congress's denial of funds for border wall construction perfectly aligns their interests with those of Section 8005. Mot. 19; *see also Scheduled Airlines*

2

*Traffic Offices, Inc. v. Dep't of Def.*, 87 F.3d 1356, 1360 (D.C. Cir. 1996) (finding private plaintiff a suitable challenger to a statute that benefitted nothing "other than the public fisc and Congress's appropriation power" because the plaintiff's "interests are thus sufficiently congruent with those of the Treasury's that [the plaintiff] is not 'more likely to frustrate than to further . . . statutory objectives'" (original alteration marks omitted)).

Defendants' argument that Plaintiffs are not proper challengers because Sections 8005 and 284 govern the relationship between DoD and Congress or state or federal agencies seeking assistance is foreclosed by *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*. 567 U.S. 209, 224 (2012). In *Patchak*, the Court held that a neighboring property owner could bring suit under a statute that "authorizes the acquisition of property 'for the purpose of providing land for Indians.'" 567 U.S. at 224. The neighbor asserted that an unauthorized acquisition of property would eventually cause him "economic, environmental, and aesthetic harm as a nearby property owner" because after its acquisition, the property would be developed. *Id.* As the Supreme Court explained, it was of no moment that the statute at issue did not "seek[] to benefit" the plaintiff, or that the plaintiffs' interests were "environmental" and "aesthetic" rather than related to tribal development. *Id.* at 225 n.7. That the plaintiff was "not an Indian or tribal official seeking land" and did not "claim an interest in advancing tribal development . . . is beside the point." *Id.* Nor did it matter that because Patchak's land was not acquired, he was not directly regulated by the statute. The zone-of-interests test imposes no such requirements.

*Patchak* also precludes Defendants' suggestion that Plaintiffs' interests must be restricted to the unlawful Section 8005 transfer itself, *see* Defendants' Motion for Partial Summary Judgment and Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Opp.") at 11, or inter-agency decisions regarding counterdrug support under Section 284, Opp. 13. The *Patchak* Court found "unpersuasive" the argument that mere violation of the acquisition statute, which "does not turn on any particular use of the land, . . . has no impact on [Patchak] or his asserted interests." 567 U.S. at 225. What mattered was that when the agency used its statutory powers, it did "not do so in a vacuum," but rather acted "with at least one eye directed toward how tribes will use those lands." *Id.* at 226. And it was the *use* of the lands that Patchak objected to, as a nearby casino would inflict

"environmental" and "aesthetic harm." *See id.* at 213 (Patchak alleged "an irreversible change in the rural character of the area"). "[F]rom start to finish, the decision whether to acquire the Bradley Property under § 465 involved questions of land use." *Id*. at 227. Therefore, because "the statute's implementation centrally depends on the projected use of a given property," an objector to the eventual projected use of the land could sue under the predicate land acquisition statute. *Id.* at 226-27; *see also Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 401 (1987) (zone-of-interests analysis must consider "overall context" and "overall purposes" of congressional action).

Here too, Plaintiffs' claims turn centrally on the interests incorporated in the statutes' implementation. From "start to finish, the decision whether" to use Section 8005 to transfer funds into the Section 284 counterdrug account "involved questions" of Congress's funding decisions with respect to border barriers, including former Defendant Shanahan's explicit "finding" that Congress had not denied funds for the border wall and that its construction was an "unforeseen military requirement." *Patchak*, 567 U.S. at 227. "Since Defendants first announced that they would reprogram funds using Section 8005, they have uniformly described the object of that reprogramming as border barrier construction." PI Order 24. With respect to Section 284, it is even more obvious that the "projected use" of the interagency transfers was border barrier construction. *Patchak*, 567 U.S. at 227. Just as Patchak objected to the *use* of land acquired by the predicate statutory action, so too do Plaintiffs here object to the "negative externalities of border barrier *construction*" made possible by DoD counterdrug support to DHS. Opp. 13 (emphasis added). Plaintiffs live in and use nearby lands and stand to be injured by the installation of 30-foot bollard fencing and 24-hour floodlights that is the "object" of Defendants' use of Section 284 funds, *see*, *e.g.*, Hartmann Decl. ¶¶ 8, 9 ("proposed wall segments will fundamentally alter [her] experience of [border] lands"), and as "neighbors to the use" of land are therefore "reasonable—indeed, predictable—challengers of the Secretary's decisions," *Patchak*, 567 U.S. at 227. "Their interests, whether economic, environmental, or aesthetic, come within [the statute's] regulatory ambit." *Id.* at 228.

Finally, Defendants' argument that Sections 8005 and 284 may not be enforced by "private" parties, Opp. 11, 13, flies in the face of the "strong presumption favoring judicial review" of agency

actions and the "heavy burden" to establish that Congress intended to preclude judicial review. *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015). Defendants claim that "this is not a statute that anyone really has the authority to invoke." Hearing Tr. 98:04-05, *House v. Mnuchin*, No. 19-cv-969 (D.D.C. May 23, 2019) (attached). But as then-Judge Kavanaugh observed, under the Supreme Court's "capacious view of the zone of interests requirement," a "suit should be allowed unless the statute evinces discernible congressional intent to preclude review." *White Stallion Energy Ctr.*, *LLC v. E.P.A.*, 748 F.3d 1222, 1269 (D.C. Cir. 2014) (Kavanaugh, J., concurring in part and dissenting in part), *rev'd sub nom. Michigan v. E.P.A.*, 135 S. Ct. 2699 (2015). Defendants have not shown such intent here.

## II.   Defendants Fail to Satisfy the Unambiguous Terms of Section 8005 and Section 284.

Having been denied funding from Congress, DHS's execution of the designated border wall projects depends on two steps taken by DoD. First, DoD must transfer all $2.5 billion necessary for the projects into the counter-narcotics account. Mot. 5 (citing Admin. R., ECF No. 163-2, at 11, 43). Then, DoD must finance the entirety of the wall projects, ostensibly pursuant to an authority to "support" DHS's law enforcement function.

### A.   Defendants' proposed transfer of DoD funds violates the restrictions imposed by Section 8005.

Defendants rely on three reprogramming provisions to funnel DoD funds into the Section 284 account for wall construction. *See* Admin. R., ECF No. 163-2, at 43-46; Mot. 9-10. Each of these provisions, however, is limited by the restriction that the object of the reprogramming be both an "unforeseen military requirement" and not "denied" by Congress. *See* Opp. 8-9 (acknowledging that relevant authorities "require[] compliance with same requirements as § 8005"). Defendants' transfers are not authorized by the statutes they identify.

First, Congress has denied "the item for which funds are requested." The Administration's request for "$5.7 billion for construction of a steel barrier for the Southwest border," RJN ¶ 13, Ex. 13 at 1, did not, as the Court observed, "specify the mechanics of how the $5.7 billion sought would be used for the proposed steel barrier construction," PI Order 32. Against this request, Congress passed, and the President signed, the CAA, making available a fraction of the requested funds,

$1.375 billion, and limiting construction to the Rio Grande Valley Sector with several additional limitations, including on the type and specification of the barriers to be constructed. Pub. Law No. 116-6, 133 Stat. 13 (2019). On the same day that he signed the CAA, the President stated he was "not happy" with the amount appropriated to build border walls. RJN ¶ 17, Ex. 16. The White House would therefore reprogram funds and "do it much faster," *id.*, to include "up to $2.5 billion under the Department of Defense funds transferred for Support for Counterdrug Activities (Title 10 United States Code, section 284)." RJN ¶ 18, Ex. 17. The "item" for which funds are requested, "support to [DHS's] effort to secure the southern border," *e.g.*, Admin. R., ECF No. 163-1, at 7 (DoD letter undertaking Yuma Sector Projects 1 and 2 and El Paso Sector Project 1), is precisely the item for which Congress denied funds.

Defendants respond that, while Congress has denied funding for DHS's border barriers, it did not expressly deny DoD's *support* to DHS to build these barriers. "Item," Defendants say, should refer only to "a particular budget item." Opp. 11. But the statute's plain language refers to an "item" denied (such as the President's wall), and includes no reference to an item's subcomponents, requesting agency, or specific budget line. And "Congress has described its intent that appropriations restrictions of this sort be 'construed strictly' to 'prevent the funding for programs which have been considered by Congress and for which funding has been denied.'" PI Order 33 (citing H.R. Rep. No. 99-106, at 9 (1985)). Thus, the Court was entirely correct in rejecting Defendants' crabbed interpretation, particularly as "Defendants point to nothing in the language or legislative history of the statutes in support of their assertion that only explicit congressional denial of funding for '[Section] 284 projects,' or even DoD projects generally, would trigger Section 8005's limitation." PI Order 34. Moreover, Defendants' interpretation would be inconsistent with Section 8005's purpose and "subvert 'the difficult judgments reached by Congress.'" PI Order 33 (quoting *United States v. McIntosh*, 833 F.3d 1163, 1175 (9th Cir. 2016)).

Second, Defendants' reprogramming is not based on "unforeseen military requirements." Defendants do not dispute that the Administration's desire for a wall across the southwestern border, the circumstances the Administration claims informed this desire, or the purported need for DoD resources to be brought to bear on these circumstances, were not only foreseen, but known.

*See, e.g.*, PI Order 35 (noting Administration budget requests "dating back to at least early 2018"); RJN ¶ 10, Ex. 10 at 16 (requesting "$18 billion to fund the border wall" to "combat[ ] the scourge of drug addiction"); PI Order 36 ("[E]ven the purported need for DoD to provide DHS with support for border security has similarly been long asserted."); RJN ¶¶ 11, 12, Exs. 11, 12 (noting that DoD withheld nearly $1 billion of fiscal year 2018 funding toward potentially supporting DHS with "southwest border construction"). Instead, Defendants contend that the specific timing and nature of DHS's request for support were unforeseen. Opp. 11. "Interpreting 'unforeseen' to refer to the request for DoD assistance, as opposed to the underlying 'requirement' at issue, . . . is not reasonable" and would pose serious constitutional problems. PI Order 36, 40; *see also* Mot. 11-12.

Third, building a border wall for DHS is not a "military requirement." Mot. 12. Defendants maintain that, insofar as Congress *authorized* DoD to support civilian agencies, requests for such support are by definition "military requirements." Opp. 12. That interpretation, however, makes the statutory phrase superfluous. *See McDonnell v. United* States, 136 S. Ct. 2355, 2369 (2016) (noting the presumption against surplusage). "Military requirement" cannot include every request to the Department of Defense. Defendants' transfer of funds to finance a project proposed and operated by a civilian agency, and based not on a change of conditions but because Congress declined to appropriate funds to the civilian agency, is not a "military requirement."

### B. Section 284 does not authorize a $2.5 billion wall construction project in defiance of Congress's express appropriations decision limiting border wall funding.

Defendants argue that Section 284 provides essentially unlimited authority for the Secretary of Defense to construct a wall along the border. They assert that 284 contains "[n]o monetary restrictions" and authorizes DoD to erect border barriers "without regard to the size, scale, or budget of the process," Opp. 14, including when DoD vastly exceeds the funds appropriated to the counter-narcotics account. Defendants' interpretation of Section 284 is unreasonable.

Under Defendants' interpretation, DHS can simply reclassify a multibillion-dollar counter-migration fence as an enormous "drug smuggling corridor," thereby displacing appropriations decisionmaking from Congress to the Secretary of Defense. Here, the record is stark: on February 25, eleven days after Congress refused to appropriate $5.7 billion to construct "approximately 234

miles of new physical barrier," DHS requested that DoD fund "approximately 218 miles" of new walls. Admin. R., ECF No. 163-1, at 24. As Plaintiffs have shown, it is implausible that Congress quietly granted the Secretary of Defense such unbounded authority through Section 284. *See* Mot. 13; *see also* PI Order 37 (noting that $2.5 billion far exceeds Congress's "*total* fiscal year 2019 appropriation available under Section 284 . . . [,] much of which has already been spent").

Defendants' arguments in support of their view are unavailing. Defendants suggest that prior uses of this authority show Congress's approval for their actions here. But the examples Defendants cite are exclusively "relatively small expenditures, that were well within the total amount allocated by Congress to DoD under Section 284's predecessor." PI Order 39; *see also* Mot. 14. By contrast, Defendants here seek to construct a multibillion-dollar wall for DHS when Congress explicitly declined to provide that project directly to DHS, and when Congress did not appropriate billions for any use under Section 284.

Even if Section 284 permitted a decision of such "vast economic and political significance," *Util. Air Regulatory Grp. v. E.P.A.*, 573 U.S. 302, 324 (2014), DoD's proposed use of Section 284 must be interpreted alongside the more specific and recent judgment by Congress embodied in the CAA. *See* Mot. 13-14. Defendants suggest that this well-established principle of statutory interpretation and appropriations laws is inapplicable "beyond the circumstance of a *single* agency determining which of two appropriations *to that agency* should be used for a particular object or purpose." Opp. 15. But Defendants do not cite a single authority supporting the idea that agencies are free to aggrandize their budgets so long as they request funds from a different agency. Such a crabbed reading would contradict the general rule that any agency effort to go beyond a specific appropriation and seek additional money "from *some other source* would usurp congressional prerogative and undercut the congressional power of the purse." Availability of Receipts from Synthetic Fuels Projects for Contract Admin. Expenses of the Dep't of Treasury, Office of Synthetic Fuels Projects, B-247644, 72 Comp. Gen. 164, 165 (Apr. 9, 1993) (emphasis added).

In any event, Defendants provide no answer to the CAA's explicit restriction on the use of *any* appropriated funds to "increase . . . funding for a program, project, or activity as proposed in the President's budget request for a fiscal year until such proposed change is subsequently enacted

in an appropriation Act." CAA, Division D § 739. Section 284 is not an appropriations act. *See* 1 U.S.C. § 105 (defining appropriations acts). Defendants state in conclusory fashion that "the funds utilized for border-barrier construction pursuant to § 284 will be used for the purpose for which they were appropriated." Opp. 16. But Defendants' own submissions reflect that the funds Defendants intend to funnel to wall construction were appropriated for entirely different purposes, such as military pay and pension accounts, Admin. R., ECF No. 163-1, at 36, modification of in-service missiles, Admin. R., ECF No. 163-3 at 17, and support for our allies in the Afghanistan Security Forces, Admin. R., ECF No. 163-3 at 19-20. Defendants do not explain how border wall construction is neither a program, project, or activity proposed in the President's budget request.

### III.  Defendants' Transfer and Use of Funds Denied by Congress is Unconstitutional.

Defendants claim that their attempt to override Congress's appropriations decision limiting border wall construction to the restrictions imposed in the CAA poses "a purely statutory dispute with no constitutional dimension." Opp. 17. This could not be further from the truth. "Defendants' reading of [Sections 8005 and 284], if accepted, would pose serious problems under the Constitution's separation of powers principles" and the "Appropriations Clause, by ceding essentially boundless appropriations judgment to the executive agencies." PI Order 36, 40. The Court correctly rejected Defendants' strained interpretation of the statutes and recognized the serious constitutional problem Defendants' readings raised.

Defendants incorrectly argue that Plaintiffs assert no constitutional violation separate from the alleged statutory violations. *See* Opp.17. But Plaintiffs' separation of powers, Appropriations Clause, and Presentment Clause claims are not merely assertions that Defendants violated the terms of the statutory authority they invoke. Rather, Plaintiffs maintain that if Sections 8005 and 284 are read to allow the Secretary of Defense to essentially "quintuple . . . the amount Congress allocated to this account for [border wall construction], notwithstanding Congress's recent and clear actions in passing the CAA, and the relevant committees' express disapproval of the proposed reprogramming," they would be unconstitutional. PI Order 37-38. "[T]he Constitution gives Congress the exclusive power 'not only to formulate legislative policies and mandate programs and projects, but also to establish their relative priority for the Nation,' and 'Congress cannot yield up

its own powers' in this regard." PI Order 39 (citing *McIntosh*, 833 F.3d at 1172, and *Clinton v. City of New York*, 524 U.S. 417, 452 (1998) (Kennedy, J., concurring)). Likewise, a statute would violate the Presentment Clause if, as Defendants insist here, it permitted the president to sign an appropriations act and, "based on the same facts and circumstances that Congress considered," have the option of "rejecting the policy judgment made by Congress and relying on [its] own policy judgment." *Clinton*, 524 U.S. at 444 & n.35. Here, the Presentment Clause violation is particularly acute, because Defendant Trump on the very same day signed the CAA into law and simultaneously altered Congress's enacted funding decision for border barriers, announcing that day, as relevant here, that exactly $2.5 billion beyond what Congress appropriated in the CAA would be spent via Section 284.

*Dalton v. Spector* does not suggest otherwise. In *Dalton*, the Court considered whether the President had violated a statute that committed a decision entirely to his discretion. 511 U.S. 462, 478 (1994) (Souter J., joined by Blackmun, Stevens, and Ginsburg JJ., concurring) (statute "grants the President unfettered discretion to accept the Commission's base-closing report or to reject it, for a good reason, a bad reason, or no reason"); *see generally Chamber of Commerce*, 74 F.3d at 1331 ("*Dalton*'s holding merely stands for the proposition that when a statute entrusts a discrete, specific decision to the President and contains no limitations on the President's exercise of that authority, judicial review of an abuse of discretion claim is not available."). The plaintiff in *Dalton* "pleaded no constitutional claim against the President" and did not argue that the statute that the President invoked—if construed as the president argued—would violate the Constitution. 511 U.S. at 478. Here, by contrast, Defendants' "reading of DoD's authority under the statute[s] would render meaningless Congress's constitutionally-mandated power to assess proposed spending, then render its binding judgment as to the scope of permissible spending." PI Order 38 (citing *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000), and *Util. Air Regulatory Grp.*, 573 U.S. at 324). Thus, *Dalton* is inapposite.

Finally, Defendants' "theory of appropriations law, which presumes that the Executive Branch can exercise spending authority unless Congress explicitly restricts such authority by statute," raises "serious concerns." PI Order 40. Defendants' claim that their "massive funnel-and-

spend project," PI Order 39, is statutorily authorized because the CAA did not "explicitly" prohibit

"the expenditure of funds pursuant to" Sections 8005 and 284, Opp. 18. "But it is not Congress's

burden to prohibit the Executive from spending the Nation's funds: it is the Executive's burden to

show that its desired use of those funds was 'affirmatively approved by Congress.'" PI Order 40

(quoting *U.S. Dep't of Navy v. Fed. Labor Relations Auth.*, 665 F.3d 1339, 1348 (D.C. Cir. 2012)

("*FLRA*") ("[A]ll uses of appropriated funds must be affirmatively approved by Congress," and "the

mere absence of a prohibition is not sufficient.")). "To have this any other way would deprive

Congress of its absolute control over the power of the purse, one of the most important authorities

allocated to Congress in the Constitution's necessary partition of power among the several

departments." PI Order 40 (quoting *FLRA*, 665 F.3d at 1346-47 (internal quotations and citations

omitted)). Defendants' arguments turn appropriations law on its head, and the Court rightfully

rejected them.

### IV.  DHS Cannot Waive NEPA Obligations for DoD Wall Construction Under Section 284.

The National Environmental Policy Act ("NEPA") demands that federal agencies prepare

an Environmental Impact Statement before taking any action with significant environmental

impacts. 42 U.S.C. § 4332. Defendants do not dispute the obligation or its specific requirements.

They aver instead that the Secretary of Homeland Security has purportedly waived NEPA in the

project areas, and therefore DoD need not follow it.

Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, the

Secretary of DHS may "take such actions as may be necessary to install additional physical barriers

and roads . . . in the vicinity of the United States border to deter illegal crossings in areas of high

illegal entry into the United States. Illegal Immigration Reform and Immigrant Responsibility Act

of 1996, Pub. Law 104-208 (1996), § 102(a). Section 102(c)(1) permits the Secretary "to waive all

legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to

ensure expeditious construction of the barriers and roads under this section." *Id*. § 102(c)(1)

(codified as amended at 8 U.S.C.A. § 1103 note).

Defendants maintain that "such actions as may be necessary" to install additional physical

barriers and roads" includes "request[ing] that DoD, pursuant [to] its authority under § 284(b)(7),

assist DHS by constructing fences, roads, and lighting for the border barrier projects at issue in this case." Opp. 19. Having requested that DoD stand in its shoes and build where Congress told DHS it could not, the Secretary of DHS has purported to set aside dozens of otherwise-obligatory statutory requirements so that DoD can build expeditiously. *See* Opp. 19.

Section 102(c), however, allows DHS to waive compliance with laws to the extent "necessary to ensure expeditious construction of the barriers and roads *under this section*,"—that is, Section 102 of IIRIRA. Defendants cannot have it both ways. If, as Defendants claim, "[t]he funds utilized for border-barrier construction pursuant to § 284 will be used for the purpose for which they were appropriated, not to increase funding for an item in the President's 2020 budget request[,]" including the request for funding for DHS border-barrier construction, Opp. 16, then the proposed wall sections are not being constructed "under this section." They would instead be military counterdrug barriers, outside of DHS's authority to "take such actions as may be necessary to install additional physical barriers and roads . . . to deter illegal crossings." IIRIRA.

Congress has denied DHS so much as a single penny to build border walls under IIRIRA in the projects at issue in this Motion. Defendants have failed to show that they may undertake any construction under IIRIRA without a lawful appropriation to do so. Either Defendants are unilaterally appropriating funds for construction pursuant to IIRIRA, in which case they have violated statutory and constitutional law, or DoD is proceeding independently of DHS's construction authority and Defendants have failed to satisfy their obligations under NEPA.

**V.  Plaintiffs Have Satisfied the Requirements for a Permanent Injunction.**

   **A.  Plaintiffs will be irreparably injured if Defendants construct a $2.5 billion, 30-foot wall accompanied by 24-hour lighting.**

Defendants cannot dispute the "well-established" caselaw holding that "an organization can demonstrate irreparable harm by showing that the challenged action will injure its members' enjoyment of public land." PI Order 49. Instead, Defendants assert that their multibillion-dollar wall project will not actually alter the landscape Plaintiffs treasure, and that in any event Plaintiffs could just use "neighboring public lands." Neither argument holds water.[1]

---

[1] Defendants cite two unpublished decisions that do nothing to aid their argument. *Gallatin Wildlife Ass'n v. U.S. Forest Serv*. rejected a challenge to a grazing status quo that had been

1    First, Defendants argue that neither construction nor lighting will actually alter the border

2    areas. But as this Court already held with respect to the preliminary injunction, "Defendants'

3    proposed construction will lead to a substantial change in the environment, the nature of which will

4    harm their members' aesthetic and recreational interests." PI Order 50. The record on this motion is

5    even more clear. For example, according to the Department of Interior, the current vehicle barrier

6    design in Organ Pipe National Monument "allows water, and animals, including the highly

7    endangered Sonoran Pronghorn, to safely roam their natural ranges uninterrupted." RJN ¶ 24, Ex.

8    22. Defendants' proposed construction—30-foot barriers with anti-climb plates, lighting, and

9    roads—will completely alter this status quo, substantially changing the landscape in the Monument

10   and throughout the more than one-hundred miles of construction. *See, e.g.*, Hudson Decl. ¶ 6

11   ("Access to the Cabeza Prieta Wildlife Refuge, near the border, is along the El Camino del Diablo.

12   Its proximity to the border makes hiking right to the current barrier possible. On foot you feel

13   extremely connected with nature and I can hardly imagine the juxtaposition of this high border wall

14   with the desert landscape."); Broyles Decl. ¶ 10 ("[T]he proposed barrier construction will blight a

15   landscape whose core attractions include unimpeded views across the border (of, for example, the

16   volcanic cones and peaks of Mexico's Pinacate Biosphere Reserve), solitude and quiet, and the

17   shared heritage, history, and culture of our two bordering nations. The wall diminishes each of

18   those basic values, thereby irrevocably altering my and others' experience of the borderlands.").[2]

19   Second, the Ninth Circuit has already rejected the argument that environmental plaintiffs

20   should just find other neighboring lands to enjoy. In *Alliance for the Wild Rockies v. Cottrell*, the

21   _____

22   "ongoing for the last 150 years," where the plaintiff "raised nothing about the grazing that will
     change in 2018 . . . ." No. CV-15-27-BU-BMM, 2018 WL 1796216, at *5 (D. Mont. Apr. 16, 2018).
23   Here, by contrast, Plaintiffs' declarations describe a status quo that would be radically altered by a
     multibillion-dollar construction project. *Ctr. for Biological Diversity v. Hays* is similarly
24   inapplicable, because there can be no recreational injury when "the affected area cannot currently be
     used for recreational purposes." No. 2:15-CV-01627-TLN-CMK, 2015 WL 5916739, at *10 (E.D.
     Cal. Oct. 8, 2015).
25   [2] That Defendants intend to construct without conducting the environmental review required
     by NEPA gives little reason for confidence in whatever "mitigation measures" they might choose to
26   deploy. Opp. 21. Nor do Defendants' conclusory statements in the Second Enriquez Declaration
     provide any evidence of the efficacy of such measures or the long-term impacts of continuous
27   lighting. During previous construction, DHS emphasized that "all lights will be removed from the
     project corridor upon completion of construction activities"—a far cry from Defendants' plans here.
28   Enriquez Decl., Ex. C at 3-12.

government argued that because a project "represent[ed] only six percent of the acreage" potentially useable by an organization's members, and those members could "view, experience, and utilize" other areas of the forest," the members could not show harm. 632 F.3d 1127, 1135 (9th Cir. 2011). The Ninth Circuit found that "[t]his argument proves too much," as "[i]ts logical extension is that a plaintiff can never suffer irreparable injury resulting from environmental harm in a forest area as long as there are other areas of the forest that are not harmed." *Id*. Plaintiffs challenge the effects of a massive $2.5 billion construction project that covers over 100 miles of land with a 30-foot wall and persistent lighting. "This is hardly a de minimus injury." *Id.*

**B. The balance of equities and public interest favor a permanent injunction.**

Defendants assert that a permanent injunction would harm the government's interest in combatting the flow of drugs. But the government's own assessments are that a border wall would do little to promote this interest. Mot. 23; RJN ¶ 25, Ex. 23 at 19, 33, 52. More fundamentally, Congress considered, and rejected, the same argument Defendants make here: that a border wall is urgently needed to combat drugs. The Administration specifically supported its Fiscal Year 2019 budget request with the claim that a border barrier "is critical to combating the scourge of drug addiction that leads to thousands of unnecessary deaths." RJN ¶ 10, Ex. 10 at 16. Congress weighed the evidence and the public interest and rejected Defendants' request to spend taxpayer money to construct border barriers outside of Eastern Texas. Defendants cannot claim a public interest in setting aside Congress's lawfully-enacted judgment.

Defendants' other claimed harms are even less substantial. Any contractual liability results from Defendants' own strategic choices about how to proceed in the face of litigation. Defendants awarded the contracts at issue on April 9, after the motion for a preliminary injunction was filed, and on May 15, two days before the hearing. McFadden Decl. ¶ 10; Second McFadden Decl. ¶ 10. It would be inequitable to permit Defendants to affect the balance of hardships by incurring new and unlawful obligations during the course of litigation over this motion. *See Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002) (holding that "financial" impacts could not overcome environmental harms where such impacts "may be self-inflicted"). And there is no reason for Defendants to maintain the ability to obligate $1.1 billion in additional funds if the Court's

judgment is that Defendants cannot lawfully obligate those funds for wall construction.

Finally, the public interest further supports an injunction in light of the substantial additional injuries to the public fisc, Congress, and the Tohono O'odham Nation. *See* Amicus briefs, ECF No. 172-1; ECF No. 176.[3]

**CONCLUSION**

For the reasons stated above, the Court should grant Plaintiffs' Motion for Partial Summary Judgment and order declaratory and injunctive relief.

---

[3] For these reasons, along with those identified by the Court in its denial of Defendants' previous motion for a stay, Defendants are not entitled to a stay pending appeal if the Court grants Plaintiffs' requested injunction. *See* Order, ECF No. 152.

1  Dated: June 24, 2019                          Respectfully submitted,

2                                                /s/ *Noor Zafar*_____

3
   Mollie M. Lee (SBN 251404)                    Dror Ladin*
4  Christine P. Sun (SBN 218701)                 Noor Zafar*
   American Civil Liberties Union Foundation of  Jonathan Hafetz*
5      Northern California, Inc.                  Hina Shamsi*
   39 Drumm Street                               Omar C. Jadwat*
6  San Francisco, CA 94111                       American Civil Liberties Union Foundation
7  Tel: (415) 621-2493                           125 Broad Street, 18th Floor
   Fax: (415) 255-8437                           New York, NY 10004
8  mlee@aclunc.org                               Tel: (212) 549-2660
   csun@aclunc.org                               Fax: (212) 549-2564
9                                                dladin@aclu.org
10 David Donatti*                                nzafar@aclu.org
   Andre I. Segura (SBN 247681)                  jhafetz@aclu.org
11 American Civil Liberties Union Foundation     hshamsi@aclu.org
       of Texas                                  ojadwat@aclu.org
12 P.O. Box 8306
13 Houston, TX 77288                             Cecilia D. Wang (SBN 187782)
   Tel: (713) 325-7011                           American Civil Liberties Union Foundation
14 Fax: (713) 942-8966                           39 Drumm Street
   ddonatti@aclutx.org                           San Francisco, CA 94111
15 asegura@aclutx.org                            Tel: (415) 343-0770
                                                 Fax: (415) 395-0950
16                                               cwang@aclu.org

17                                               Sanjay Narayan (SBN 183227)**
18                                               Gloria D. Smith (SBN 200824)**
                                                 Sierra Club Environmental Law Program
19                                               2101 Webster Street, Suite 1300
   Counsel for Plaintiffs                        Oakland, CA 94612
20                                               Tel: (415) 977-5772
21 *Admitted pro hac vice                        sanjay.narayan@sierraclub.org
   **Counsel for Plaintiff Sierra Club           gloria.smith@sierraclub.org