UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA CLUB, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>    Defendants. | Case No. 19-cv-00892-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, CERTIFYING JUDGMENT FOR APPEAL, AND DENYING REQUEST TO STAY**<br><br>Re: Dkt. Nos. 168, 181 |

Pending before the Court are cross-motions for partial summary judgment filed by Plaintiffs Sierra Club and Southern Border Communities Coalition, and Defendants Donald J. Trump, in his official capacity as President of the United States; Mark T. Esper, in his official capacity as Acting Secretary of Defense[1]; Kevin K. McAleenan, in his official capacity as Acting Secretary of Homeland Security[2]; and Steven T. Mnuchin, in his official capacity as Secretary of the Department of the Treasury, briefing for which is complete. Dkt. Nos. 168 ("Pls.' Mot."), 181 ("Defs.' Mot."), 192 ("Pls.' Reply"). The only issue presently before the Court concerns Defendants' intended reprogramming of funds under Sections 8005 and 9002 of the Department of Defense Appropriations Act, 2019, Pub. L. No. 115-245, 132 Stat. 2981 (2018), and subsequent use of such funds under 10 U.S.C. § 284 ("Section 284") for border barrier construction.[3]

---

[1] Acting Secretary Esper is automatically substituted for former Acting Secretary Patrick M. Shanaham. *See* Fed. R. Civ. P. 25(d).
[2] Acting Secretary McAleenan is automatically substituted for former Secretary Kirstjen M. Nielsen. *See* Fed. R. Civ. P. 25(d).
[3] The relevant background for this motion is essentially unchanged since the Court's preliminary injunction order. The Court thus incorporates in full here the factual background and statutory framework as set forth in that order. *See* Dkt. No. 144.

After carefully considering the parties' arguments, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion, and **DENIES** Defendants' motion.[4] The Court also certifies this judgment for immediate appeal pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Last, the Court **DENIES** Defendants' request for a stay of any injunction pending appeal.

## I. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

The parties agree that the issue presently before the Court is properly resolved on their cross-motions for partial summary judgment. Pls.' Mot. at 8–9; Defs.' Mot. at 9.

## II. DISCUSSION

In their motion, Plaintiffs request that the Court (1) enter final judgment in their favor "declaring unlawful Defendants' transfer of Fiscal Year 2019 appropriated funds to the Department of Defense's [("DoD's")] Section 284 account, the use of those funds for construction of a border wall, and Defendants' failure to comply with NEPA for this construction"; (2) issue a

---

[4] In light of the extended oral argument regarding these issues at the preliminary injunction hearing, *see* Dkt. No. 138, the Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted, *see* Civil L.R. 7-1(b).

permanent injunction prohibiting Defendants from so funding border barrier construction "prior to complying with NEPA"; and (3) enjoin such unlawful use of funds generally. Pls.' Mot. at 1. Defendants' motion seeks a final determination that their intended use of funds under Sections 8005, 9002, and 284 for border barrier construction is lawful. Defs.' Mot. at 2. Defendants also request that the Court certify this judgment for appeal under Rule 54(b). *Id.* at 24–25.

### A. Declaratory Relief

Plaintiffs seek a declaratory judgment finding unlawful Defendants' (1) reprogramming of funds under Sections 8005 and 9002, (2) use of those funds for border barrier construction under Section 284, and (3) failure to comply with NEPA before pursuing any such construction. *See* Pls.' Mot. at 1.

#### 1. Sections 8005, 9002, and 284

Starting with Section 8005, the Court previously held that Plaintiffs were likely to succeed on their arguments that Defendants' intended reprogramming of funds under Section 8005 to the Section 284 account to fund border barrier construction in El Paso Sector 1 and Yuma Sector 1 is unlawful. In particular, the Court found that Plaintiffs were likely to show that (1) the item for which funds are requested has been denied by Congress; (2) the transfer is not based on "unforeseen military requirements"; and (3) accepting Defendants' proposed interpretation of Section 8005's requirements would raise serious constitutional questions.[5] Dkt. No. 144 ("PI Order") at 31–42.

The Court previously only considered Defendants' reprogramming and subsequent use of funds for border barrier construction for El Paso Sector Project 1 and Yuma Sector Project 1. It did not consider Defendants' more-recently announced reprogramming and subsequent diversion of funds for border barrier construction for the El Centro Sector Project and Tucson Sector Projects 1–3, pending further development of the record as to those projects. *See id.* at 12. To fund these projects, Defendants again invoked Section 8005, as well as DoD's "special transfer

---

[5] The Court did not consider whether Defendants' reprogramming of funds was for a "higher priority item"—an independently necessary requirement under Section 8005—because Defendants' planned use of such reprogrammed funds failed multiple other Section 8005 requirements. The Court similarly does not consider the "higher priority item" requirement here.

3

1 authority under section 9002 of the Department of Defense Appropriations Act, 2019, and section 1512 of the John S. McCain National Defense Authorization Act for Fiscal Year 2019." *See* Dkt. No. 118-1 ("Rapuano Second Decl.") ¶ 7. Defendants' Section 9002 authority, however, is subject to Section 8005's limitations. *See* Department of Defense Appropriations Act, 2019, Pub. L. No. 115-245, § 9002, 132 Stat. 2981, 3042 (2018) (providing that "the authority provided in this section is in addition to any other transfer authority available to the Department of Defense and is subject to the same terms and conditions as the authority provided in section 8005 of this Act"); *see also* Defs.' Mot. at 10 n.4 (acknowledging that Section 9002 is subject to Section 8005's requirements). Because Defendants agree that all such authority is subject to Section 8005's substantive requirements, the Court refers to these requirements collectively by reference to Section 8005.

In their pending motion, "Defendants acknowledge that the Court previously rejected [their] arguments about the proper interpretation of § 8005 in its [preliminary injunction] order." Defs.' Mot. at 10. Defendants contend that the Court's findings were wrong for two reasons: (1) "Plaintiffs fall outside the zone of interests of § 8005 and thus cannot sue to enforce it"; and (2) "DoD has satisfied the requirements set forth in § 8005." *Id.* at 10–13. But Defendants here offer no evidence or argument that was not already considered in the Court's preliminary injunction order. For example, Defendants continue to argue that under *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the zone-of-interests test applies to Plaintiffs' claims. *Compare* Opp. at 10, *with* Dkt. No. 64 at 14–15. And the Court continues to find that the test has no application in an *ultra vires* challenge, which operates outside of the APA framework, and the Court incorporates here its prior reasoning on this point. PI Order at 29–30.

Defendants also continue to assert that DoD did not transfer funds for an item previously denied by Congress and that the transfer was for an "unforeseen" requirement. *Compare* Opp. at 11–13, *with* Dkt. No. 64 at 16–18. But Defendants again present no new evidence or argument for why the Court should depart from its prior decision, and it will not. The Court thus stands by its prior finding that Defendants' proposed interpretation of the statute is unreasonable, and agrees with Plaintiffs that Defendants' intended reprogramming of funds under Section 8005—and

4

necessarily under Section 9002 as well—to the Section 284 account for border barrier construction is unlawful. *See* PI Order at 31–42. Because no new factual or legal arguments persuade the Court that its analysis in the preliminary injunction order was wrong, Plaintiffs' likelihood of success on the merits has ripened into actual success. The Court accordingly **GRANTS** Plaintiffs' request for declaratory judgment that such use of funds reprogrammed under Sections 8005 and 9002 for El Paso Sector Project 1, Yuma Sector Project 1, El Centro Sector Project, and Tucson Sector Projects 1–3 is unlawful.[6]

Turning to Section 284, the Court finds that it need not determine whether Plaintiffs are entitled to declaratory judgment that Defendants' invocation of Section 284 is also unlawful. When a party requests declaratory judgment, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Having determined that Defendants' proposed reprogramming of funds under Sections 8005 and 9002 is unlawful, no immediate adverse legal interests warrant a declaratory judgment concerning Section 284. Defendants acknowledge that all of the money they plan to spend on border barrier construction under Section 284 is money transferred into the relevant account under Sections 8005 and 9002. *See* Dkt. No. 131 at 4. Given this acknowledgment, the Court's ruling as to Sections 8005 and 9002 obviates the need to independently assess the lawfulness of Defendants' invocation of Section 284.

**2. NEPA**

Separate and apart from whether Defendants' invocations of Sections 8005, 9002, and 284 to fund border barrier construction conform with respective statutory requirements, Plaintiffs seek a declaratory judgment deeming unlawful Defendants' failure to comply with NEPA before pursuing such construction. *See, e.g.*, Pls.' Mot. at 24. Plaintiffs acknowledge that they present

---

[6] Plaintiffs' motion seeks a broader declaratory judgment that any use of reprogrammed funds for border barrier construction, even outside of these particular sectors, is unlawful. *See* Mot. at 23–24. Given that Defendants have not yet authorized any border barrier construction outside of the contested sectors, the Court declines to issue such a declaratory judgment.

5

identical arguments previously raised and rejected by the Court in its preliminary injunction order. *See id.* at 18 n.3. Presented with no new evidence or argument that was not already considered in the Court's preliminary injunction order, the Court continues to find that the pertinent waivers issued by DHS are dispositive of the NEPA claims, for the reasons detailed in the Court's previous order. *See* PI Order at 46–48.

### B. INJUNCTIVE RELIEF

It is a well-established principle of equity that a permanent injunction is appropriate when: (1) a plaintiff will "suffer[] an irreparable injury" absent an injunction; (2) available remedies at law are "inadequate;" (3) the "balance of hardships" between the parties supports an equitable remedy; and (4) the public interest is "not disserved." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Defendants do not dispute that available remedies at law are inadequate. The Court thus only considers the remaining factors.

#### 1. Plaintiffs Have Shown They Will Suffer Irreparable Harm Absent a Permanent Injunction.

Plaintiffs contend that absent an order permanently enjoining the contemplated border barrier construction in the areas designated El Paso Sector 1, Yuma Sector 1, El Centro Sector, and Tucson Sectors 1–3, its members "will suffer irreparable harm to their recreational and aesthetic interests." Mot. at 20–22. The Court agrees and finds that Plaintiffs have shown that they will suffer irreparable harm to their members' aesthetic and recreational interests in the identified areas absent injunctive relief. As the Court previously noted, it is well-established in the Ninth Circuit that an organization can demonstrate irreparable harm by showing that the challenged action will injure its members' enjoyment of public land. *See* PI Order at 49. And Plaintiffs here provide declarations from their members detailing how Defendants' proposed use of funds reprogrammed under Sections 8005 and 9002 will harm their ability to recreate in and otherwise enjoy public land along the border. *See* Pls.' Mot. at 21–22 (citing Dkt. No. 168-1 Ex. 1 (Bevins Decl.) ¶ 7; *id.* Ex. 2 (Del Val Decl.) ¶¶ 9–10; *id.* Ex. 3 (Bixby Decl.) ¶ 6; *id.* Ex. 4 (Munro Decl.) ¶¶ 9, 11; *id.* Ex. 5 (Walsh Decl.) ¶¶ 12, 15; *id.* Ex. 6 (Evans Decl.) ¶ 8; *id.* Ex. 7 (Armenta Decl.) ¶¶ 6–8; *id.* Ex. 8 (Ramirez Decl.) ¶¶ 5, 8; *id.* Ex. 9 (Hartmann Decl.) ¶¶ 8, 9; *id.* Ex. 10

(Hudson Decl.) ¶¶ 10–11; *id.* Ex. 11 (Dahl Decl.) ¶ 8; *id.* Ex. 13 (Gerrodette Decl.) ¶¶ 6, 8; *id.* Ex. 14 (Case Decl.) ¶¶ 10–12; *id.* Ex. 17 (Tuell Decl.) ¶¶ 7, 10; Ex. 18 (Ardovino Decl.) ¶ 6).

Defendants do not contest the truthfulness of Plaintiffs' declarants' assertions that the challenged border barrier construction will harm their recreational interests. Defendants instead contend that Plaintiffs' alleged recreational harms are insufficient because even with the proposed border barrier construction, Plaintiffs' members have plenty of other space to enjoy. *See* Defs.' Mot. at 21–22. In their words, border barrier construction "will not impact land uses in the thousands of acres surrounding the limited project areas, where the forms of recreation Plaintiffs enjoy will remain possible." *Id.* at 22. Defendants' argument—unsupported by any case law—proves too much. *See All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (holding this argument's "logical extension is that a plaintiff can never suffer irreparable injury resulting from environmental harm in [one] area as long as there are other areas [] that are not harmed"). Given that Plaintiffs' declarants' characterization of the harm they will suffer is undisputed as a factual matter, the result under Ninth Circuit law is that Plaintiffs have shown they will suffer irreparable harm absent a permanent injunction.

### 2. Balance of Hardships and Public Interest Support a Permanent Injunction

The parties agree that the Court should consider the balance of the equities and public interest factors together, because the government is a party to the case. *See* Pls.' Mot. at 22; Defs.' Mot. at 23–24; *see also Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). As they did at the preliminary injunction stage, Defendants here contend that these factors tilt in their favor because the Government has a strong interest in border security. Defs.' Br. at 23. Defendants also contend that an injunction would "permanently deprive DoD of its authorization to use the funds at issue to complete the projects, because the funding will lapse at the end of the fiscal year" and that DoD will "incur unrecoverable fees and penalties" while construction is suspended. *Id.* at 23–24.

As the Court explained in its preliminary injunction order, the Ninth Circuit has recognized that "the public has a 'weighty' interest 'in efficient administration of the immigration laws at the

7

border,'" and the Court does not minimize this interest. *See E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1255 (9th Cir. 2018) (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)). But "the public also has an interest in ensuring that statutes enacted by their representatives are not imperiled by executive fiat." *Id.* (internal quotation marks and brackets omitted). And the Court notes that Congress considered all of Defendants' proffered needs for border barrier construction, weighed the public interest in such construction against Defendants' request for taxpayer money, and struck what it considered to be the proper balance—in the public's interest—by making available only $1.375 billion in funding, which was for certain border barrier construction not at issue here. *See* Consolidated Appropriations Act of 2019, Pub. L. No. 116-6, § 230(a)(1), 133 Stat. 13, 28 (2019). Most important, Defendants overlook that these factors are informed by the Court's finding that Defendants do not have the purported statutory authority to reprogram and use funds for the planned border barrier construction. Absent such authority, Defendants' position on these factors boils down to an argument that the Court should not enjoin conduct found to be unlawful because the ends justify the means. No case supports this principle.

Because the Court finds Defendants' proposed use of funds reprogrammed under Sections 8005 and 9002 unlawful, the Court finds that the balance of hardships and public interest favors Plaintiffs, and counsels in favor of a permanent injunction.

## C. Certification for Appeal

Finally, Defendants request that the Court certify this judgment for appeal under Rule 54(b). Appellate courts generally only have jurisdiction to hear appeals from final orders. *See* 28 U.S.C. § 1291. Rule 54(b) allows for a narrow exception to this final judgment rule, permitting courts to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Entry of judgment under Rule 54(b) thus requires: (1) a final judgment; and (2) a determination that there is no just reason for delay of entry. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 574 (9th Cir. 2018) (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–8 (1980)).

### 1. Finality of Judgment

A final judgment is "a decision upon a cognizable claim for relief" that is "an ultimate

disposition of an individual claim entered in the course of a multiple claims action." *Curtiss-Wright Corp.*, 446 U.S. at 7 (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956)). The Court finds this requirement satisfied because the Court's award of partial summary judgment in this order is "an ultimate disposition" of Plaintiffs' claims related to Defendants' purported reliance on Sections 8005, 9002, and 284 for border barrier construction.

### 2. No Just Reason for Delay

As the Ninth Circuit has explained, "[j]udgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties." *Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981). Accordingly, an explanation of findings "should include a determination whether, upon any review of the judgment entered under the rule, the appellate court will be required to address legal or factual issues that are similar to those contained in the claims still pending before the trial court." *Id.* at 965. "The greater the overlap the greater the chance that [the Court of Appeals] will have to revisit the same facts—spun only slightly differently—in a successive appeal." *Wood v. GCC Bend, LLC*, 422 F.3d 873, 882 (9th Cir. 2005). "[P]lainly, sound judicial administration does not require that Rule 54(b) requests be granted routinely." *Id.* at 879 (internal quotation marks omitted).

The Court finds there is no just reason for delay under the circumstances. In their motion, Defendants contend that "[t]he legal and factual issues do not 'intersect and overlap' with the outstanding claims in this case, which focus on separate statutory authorities, and final judgment on these claims will not result in piecemeal appeals on the same sets of facts." Defs.' Mot. at 25. The Court agrees. Whether Defendants' actions comport with the statutory requirements of Sections 8005 and 9002 and whether Defendants' actions comport with the remaining statutory requirements related to outstanding claims are distinct inquiries, largely based on distinct law. The Court also recognizes that Defendants' appeal of the Court's preliminary injunction order is currently pending before the Court of Appeals, which recently issued an order holding the briefing on that appeal in abeyance pending this order. *See Sierra Club v. Trump*, No. 19-16102 (9th Cir.

9

2019), ECF Nos. 65–66. This suggests to the Court that the Court of Appeals agrees that "sound judicial administration" is best served by the Court certifying this judgment for appeal, in light of the undisputedly significant interests at stake in this case. *See Wood*, 422 F.3d at 879.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for partial summary judgment and **DENIES** Defendants' motion for partial summary judgment. Specifically, the Court **GRANTS** Plaintiffs' request for declaratory judgment that Defendants' intended use of funds reprogrammed under Sections 8005 and 9002 of the Department of Defense Appropriations Act, 2019, for border barrier construction in El Paso Sector 1, Yuma Sector 1, El Centro Sector, and Tucson Sectors 1–3, is unlawful. The Court **DENIES** Plaintiffs' request for declaratory judgment concerning Defendants' (1) invocation of Sections 8005 and 9002 beyond these sectors, (2) invocation of Section 284, and (3) compliance with NEPA.

The terms of the permanent injunction are as follows[7]: Defendants Mark T. Esper, in his official capacity as Acting Secretary of Defense, Kevin K. McAleenan, in his official capacity as Acting Secretary of Homeland Security, Steven T. Mnuchin, in his official capacity as Secretary of the Department of the Treasury, and all persons acting under their direction, are enjoined from taking any action to construct a border barrier in the areas Defendants have identified as El Paso Sector 1, Yuma Sector 1, El Centro Sector, and Tucson Sectors 1–3 using funds reprogrammed by DoD under Sections 8005 and 9002 of the Department of Defense Appropriations Act, 2019.

The Clerk is directed to enter final judgment in favor of Plaintiffs and against Defendants with respect to Defendants' purported reliance on Sections 8005, 9002, and 284 to fund border barrier construction. This judgment will be certified for immediate appeal pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

//

//

---

[7] The Court finds that an injunction against the President personally is not warranted here. *See Cty. of Santa Clara*, 250 F. Supp. 3d at 549–40.

10

Last, for these reasons and those set out in the Court's May 30, 2019 order, the Court declines Defendants' request to stay the injunction pending appeal. *See* Dkt. No. 152.

**IT IS SO ORDERED.**

Dated: 6/28/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge