JAMES M. BURNHAM
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch
ANDREW I. WARDEN (IN #23840-49)
Senior Trial Counsel
KATHRYN C. DAVIS
MICHAEL J. GERARDI
LESLIE COOPER VIGEN
RACHAEL WESTMORELAND
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:     (202) 616-5084
Fax:     (202) 616-8470
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

|  |  |
|---|---|
| STATE OF CALIFORNIA, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>        Defendants. | No. 4:19-cv-00872-HSG<br>No. 4:19-cv-00892-HSG<br><br>**DEFENDANTS' RESPONSE TO THE COURT'S NOVEMBER 20, 2019 ORDER REQUESTING ADDITIONAL INFORMATION ABOUT MILITARY INSTALLATIONS** |
| SIERRA CLUB, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>        Defendants. |  |

Defendants hereby submit the following response to the questions posed by the Court about military installations during the November 20, 2019 hearing in the above-captioned cases.

### 1.        The Process and Authority for Establishing a Military Installation

The process of establishing a military installation involves two steps.  First, the Department of Defense (DoD) must obtain jurisdiction over the land where the installation will be located. Second, DoD must designate the land as part of either a new or existing military installation in accordance with DoD's internal policies and regulations.  *See* Second Declaration of Alex A. Beehler ¶¶ 3–7 (Exhibit 1).

With respect to the first step, DoD must bring the real property on which the installation will be located "under the jurisdiction of the Secretary of a military department."  10 U.S.C. § 2801(c)(4) (defining "military installation" as "a base, camp, post, station, yard, center, or other activity under the jurisdiction of the Secretary of a military department"); Second Beehler Decl. ¶ 4.  For the border barrier projects at issue in these cases, the authorization in 10 U.S.C. § 2808 for DoD to engage in "military construction" includes "any acquisition of land."  10 U.S.C. § 2801(a); Second Beehler Decl. ¶ 4.b.i.[1]  Pursuant to this authority, DoD is acquiring jurisdiction over the land for the § 2808 border barrier projects through a combination of (1) transfers of administrative jurisdiction over federal land from other federal agencies; and (2) negotiated purchases or condemnation of non-federal land.  *See* Defs.' Motion for Summary Judgment (ECF No. 236 at 8–9, 14–15 in No. 19-cv-872; ECF No. 236 at 8–9, 18–19 in No. 19-cv-892).

The process required to bring land under the jurisdiction of a military department varies depending on the type of land at issue.  *See* Second Beehler Decl. ¶ 4.  For federal land that can be transferred under the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. §§ 1701 *et seq.*, the military department submits a withdrawal application to the Department of the Interior (DoI) in

---

[1] In addition to § 2808, DoD has other statutory authorities to acquire real property.  *See, e.g.*, 10 U.S.C. § 2663 (land acquisition authorities); 10 U.S.C. § 18233 (authorization to acquire land for reserve components); John S. McCain National Defense Authorization Act for Fiscal Year 2019, Pub. L. 115-232, Div. B, 132 Stat. 1636 (Aug. 13, 2018) (annual authorization for military departments to undertake military construction projects and land acquisition).

accordance with 43 U.S.C. § 157 or 43 C.F.R. § 2310.  *See* Second Beehler Decl. ¶ 4.a.i.  If the application is granted, DoI withdraws the land from other forms of use under the public land laws and transfers administrative jurisdiction to the requesting military department by publication of a Public Land Order.  *See id.; see also* Public Land Order Nos. 7883–87, 84 Fed. Reg. 50063–65 (Sept. 24, 2019).[2]  For federal land subject to the Federal Property and Administrative Services Act, as amended, 40 U.S.C. §§ 101 *et seq.*, the transfer of custody and accountability among agencies occurs by the General Services Administration (GSA) executing a letter effectuating transfer.  *See* Second Beehler Decl. ¶ 4.a.ii; *see also* 40 U.S.C. § 521 ("The Administrator of General Services shall . . . provide for the transfer of excess property . . . among federal agencies"); 41 C.F.R. § 102-75.175 (requiring GSA approval "[b]efore property can be transferred among Federal agencies"); 41 C.F.R. § 102-75.1285 (GSA transfers property "via letter assigning 'custody and accountability' for the property to the requesting agency.  Title to the property is held in the name of the United States; however, the requesting agency becomes the landholding agency. . . .").  For property not already owned by the United States, the process for bringing real property under the jurisdiction of the Secretary of a military department begins by obtaining ownership over the real property in the name of the United States. *See* Second Beehler Decl. ¶ 4.b.  Real property not owned by the United States may be acquired by a military department in the name of the United States through purchase, donation, exchange, or condemnation.  *See id.* ¶ 4.b.ii.  Once the military department acquires the real property, the military department has administrative jurisdiction and real property accountability on behalf of the U.S. Government.  *See id.* ¶ 4.b.iii.

After DoD obtains administrative jurisdiction over the land, in order to manage and account for the real property under its jurisdiction, the military department may either designate the property as a new military installation or assign the property to an existing installation.  *See* Second Beehler Decl. ¶ 5 (citing Chapter 159 of Title 10 U.S. Code and DoD Directive 4165.06, *Real Property*).  Under

---

[2] While the DoI may withdraw Federal land and transfer jurisdiction in accordance with FLPMA, 43 U.S.C. § 1714, withdrawals of Federal land greater than 5,000 acres in the aggregate for any one defense project or facility, including transfers of administrative jurisdiction to a military department require an Act of Congress.  *See* 43 U.S.C. § 156.

Army procedures established by General Orders No. 2019-01, *Assignment of Functions and Responsibilities Within Headquarters, Department of the Army*, such organizational designations relating to installations are directed by a General Order signed by the Secretary of the Army and registered in the DoD official real property database of record as required by DoD policy.  *See* Second Beehler Decl. ¶ 6; *see also* General Order No. 2019-36, Assignment of Southwest Border Sites (ECF No. 236-7 in No. 19-cv-872; ECF No. 236-7 No. 19-cv-892).

       **2.**        **Geographically Separate Sites of a Military Installation**

       The Court also asked about the authority for two references in the Administrative Record stating that land DoD acquires for a military installation is designated either "as its own installation or as part of an existing, nearby military installation."  *See* AR at 3, 40 (ECF No. 212 in 19-CV-872; ECF No. 206 in 19-CV-892).  There is no legal, regulatory, or policy requirement for geographically separate sites to be assigned to a "nearby" military installation.  Second Beehler Decl. ¶ 8.  Nor is there any legal, regulatory, or policy requirement for all the sites or lands that comprise a given military installation to be located in the same State or within a certain distance of other sites associated with the military installation.  *Id.*  In the Secretary of Defense's September 3, 2019, memorandum to the Secretary of the Army (AR at 9–10), the Secretary of Defense directed the Department of the Army to "add such land to the Department of the Army's real property inventory, either as a new installation or as part of an existing military installation," without conditions on the location of the existing installation to which the land could be added.  *Id.*

       The Department of the Army, on behalf of the United States, owns and uses many parcels of land that are not contiguous to other portions of a military installation and that are not considered separate military installations.  Second Beehler Decl. ¶ 9.  The same is true for other military departments.  *Id.*  Such locations are referred to as "sites."  *Id.*  DoD Instruction 4165.14, *Real Property Inventory (RPI) and Forecasting*, defines a site as a "physical (geographic) location that is, or was owned by, leased to, or otherwise possessed by a DoD Component on behalf of the United States.  Each site (except for leased) is assigned to a single installation."  *Id.*  A site may exist as "land only, where there are no facilities present," "facility or facilities only, where the underlying land is neither owned nor controlled by the government," or "land and the facilities thereon."  *Id.*

*State of California, et al. v. Donald J. Trump, et al.*, 4:19-cv-00872-HSG – Defs.' Response to Court's Nov. 20 Order
*Sierra Club et. al. v. Donald J. Trump, et al.*, 4:19-cv-00892-HSG – Defs.' Response to Court's Nov. 20 Order

3

Each site is assigned to a military installation for real property accountability purposes and is considered part of that installation, even if located remotely from the Army Garrison.  Second Beehler Decl. ¶ 10.   The Garrison is the Army organizational unit that is responsible for installation management across the installation sites.  *Id.* (citing Army Regulation 405-70, *Utilization of Real Property*).  Sites can be in States other than the one in which the Army Garrison unit is located, and the distance between various sites can vary significantly.  *Id.*   For example, Fort Campbell is located in both Kentucky and Tennessee; the Green River Test Complex site in Utah is part of White Sands Missile Range in New Mexico; the Special Forces site in Key West, Florida, is part of Fort Bragg, North Carolina; six different Navy Outlying Landing Field sites in Alabama are part of Naval Air Station Whiting Field, Florida; a new National Geospatial Intelligence Agency West Campus being constructed in Missouri is part of Scott Air Force Base, Illinois; the Pentagon Reservation includes the Pentagon building and Mark Center in Virginia as well as the Raven Rock Complex in Maryland and Pennsylvania; and among other Army examples, Fort Carson, Fort Belvoir, Fort Bliss, Joint Base Lewis McChord, Fort Benning, Fort Greely, and Fort Detrick all include various geographically separate sites.  *Id.*

The § 2808 project locations were assigned to Fort Bliss because it is the largest, most capable active Army installation in the vicinity of the southern border.  Second Beehler Decl. ¶ 11.  Fort Bliss has a sizable existing installation management office with experience addressing various land management issues and experience working with the U.S. Army Corps of Engineers on military construction projects.  *Id.*  The Department of the Army also determined that it is more efficient for command of all the real property associated with the projects undertaken pursuant to § 2808 to be vested in one Army installation, given the similar nature and scope of all such § 2808 projects.  *Id.*  In addition, Fort Bliss has an existing support relationship with the U.S. Border Patrol, which maintains a regional office on the installation.  *Id.*

DATE: November 25, 2019

Respectfully submitted,

JAMES M. BURNHAM
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

/s/ *Andrew I. Warden*
ANDREW I. WARDEN (IN #23840-49)
Senior Trial Counsel

KATHRYN C. DAVIS
MICHAEL J. GERARDI
LESLIE COOPER VIGEN
RACHAEL WESTMORELAND
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:    (202) 616-5084
Fax:    (202) 616-8470
*Attorneys for Defendants*