# Exhibit A

June 18, 2021

Honorable Scott S. Harris
Clerk
Supreme Court of the United States
Washington, DC. 20543

Re:   *Joseph R. Biden, Jr., et al. v. Sierra Club, et al.*, No. 20-138 — Respondents' Letter Brief in Opposition to Motion To Vacate and Remand



Dear Mr. Harris:

Respondents respectfully submit this letter to the Court, responding to and opposing Petitioner's Motion To Vacate and Remand.

The government's June 11 announcement that it will not continue border wall construction—coming only after it already completed construction of the wall sections contested in this case—does not justify vacatur of the decision below. This Court has never granted vacatur in such circumstances. The announcement neither undermines a premise upon which the decision below rests, nor alters a question the Court granted certiorari to resolve—the only bases this Court has recognized as warranting vacatur for changed circumstances.

Because the government concedes that its appeal does not merit plenary review and has repudiated the claims it made in support of its petition, the proper remedy is simple dismissal of the writ. But a grant of vacatur under these circumstances would be unprecedented and inequitable, and would effectively allow the government, the losing party below, to reverse its loss on the merits without pursuing appeal. Where a losing party moots its own appeal by its own actions, it is generally inequitable to grant vacatur. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 27 (1994). Here, the government seeks an even more inequitable result—vacatur of the decision against it without either winning on the merits or rendering the dispute moot. The Court should not allow the government to effectively win its appeal without pursuing it.

National Office
125 Broad Street
18th Floor
New York, NY 10004
aclu.org

**Deborah N. Archer**
President

**Anthony D. Romero**
Executive Director

1

## STATEMENT



This case concerns the government's diversion of $2.5 billion in funds appropriated for military purposes in Fiscal Year 2019 to construct border wall projects that Congress expressly refused to fund—at locations identified as "El Paso Sector 1, Yuma Sector 1, El Centro Sector, and Tucson Sectors 1-3." Mot. 5 (quoting Appendix for Petitioners at 187a–188a, Donald J. Trump, President of the United States, et al. v. Sierra Club, et al., 141 S. Ct. 618 (No. 20-138) (2020)) ("Pet. App."). The district court concluded that the government's actions were unlawful because these wall construction projects were specifically "denied by Congress" and not an "unforeseen" need, and thus failed to meet the express statutory requirements of the authority the government had invoked to justify its spending—Section 8005 of the 2019 Department of Defense ("DoD") Appropriations Act. Pet. App. 350a–357a. The district court also noted that the government's position raised serious constitutional concerns under the Appropriations Clause and the separation of powers. *Id.* at 357a–365a. On June 28, 2019, the district court issued a permanent injunction barring construction of the wall sections at issue here. *Id.* at 187a–188a. It also issued a declaration that the government's planned construction was unlawful. *Id.* at 187a.

On July 12, 2019, the government filed a stay application with this Court, seeking to spend the diverted funds and construct the challenged wall sections while it sought review. In support of its application, the government represented that completion of these construction projects would not frustrate Respondents' ability to achieve relief. The government expressly represented that retrospective relief, in the form of taking down the wall, would be available, so that even if construction ended, the case would not be moot. S*ee* Application of Petitioner for Stay at 39, Donald J. Trump, President of the United States et al. v. Sierra Club, et al., 140 S. Ct. 2620 (No. 19A60) (2020) ("19A60 Gov't Stay App.") (asserting that "respondents' interests can be largely protected if they ultimately prevail—for example, by the removal of any barriers found to be unlawful"); Reply Brief of Petitioner at 14–15, Donald J. Trump, President of the United States, et al. v. Sierra Club, et al., 140 S. Ct. 2620 (No. 19A60) (2020) ("19A60 Gov't Reply Br.") (asserting that "respondents' asserted injuries to recreational and aesthetic interests in the areas where construction will occur could be remedied at a later date, if respondents ultimately prevail"). The

Court granted the stay on July 26, 2019. 140 S. Ct. at 1. With the stay in place, the government then spent the disputed funds, and built the disputed projects. *See Border Wall System, U.S. Customs and Border Protection* (Jan. 25, 2021), https://www.cbp.gov/border-security/along-us-borders/border-wall-system.

On June 26, 2020, the court of appeals affirmed the district court's permanent injunction. Writing for the court, Chief Judge Thomas found that Congress declined to appropriate funds for the challenged border wall construction, and that Section 8005 was inapplicable, and held that because "the Executive Branch lacked independent constitutional authority to authorize the transfer of funds," the diversion of $2.5 billion in funds was unlawful. Pet. App. 18a.



On July 21, 2020, Respondents filed a motion to lift this Court's stay, advising the Court that the government would soon complete the disputed projects unless the stay were lifted. Respondents' Motion to Lift Stay at 18, Donald J. Trump, President of the United States, et al. v. Sierra Club, et al., 140 S. Ct. 2620 (No. 19A60) (2020) ("19A60 Mot. to Lift Stay"). Respondents informed the Court that the government had "already completed several of the projects enjoined as unlawful by the District Court—El Centro 1 and Yuma 1 & 2," and that Customs and Border Protection officials had stated that the remaining projects would be completed by the end of 2020. *Id.*

The government opposed Respondents' motion, and on July 31, 2020, this Court denied the motion to lift the stay. *See* 140 S. Ct. 2620. The government petitioned for certiorari on August 7, 2020. The Court granted the government's petition, 141 S. Ct. 618, and set the case for argument on February 22, 2021.

On January 20, 2021, long after the government had already spent the transferred funds at issue here, President Biden issued a Proclamation declaring that "[i]t shall be the policy of [his] Administration that no more American taxpayer dollars be diverted to construct a border wall." 86 Fed. Reg. 7225. In subsequent months, long after the government built the wall projects at issue here, DoD undertook several steps to cease additional construction of other wall projects not at issue in this case, Mot. 8–11, culminating in its June 11, 2021 announcement

that "[n]o new barrier construction work will occur on the DoD projects," *id.* at 11.

In the June 11, 2021 announcement of the cessation of border wall construction using DoD funds, the government noted that the construction projects had "diverted critical resources away from military training facilities and schools, and caused serious risks to life, safety, and the environment." *Department of Defense and Department of Homeland Security Plans for Border Wall Funds* (June 11, 2021), https://www.whitehouse.gov/omb/briefing-room/2021/06/11/fact-sheet-department-of-defense-and-department-of-homeland-security-plans-for-border-wall-funds/ ("Fact Sheet"). The government further observed that "[b]uilding a massive wall that spans the entire southern border and costs American taxpayers billions of dollars is not a serious policy solution or responsible use of Federal funds." *Id.* Finally, the government noted, as official government reports confirm, that "[m]ost contraband is likely to come through legal ports of entry." *Id.*; *see also* Pet. App. 38a–39a & n.16 (observing that "the Department of Justice's own data" contradicted claims that a border wall would further drug interdiction goals).

Later on June 11, 2021, the government moved for vacatur of the Ninth Circuit's opinion and remand. It asserted that the court of appeals' decision no longer "warrant[s] this Court's plenary review at this time in light of the greatly changed circumstances," Mot. 11, and requested that the lower court decision be vacated without any finding of error or mootness.



## ARGUMENT

Respondents agree with the government that its appeal does not merit plenary review at this time. The government no longer maintains that "transfer of military funds to assist in the construction of fences on the southern border to stanch the flow of illegal drugs" is of national importance, or that the lower court decision "interfere[s] with Executive Branch conduct that is of importance to national security." Petition at 17, Donald J. Trump, President of the United States, et al. v. Sierra Club, et al., 141 S. Ct. 618 (No. 20-138) (2020) ("Pet.") (quotation and alteration marks omitted). Instead, the government now concedes that wall construction using diverted military funds is "not a serious policy solution or responsible use of Federal

funds," deprives the military of "critical resources," and does not effectively further the interdiction of contraband. Fact Sheet. The lower court decision never created any circuit split. *See* Opposition Brief of Respondents at 16–17, Donald J. Trump, President of the United States, et al. v. Sierra Club, et al., 141 S. Ct. 618 (No. 20-138) (2020) ("Respondents Br. in Opp."). There is thus no cause for the Court to review the lower court decision. The Court should therefore dismiss the writ.



That the government has now repudiated the challenged project and effectively concedes the lower court decision is not cert-worthy, however, does not entitle it to vacatur. An announcement that the government will not continue wall construction—long after it already completed construction of the wall sections at issue in this case after obtaining a stay to permit it to do so—does not constitute a changed circumstance warranting vacatur, as it does not establish a reasonable probability that the lower court would have decided the case differently had it been aware of recent developments. Nor does the government's announcement alter the purely legal questions of statutory construction and availability of cause of action the Court granted certiorari to resolve. It simply makes those questions no longer necessary to decide.

Moreover, given that the government previously secured a stay based on its representation that completion of construction would not impede review, it would be inequitable to now grant the government's motion to vacate. A decision granting vacatur under these circumstances would effectively grant the government, the losing party, a victory without pursuing its appeal on the merits. While vacatur is appropriate where circumstances beyond the government's control deprive it of the ability to pursue an appeal, here it is the *government's* own actions that have led it to seek to have the case returned to the lower courts. The government's unilateral change in position does warrant returning the case to the courts below—but the proper way to do that is to dismiss its petition, not to grant the government relief without even adjudicating the merits.

This Court has instructed that vacatur of a non-moot case may be appropriate "[w]here intervening developments, or recent developments that we have reason to believe the court below did not fully consider, reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration,

and where it appears that such a redetermination may determine the ultimate outcome of the litigation." *Lawrence v. Chater*, 516 U.S. 163, 167 (1996) (per curiam). The threshold requirement is a "reasonable probability" that a changed circumstance undermines a premise on which the decision below rests, so that the lower court should be given an opportunity to reconsider the challenged holding. That standard is manifestly not met here.



To begin, the government's June 11, 2021 announcement cannot constitute an "intervening development" with respect to the wall sections at issue here, because it affects neither their funding nor construction. Although the government attempts to muddy the record, the "changed circumstances" it conjures chiefly involve *other* construction projects and *other* sources of funding, including diversions of military construction funds and Section 284 construction projects using Fiscal Year 2020 funds. Mot. 7–11. The wall projects at issue here, by contrast, are largely or completely unaffected by the government's announcement for the simple reason that the money was long ago spent and construction has long been completed. *See Border Wall System, U.S. Customs and Border Protection*, https://www.cbp.gov/border-security/along-us-borders/border-wall-system. Statements of intent about future funding streams have no impact on funds already spent.

And even if the June 11 announcement were an "intervening event," it would not "reveal a reasonable probability" that the court of appeals would now reject some premise it relied upon in deciding the government's appeal. Nothing in the court of appeals' analysis of the Trump administration's past diversion of funds turned on facts changed by the Biden administration's change of heart with respect to other funds. The lower court's conclusion that the government lacked authority to spend $2.5 billion in Fiscal Year 2019 funds to construct specific wall sections does not even arguably turn on whether the government would ultimately complete each challenged project, or only nearly complete them before announcing that it would abandon course. The government's recent announcement thus does not plausibly undermine the lower court decisions challenged here.

The cases the government relies on, Mot. 15–16, illustrate that vacatur is appropriate on grounds that are lacking here: a material change that reasonably calls into question a basis for a

6

lower court decision. In *N.L.R.B. v. Federal Motor Truck Co.*, 325 U.S. 838 (1945) (per curiam), *N.L.R.B. v. Jones & Laughlin Steel Corp.*, 325 U.S. 838 (1945) (per curiam), and *N.L.R.B. v. E.C. Atkins & Co.*, 331 U.S. 398, 401 (1947) (per curiam), the courts of appeals had considered a National Labor Review Board order authorizing the unionization of militarized employees during wartime. In deciding the cases, the courts of appeals were unaware that the employees at issue had recently been demilitarized. Lacking that essential context, the Sixth Circuit in the *Federal Motor Truck* and *Jones & Laughlin Steel* cases had rejected the NLRB's unionization order, ruling that "the Board's fatal error" was disregarding the militarized guards' "paramount duty as militarized police of the United States Government." *N.L.R.B. v. Jones & Laughlin Steel Corp.*, 331 U.S. 416, 420 (1947) (describing vacated Sixth Circuit holding). The Seventh Circuit had reached a similar conclusion, holding that militarized guards could not join a union because "[n]othing should be permitted which will interfere in any degree or to any extent with the obligation which these guards have with the military." *N.L.R.B. v. E.C. Atkins & Co.*, 147 F.2d 730, 742 (7th Cir. 1945), *vacated,* 325 U.S. 838 (1945). In its petitions for certiorari, the NLRB informed the Court that the lower court decisions did not account for the fact that the employees had been demilitarized.[1] In all the *NLRB* cases, the lower court was unaware of a material fact that might have affected their decisions. The Court accordingly granted the petitions, vacated the decisions below, and remanded to permit the lower courts to consider in the first instance any effect of demilitarization on the enforceability of the NLRB's orders. *See Federal Motor Truck Co.*, 325 U.S. at 839; *accord Jones & Laughlin Steel Corp.*, 325



---

[1] The government incorrectly states that "after the NLRB filed a petition for a writ of certiorari, the guards were demilitarized by the War Department." Mot. 15. In the Sixth Circuit case, the guards were demilitarized in May 1944, *before* both the court of appeals decision and the petition for certiorari. *See* 331 U.S. at 420 (noting that the NLRB's certiorari petition "pointed out that the . . . employees had been demilitarized" on May 29, 1944). The NLRB pointed out the material development in the *E.C. Atkins* case in its petition as well. *See N.L.R.B. v. E.C. Atkins & Co.*, 331 U.S. 398, 401 (1947) (recounting that in the NLRB's 1945 "petition in this Court for a writ of certiorari, the Board noted that the guard forces at respondent's plants had been demilitarized early in 1944").

U.S. at 838; *NLRB v. E.C. Atkins & Co.*, 325 U.S. 838 (1945) (per curiam).

The government's claim that "[t]he changed circumstances here are no less significant than were the demilitarization decisions in the *NLRB* cases," Mot. 16., is baseless. In the *NLRB* cases, the lower court decisions explicitly rested on the "paramount" importance of the employees' military duties. *Jones & Laughlin Steel Corp.*, 331 U.S. at 420. The fact that the employees no longer owed any duty to the military thus presented an "intervening development[]" that revealed "a reasonable probability that the decision below rest[ed] upon a premise that the lower court would reject if given the opportunity for further consideration." *Lawrence*, 516 U.S. at 167. Not so here. When the court of appeals issued its decision in July 2020, the Court's stay had been in effect for nearly a full year and the wall project was nearing completion. And the court of appeals' legal analysis did not rest on the status of spending or construction. Thus, there is no factual circumstance that the lower court was unaware of that might have reasonably affected the decision. No part of the court's analysis turned on whether the government would fully complete the wall sections at issue as scheduled, or abandon them just shy of completion.



The only other precedent the government identifies, *Kiyemba v. Obama*, 559 U.S. 131 (2010) (per curiam), is equally inapplicable because there the question presented was no longer live, and the changed circumstances altered an essential premise of the decision below. The Court granted certiorari to resolve "whether a federal court exercising habeas jurisdiction has the power to order the release of prisoners held at Guantanamo Bay" where "release into the continental United States is the *only possible effective remedy*." *Id.* (emphasis added). As Justice Breyer noted, the question presented turned on the absence of alternative remedies: The "Court initially granted certiorari to resolve the important question whether a district court may order the release of an unlawfully held prisoner into the United States *where no other remedy is available*." *Kiyemba v. Obama*, 563 U.S. 954 (2011) (Breyer, J., Statement respecting denial of the petition for writ of certiorari). That question was overtaken by events: "The Court subsequently learned that each of the remaining petitioners had received and rejected at least two offers of resettlement," demonstrating the availability of alternative remedies. *Id.* Thus, although the *Kiyemba* litigation was not yet moot, the question

8

the Court granted certiorari to resolve effectively was. And the premise of the lower court decision—the absence of any alternatives—had been altered in a way that gave rise to a reasonable probability that the lower court would decide the case on different terms. That is not the case here, as the pure questions of statutory construction and cause of action presented in this case are not altered by the Biden administration's announcement.



Vacatur would also do nothing to "further[] fairness." *Lawrence*, 516 U.S. at 175. To the contrary, vacatur in these circumstances would set a dangerous precedent. In seeking a stay, the government assured the Court that completion of wall construction would not bar judicial review or relief. *See* 19A60 Gov't Stay App. 39 (asserting that "respondents' interests can be largely protected if they ultimately prevail -- for example, by the removal of any barriers found to be unlawful"); 19A60 Gov't Reply Br. 14–15 (asserting that "respondents' asserted injuries to recreational and aesthetic interests in the areas where construction will occur could be remedied at a later date, if respondents ultimately prevail"). Yet the government now announces that because construction is complete, review is unwarranted—and that it should prevail, through vacatur, without adjudication on the merits of its petition. Awarding the government vacatur on this record, where its own actions have led to the absence of any need for this Court's review, would be fundamentally unfair.

The government does not even suggest that the narrow decision below will impede its ability to lawfully transfer funds or engage in any other anticipated action. And to the extent that the government believes that it would be appropriate and equitable to modify the injunction based on its June 11, 2021 announcement, Mot. 13–14, there is—as it concedes—no obstacle to seeking such relief from the district court in the first instance, Mot. 13 (observing that "federal courts generally have both the authority, and the responsibility, to modify equitable relief in light of changed circumstances") (quotation omitted)).

The government's final argument—that denial of vacatur would "forc[e] the Executive Branch to continue border-barrier construction projects that it has formally determined are not in the public interest simply to avoid the future legal consequences of the decision entered by the court of appeals," Mot. 19—is a non sequitur. The projects at issue here have been built and the

funds have been spent; the government could no more continue these border-barrier construction projects than it could eat the same piece of cake twice. And again, to the extent it seeks relief from the injunction, it can seek that on remand.

As the government agrees, this case is not moot. *See* Mot. 13. Thus, while the government is free to dismiss its appeal, dismissal does not entitle it to vacatur—effectively a victory without adjudication of its petition. "Congress has prescribed a primary route, by appeal as of right and certiorari, through which parties may seek relief from the legal consequences of judicial judgments." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 27 (1994). "To allow a party who steps off the statutory path to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment would—quite apart from any considerations of fairness to the parties—disturb the orderly operation of the federal judicial system." *Id.* Nothing prevents the government from litigating in this Court its objections to the court of appeals decision, save for its assessment that its appeal is no longer worthy of the Court's plenary review, Mot. 11. Under these circumstances, dismissal of the appeal is warranted; vacatur is not.[2]



---

[2] The government has not sought a *Munsingwear* vacatur—nor could it, as the case remains justiciable. *See United States v. Munsingwear, Inc.* 340 U.S. 36, 39–41 (1950). But even if the government's determination not to construct additional wall sections were somehow capable of rendering this controversy moot, "the *Munsingwear* procedure is inapplicable to this case" because it is the government that has "declined to pursue its appeal." *Karcher v. May*, 484 U.S. 72, 83, (1987) (denying vacatur following newly-elected legislators' decision not to continue previous officeholders' appeal). It is the government's burden "as the party seeking relief from the status quo of the appellate judgment," to demonstrate "equitable entitlement to the extraordinary remedy of vacatur." *Bancorp*, 513 U.S. at 26. Its "voluntary forfeiture of review constitutes a failure of equity that makes the burden decisive." *Id.*

Respectfully submitted,

/s/ Dror Ladin
Dror Ladin
*Counsel for Respondents*

Cc: Elizabeth B. Prelogar, Acting Solicitor General, and all counsel of record



11