# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement is made between and among Plaintiffs State of California, State of Colorado, State of Connecticut, State of Delaware, State of Hawaii, State of Illinois, State of Maine, State of Maryland, Commonwealth of Massachusetts, Attorney General Dana Nessel on behalf of the people of Michigan, State of Minnesota, State of Nevada, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Vermont, Sierra Club, Southern Border Communities Coalition (collectively "Plaintiffs"), and the United States of America; Joseph R. Biden Jr., in his official capacity as President of the United States of America; Lloyd J. Austin, in his official capacity as Secretary of Defense; Alejandro Mayorkas, in his official capacity as Secretary of Homeland Security; Deb Haaland in her official capacity as Secretary of the Interior; Janet Yellen, in her official capacity as Secretary of the Treasury; Christine Wormuth, in her official capacity as Secretary of the Army; Carlos Del Toro, in his official capacity as Secretary of the Navy; Frank Kendall, in his official capacity as Secretary of the Air Force; U.S. Department of Defense; U.S. Department of Treasury; U.S. Department of Homeland Security; U.S. Department of the Interior (collectively, "Defendants").

## RECITALS

WHEREAS Plaintiffs filed four lawsuits in the United States District Court for the Northern District of California captioned *State of California et. al., v. Biden et al.*, Case No. 4:19-CV-872-HSG ("*California I*"), *State of California et. al., v. Biden et al.*, Case No. 4:20-CV-1563-HSG ("*California II*"), *Sierra Club et. al. v. Biden et. al.*, Case No. 4:19-cv-00892-HSG ("*Sierra Club I*), and *Sierra Club et. al. v. Biden et. al.*, Case No. 4:20-cv-01494-HSG ("*Sierra Club II*"), challenging construction of border barriers on the southern border of the United States

using funds provided by the Department of Defense ("DoD") and Department of Treasury in fiscal years 2019 and 2020.

WHEREAS Plaintiffs alleged that Defendants took action that was *ultra vires* and in violation of 10 U.S.C. § 284, 10 U.S.C. § 2808, the National Environmental Policy Act, the Administrative Procedure Act, 31 U.S.C. § 1341(a)(1), 31 U.S.C § 1301(a), 31 U.S.C. § 1532, the fiscal year 2019 and 2020 Department of Defense Appropriations Acts and Consolidated Appropriations Acts, the Appropriations Clause of the U.S. Constitution, the Presentment Clause of U.S. Constitution, and the separation of powers.  *See* Am. Compl., *California I*, ECF No. 47; Compl., *California II*, ECF No. 1; Am. Compl., *Sierra Club I*, ECF No. 26; Compl., *Sierra Club II*, ECF No. 1.

WHEREAS, on January 20, 2021, President Biden issued a Proclamation declaring that "[i]t shall be the policy of [his] Administration that no more American taxpayer dollars be diverted to construct a border wall."  *See* Proclamation No. 10142, 86 Fed. Reg. 7225, 7225 (Jan. 27, 2021).

WHEREAS, in furtherance of that policy, the President:

(A) Directed the Secretary of Defense and the Secretary of Homeland Security to "pause work on each construction project on the southern border wall, to the extent permitted by law," *id.* § 1(a)(i), and to "pause immediately the obligation of funds related to construction of the southern border wall, to the extent permitted by law."  *Id.* § 1(a)(ii).

(B) Ordered agencies to "compile detailed information on all southern border wall construction projects, the completion status of each wall construction project, and the funds used for wall construction since February 15, 2019." *Id.* § 1(a)(iii).

(C) Directed the Secretary of Defense and the Secretary of Homeland Security, in consultation with the Attorney General and other officials, to develop a plan within 60 days "for

the redirection of funds concerning the southern border wall, as appropriate and consistent with applicable law." *Id.* § 2.

WHEREAS, on April 30, 2021, Defendants notified the Court and Plaintiffs that DoD had decided to cancel all border wall projects undertaken pursuant to 10 U.S.C. § 284 and 10 U.S.C. § 2808.  *See* Notice of Decision by the Department of Defense to Cancel Border Wall Projects Undertaken Pursuant to 10 U.S.C. § 284 and 10 U.S.C. § 2808.  *See California I*, ECF No. 292; *Sierra Club I*, ECF No. 307.

WHEREAS, on June 11, 2021, DoD and the Department of Homeland Security ("DHS") completed their plans for the redirection of funds concerning the southern border wall, as directed by Section 2 of Proclamation No. 10142 ("Border Wall Plan").  *See California I*, ECF No. 295; *Sierra Club I*, ECF No. 310.  Defendants' Border Wall Plan committed to:

(A)  Cancel all border wall projects undertaken pursuant to 10 U.S.C. § 284 and 10 U.S.C. § 2808.

(B)  Redirect approximately $2.2 billion of DoD military construction funds that were diverted away from military construction projects back to fund those projects.  *Id*. at 2.

(C)  Not undertake any new barrier construction work on the former § 284 and § 2808 projects.  *Id.* at 4.

(D)  End border wall construction funded by the Treasury Forfeiture Fund and return any excess funds to the Fund.  *Id.* at 4.

(E)  Fund remediation work at the § 284 and § 2808 Project Areas that are turned over to

DHS with DHS's Fiscal Year 2021 border wall appropriation, subject to the

availability of those funds.  *Id*. at 3-4.[1]

WHEREAS, on July 11, 2022, DHS amended its Border Wall Plan to set forth additional

policies and proposed uses for its appropriations from fiscal years 2018–2021.  The Amended

Plan explained, *inter alia*, that DHS intends to prioritize the use of the fiscal year 2020 and 2021

barrier system appropriations to fund close-out, remediation, and mitigation work in the § 284

and § 2808 Project Areas, and the installation of system attributes in areas where physical barrier

has already been constructed.

WHEREAS, Defendants have organized their remediation activities in the § 284 and

§ 2808 Project Areas into three sequential phases:

- Phase 1:  As part of closing out and terminating the border wall construction

  contracts, the U.S. Army Corps of Engineers authorized its contractors to perform

  a limited set of safety measures in the § 284 and § 2808 Project Areas.  As of

  February 2022, the U.S. Army Corps of Engineers estimates the total cost of the

  Phase 1 authorized demobilization and safety activities in the § 284 and § 2808

  Project Areas will be approximately $50 million, with final costs negotiated as

  part of the final settlement of the contracts.

---

[1] As used in this agreement, the § 284 and § 2808 Project Areas mean the geographic locations where border barrier infrastructure construction was undertaken by Defendants using (a) money transferred pursuant to section 8005 of the Department of Defense Appropriations Acts of 2019 and 2020, and undertaken pursuant to 10 U.S.C. § 284; and (b) fiscal year 2015–2019 military construction funds made available pursuant to 10 U.S.C. § 2808, as set forth and described in the Administrative Records Defendants filed in *California I*, *California II, Sierra Club I*, and *Sierra Club II*.

- <u>Phase 2:</u>  As part of its plan to use its fiscal year 2020 and fiscal year 2021 border infrastructure funds responsibly and consistent with the purpose for which they were appropriated, DHS will fund or execute more comprehensive remediation projects in the § 284 and § 2808 Project Areas, subject to the availability of funds. Phase 2 remediation work will focus on priority remediation projects that are needed to address life and safety, including the protection of the public, Border Patrol agents, and nearby communities from potential harms, and avert further environmental damage or degradation.  As of February 2022, DHS estimates the total cost of the Phase 2 remediation work in the § 284 and § 2808 project areas will be approximately $1.1 billion.

- <u>Phase 3:</u>  As a part of its plan to use fiscal year 2020 and fiscal year 2021 border infrastructure funds responsibly and consistent with the purpose for which they were appropriated, DHS will fund or execute environmental mitigation projects to offset or mitigate the impacts of border barrier construction in the § 284 and § 2808 Project Areas, subject to the availability of funds.  Phase 3 projects are intended to offset impacts from border barrier construction in the former § 284 and § 2808 project areas.  As set forth below, DHS agrees to allocate $45 million for Phase 3 environmental mitigation projects to offset or mitigate the impacts of border barrier construction in the § 284 and § 2808 Project Areas, subject to the availability of funds.

WHEREAS, DHS is actively engaged in regular consultation with representatives from federally-recognized Indian tribes, including the Tohono O'odham Nation, and intertribal organizations concerning implementation of remediation measures to address impacts to cultural

resources and potential human remains from border barrier construction in the § 284 and § 2808 Project Areas.

WHEREAS by and through this Agreement, Plaintiff and Defendants ("the Parties") agree to resolve all of the claims in *California I*, *California II, Sierra Club I*, and *Sierra Club II* ("the Lawsuits"), and any and all other claims, complaints, or issues that have been or could have been asserted by Plaintiffs against Defendants as part of the Lawsuits, without the need for further litigation and without any admission of liability;

NOW, THEREFORE, in consideration of the promises and mutual covenants and other good and valuable consideration set forth herein, the Parties hereby stipulate and agree as follows:

## AGREEMENT

### Stop Border Barrier Construction Using Challenged Funds

1.      Defendants agree to stop construction of border barriers to the extent such construction activity is funded by (1) money transferred pursuant to section 8005 of the Department of Defense Appropriations Acts of 2019 and 2020, and undertaken pursuant to 10 U.S.C. § 284; or (2) military construction funds appropriated to the Department of Defense in fiscal years 2015–2019, and undertaken pursuant to 10 U.S.C. § 2808.  Except as otherwise provided forth herein, this Agreement shall not apply to border barrier construction using other sources of funds, including funds appropriated by Congress to DHS or its component U.S. Customs and Border Protection ("CBP").

### Restore Funding to Military Construction Projects

2.      DoD has restored military construction funds to the military construction projects in the amounts listed on the chart below:

| State | Location | Project Title | Amount |
|---|---|---|---|
| California | Channel Island ANGS | Construct C-130J Flight Simulator Facility | $13,684,000 |
| Colorado | Peterson AFB | Space Control Facility | $8,000,000 |
| Hawaii | Joint Base Pearl Harbor-Hickam | Consolidated Training Facility | $5,500,000 |
| Hawaii | Kaneohe Bay | Security Improvements Mokapu Gate | $26,492,000 |
| Maryland | Fort Meade | Cantonment Area Roads | $16,500,000 |
| Maryland | Joint Base Andrews | PAR Relocate Haz Cargo Pad and EOD Range | $37,000,000 |
| Maryland | Joint Base Andrews | Child Development Center | $13,000,000 |
| New Mexico | Holloman AFB | MQ-9 FTU Ops Facility | $55,000,000 |
| New Mexico | White Sands | Information Systems Facility | $40,000,000 |
| New York | U.S. Military Academy | Engineering Center | $95,000,000 |
| New York | U.S. Military Academy | Parking Structure | $65,000,000 |
| Oregon | Klamath Falls IAP | Construct Indoor Range | $8,000,000 |
| Virginia | Joint Base Langley-Eustis | Construct Cyber Ops Facility | $10,000,000 |
| Virginia | Portsmouth | Ships Maintenance Facility | $26,120,000 |

| Wisconsin | Truax Field | Construct small arms range | $8,000,000 |
|-----------|-------------|----------------------------|------------|

**Removal of Construction Materials**

3.     As part of DHS's Phase 2 remediation project work, DHS will remove from the § 284 and § 2808 Project Areas any remaining construction equipment, materials, or excess construction debris (*e.g.*, sand, gravel, dirt) not removed by the U.S. Army Corps of Engineers or its contractors during the Phase 1 demobilization work that is not needed for DHS's Phase 2 remediation project work.  DHS will not be required to remove materials or excess construction debris if (1) such material or construction debris will be utilized for future maintenance and upkeep of the § 284 and § 2808 Project Areas or (2) the responsible federal land management recommends that such material or debris remain in place to avoid significant impacts resulting from removal.

**Installation of Small Wildlife Passages**

4.     DHS agrees to install passages for small wildlife in the border barrier system located at the approximate coordinates listed in the chart below.  Passages will be a minimum of 8.5" x 11" in size.

| Location Number | Latitude | Longitude |
|-----------------|----------|-----------|
| 1 | 32.58644100 | -116.50615700 |
| 2 | 32.58605300 | -116.51095400 |
| 3 | 32.58554600 | -116.51616900 |
| 4 | 32.58728900 | -116.49477600 |
| 5 | 32.58783300 | -116.48811000 |
| 6 | 32.58851100 | -116.47986000 |
| 7 | 32.58890000 | -116.47514300 |
| 8 | 32.58936700 | -116.46927000 |
| 9 | 32.59037700 | -116.45717400 |
| 10 | 32.59166400 | -116.44016300 |
| 11 | 32.59251300 | -116.43002800 |
| 12 | 32.59334600 | -116.42054300 |
| 13 | 32.59461300 | -116.40507300 |
| 14 | 32.59571400 | -116.39051200 |

| 15 | 32.59673700 | -116.37777500 |
| 16 | 32.59894800 | -116.35097200 |
| 17 | 32.60206500 | -116.31306700 |
| 18 | 32.60329700 | -116.29677500 |
| 19 | 32.60497600 | -116.27624700 |
| 20 | 32.59367100 | -116.41712600 |

5.      DHS agrees to install passages for small wildlife at additional locations in the §
284 and § 2808 Project Areas, the location of which will be determined by consultation between
the Parties as described in the remainder of this paragraph.  DHS agrees to consult with the State
of California, the State of New Mexico, Sierra Club, Southern Border Communities Coalition
and appropriate officials within the U.S. Department of the Interior about recommended
locations where installation of small wildlife passages in the § 284 and § 2808 Project Areas
would be most beneficial to wildlife species, such as locations near water sources or drainage
areas where animals are likely to congregate.

**Installation of Large Wildlife Passages**

6.      DHS agrees to install wildlife passages in the existing border barrier system in
Arizona at the approximate locations listed in the chart below.  The size of the passage at each
location will be approximately 7 feet by 5 feet, with the except of location 1 below, which will
have a ceiling height of 18 feet.

| Location Number | Latitude | Longitude | Location | State & County | Species of Interest |
|---|---|---|---|---|---|
| 1 | ▮ | ▮ | Cabeza Prieta NWR - Pinta Sands | Pima, AZ | Sonoran pronghorn |
| 2 | ▮ | ▮ | Perilla Mountains Corridor | Cochise, AZ | Jaguar, black bear |
| 3 | ▮ | ▮ | Mule Mountains Corridor | Hidalgo, NM | Bison, Chihuahuan pronghorn, Mexican wolf |

| 4 | ███████ | ███████ | Antelope Wells East | Hidalgo, NM | Bison, Chihuahuan pronghorn, Mexican wolf |
|---|---|---|---|---|---|

7.    DHS's agreement to install wildlife passages at the four locations listed above is subject to the following conditions:

   a.   DHS reserves the right to install gates in the passages that would enable the passages to be closed if exigent circumstances or border security operations warrant temporary closure of the passages;

   b.   In the event the passages are closed, DHS agrees to notify Sierra Club and the Southern Border Communities Coalition within 48 hours of the closure, including the reason for the closure.  During the period of any closure, DHS agrees to provide Sierra Club, Southern Border Communities Coalition, and the State of California and the State of New Mexico, with periodic status reports and, when such information is available, the anticipated date for re-opening the passages.  DHS agrees to provide notice of any closure for a period of two years from the date the passages are installed.  The parties agree to discuss renewal of the notice requirement as part of the re-evaluation process described in Paragraph 7(d) & (e).

   c.   DHS reserves the right to place alternative forms of wildlife-friendly infrastructure near the passages and install barrier system attributes near the passages to detect unauthorized entry into the United States.  Razor wire fencing will not be utilized as an alternative form of infrastructure near the passages.  Barbed wire fencing may be used in locations where appropriate to prevent cattle from crossing the southern border of the United States.  DHS

commits to using wildlife-friendly alternative infrastructure that permits any endangered or threatened species listed under the Endangered Species Act ("ESA-listed species") that is known to be present near the areas listed in Paragraph 6 to pass over or under the infrastructure.

d.  DHS agrees to keep the passages open for an initial period of two years subject to the conditions set forth in Paragraph 7.  After two years have elapsed, DHS will re-evaluate the status of the passages and their operating conditions in consultation with Plaintiffs.

e.  After two years have elapsed, DHS agrees not to expend its fiscal year 2020, 2021, 2022, or 2023 barrier system appropriations[2] to install bollard fencing or equivalent fencing in the passages listed in Paragraph 6 unless and until DHS completes an environmental planning process, including compliance with the National Environmental Policy Act (NEPA), the Endangered Species Act (ESA), the National Historic Preservation Act (NHPA), and any other statute or regulation that is applicable to the proposed construction, makes any requisite findings or conclusions, and complies with the obligations that would be required by law for the proposed construction activity to proceed. DHS's NEPA analysis will examine a reasonable range of alternatives to the proposed action and analyze the potential direct and cumulative impacts of the proposed action and alternatives, including potential impacts to species not

---

[2] *See* Department of Homeland Security Appropriations Act, 2020, Pub L. No. 116-93, Div. D, § 209, 133 Stat. 2317, 2512 (2019); Department of Homeland Security Appropriations Act, 2021, Pub L. No. 116-260, Div. F, § 210, 134 Stat. 1182, 1456-57 (2020); Department of Homeland Security Appropriations Act, 2022, Pub. L. No. 117-103, Div. D, 136 Stat. 49, 312-348 (2022); Department of Homeland Security Appropriations Act, 2023, Pub. L. No. 117-328, Div. F, 136 Stat. 4459, 4725-4759 (2022).

listed as threated or endangered under the ESA.  If, for the purpose of

achieving NEPA compliance, DHS prepares an Environmental Assessment

(EA) and the EA reveals significant environmental impacts from the proposed

action, DHS will prepare an Environmental Impact Statement (EIS).

Following completion of the EIS, should DHS decide to proceed with the

proposed action, DHS agrees to take all reasonable steps to mitigate the

significant impacts identified in the EIS.

**Opens Stormwater Gates Full Time**

8.      DHS agrees to open on a full-time basis the stormwater gates built into the

existing border barrier system at the approximate locations listed in the chart below.

| Location Number | Latitude | Longitude | Location | State & County | Species of Interest |
|---|---|---|---|---|---|
| 1 | ███ | ███ | Organ Pipe National Monument - Rio Sonoyta | Pima, AZ | Sonoran pronghorn, mule deer |
| 2 | ███ | ███ | Organ Pipe National Monument - Aguajita Spring | Pima, AZ | Sonoran pronghorn, mule deer |
| 3 | ███ | ███ | San Pedro Riparian National Conservation Area | Cochise, AZ | Jaguar, black bear |
| 4 | ███ | ███ | Chihuahuan Desert Wildlife Corridor- Luna | Luna, NM | Bison, Chihuahuan pronghorn, Mexican gray wolf |

| 5 | ███ | ███ | San Bernardino National Wildlife Refuge Black Draw | Cochise, AZ | Mexican gray wolf, jaguar, black bear |
| 6 | ███ | ███ | San Bernardino National Wildlife Refuge Hay Hollow | Cochise, AZ | Mexican gray wolf, jaguar, black bear |
| 7 | ███ | ███ | Chihuahuan Desert Wildlife Corridor - Doña Ana West | Doña Ana, NM | Mexican gray wolf, Chihuahuan pronghorn |
| 8 | ███ | ███ | Chihuahuan Desert Wildlife Corridor - Doña Ana East | Doña Ana, NM | Mexican gray wolf, Chihuahuan pronghorn |

9. DHS's agreement to open the stormwater gates listed above on a full-time basis is subject to the following conditions:

   a. DHS reserves the right to close the gates if exigent circumstances or border security operations warrant temporary closure;

   b. In the event the gates are closed, DHS agrees to notify the State of California, the State of New Mexico, Sierra Club, and Southern Border Communities within 48 hours of the closure, including the reason for the closure. During the period of any closure, DHS agrees to provide the State of California, the State of New Mexico, Sierra Club, and Southern Border Communities Coalition with periodic status reports and, when such information is available, the anticipated date for re-opening the gates. DHS agrees to provide notice of any closure for a period of two years from the date the passages are opened on

13

a full-time basis.  The parties agree to discuss renewal of the notice

requirement as part of the re-evaluation process described in Paragraph 9(d) &

(e).

c.   DHS reserves the right to place alternative forms of wildlife-friendly

infrastructure near the gates and install barrier system attributes near the gates

to detect unauthorized entry into the United States.  Razor wire fencing will

not be utilized as an alternative form of infrastructure near the passages.

Barbed wire fencing may be used in locations where appropriate to prevent

cattle from crossing the southern border of the United States.  DHS commits

to using wildlife-friendly alternative infrastructure that permits any ESA-listed

species that is known to be present near the areas listed in Paragraph 8 to pass

over or under the infrastructure.

d.   DHS agrees to keep the gates open on a full-time basis for an initial period of

two years subject to the conditions set forth in Paragraph 9.  After two years

have elapsed, DHS will re-evaluate the status of the gates and their operating

conditions in consultation with the State of California, the State of New

Mexico, Sierra Club, and Southern Border Communities Coalition.

e.   After two years have elapsed, DHS agrees not to expend its fiscal year 2020,

2021, 2022, or 2023 barrier system appropriations[3] to close the gates listed in

Paragraph 8 on a permanent basis unless and until DHS completes an

environmental planning process, including compliance with the National

Environmental Policy Act (NEPA), the Endangered Species Act (ESA), the

National Historic Preservation Act (NHPA), and any other statute or

---

[3] *See supra* note 2.

14

regulation that is applicable to the proposed construction, makes any requisite findings or conclusions, and complies with the obligations that would be required by law for the proposed construction activity to proceed. DHS's NEPA analysis will examine a reasonable range of alternatives to the proposed action and analyze the potential direct and cumulative impacts of the proposed action and alternatives, including potential impacts to species not listed as threated or endangered under the ESA. If, for the purpose of achieving NEPA compliance, DHS prepares an Environmental Assessment (EA) and the EA reveals significant environmental impacts from the proposed action, DHS will prepare an Environmental Impact Statement (EIS). Following completion of the EIS, should DHS decide to proceed with the proposed action, DHS agrees to take all reasonable steps to mitigate the significant impacts identified in the EIS.

**No Additional Barrier Construction in Specified Gaps in Arizona and New Mexico**

10.    The approximate locations listed in the chart below identify unfilled gaps between existing segments of border barrier system fencing.

| Location Number | Latitude | Longitude | State & County |
|---|---|---|---|
| 1 | ███ | ███ | Pima, AZ |
| 2 | ███ | ███ | Santa Cruz, AZ |
| 3 | ███ | ███ | Santa Cruz, AZ |
| 4 | ███ | ███ | Santa Cruz, AZ |
| 5 | ███ | ███ | Santa Cruz, AZ |
| 6 | ███ | ███ | Santa Cruz, AZ |

| 7 | ▮▮▮▮ | ▮▮▮▮ | Luna, NM |
|---|---|---|---|
| 8 | ▮▮▮▮ | ▮▮▮▮ | Luna, NM |
| 9 | ▮▮▮▮ | ▮▮▮▮ | Pima, AZ |
| 10 | ▮▮▮▮ | ▮▮▮▮ | Santa Cruz, AZ |
| 11 | ▮▮▮▮ | ▮▮▮▮ | Cochise, AZ |
| 12 | ▮▮▮▮ | ▮▮▮▮ | Santa Cruz, AZ |

11.     The approximate locations listed in the chart below identify areas in New Mexico on the west side of the Whitewater Mountains and through the Animas Valley where vehicle barrier infrastructure is currently located.

| Location Number | GPS Coordinates of Permeable Vehicle Barrier | Length (miles) |
|---|---|---|
| 1 | ▮▮▮▮ | 10.48 |
| 2 | ▮▮▮▮ | 5.82 |
| 3 | ▮▮▮▮ | 0.15 |
| 4 | ▮▮▮▮ | 0.08 |

12.     Defendants agree not to fund construction of bollard-style barrier fencing or similar fencing that precludes the transit of large mammals in the approximate locations listed in

the charts in Paragraphs 10 and 11 using (a) money transferred pursuant to § 8005 of the Department of Defense Appropriations Act of 2019 and 2020, and undertaken pursuant to § 284; and (b) fiscal year 2015–2019 military construction funds made available pursuant to § 2808. DHS also agrees not to fund construction of bollard-style barrier fencing or similar fencing that precludes the transit of large mammals at the approximate locations listed in the charts in Paragraphs 10 and 11 using DHS's fiscal years 2020, 2021, 2022, or 2023 barrier system appropriations as provided by the Department of Homeland Security Appropriations Act, 2020, Pub L. No. 116-93, Div. D, § 209, 133 Stat. 2317, 2512 (2019) and the Department of Homeland Security Appropriations Act, 2021, Pub. L. No. 116-260, Div. F, § 210, 134 Stat. 1182, 1456-57 (2020); the Department of Homeland Security Appropriations Act, 2022, Pub. L. No. 117-103, Div. D, 136 Stat. 49, 312-348 (2022); and the Department of Homeland Security Appropriations Act, 2023, Pub. L. No. 117-328, Div. F, 136 Stat. 4459, 4725-4759 (2022).

13.     Defendants' agreement not to construct bollard-style barrier fencing or similar fencing at the approximate locations listed in the charts in Paragraphs 10 and 11 using the sources of funds listed in Paragraph 12 is subject to the following conditions:

      a.  DHS reserves the right to install gates at the locations listed in the charts in Paragraph 10 that would allow for closure if exigent circumstances or border security operations warrant temporary closure of the passages;

      b.  In the event the gates at the locations listed in the chart in Paragraph 10 are closed, DHS agrees to notify the State of California, the State of New Mexico, Sierra Club, and Southern Border Communities Coalition within 48 hours of the closure, including the reason for the closure.  During the period of any closure, DHS agrees to provide the State of California, the State of New Mexico, Sierra Club, and Southern Border Communities Coalition with

17

periodic status reports and, when such information is available, the anticipated date for re-opening of the gates.  DHS agrees to provide notice of any closure for a period of two years from the effective date of this agreement.  The parties agree to discuss renewal of the notice requirement as part of the re-evaluation process described in Paragraph 13(e) & (f).

c.   DHS reserves the right to place alternative forms of wildlife-friendly infrastructure at the locations listed in the charts in Paragraphs 10 and 11, and install barrier system attributes at those locations to detect unauthorized entry into the United States.

d.   Razor wire fencing will not be utilized as an alternative form of infrastructure at the locations listed in the charts in Paragraphs 10 and 11.  Barbed wire fencing may be used in locations where appropriate to prevent cattle from crossing the southern border of the United States.  DHS commits to using wildlife-friendly alternative infrastructure that permits any ESA-listed species that is known to be present near the areas listed in Paragraphs 10 or 11 to pass over or under the infrastructure.

e.   DHS agrees not to construct bollard-style barrier fencing or similar fencing that precludes the transit of large mammals at the approximate locations listed in the charts in Paragraphs 10 and 11 using the sources of funds listed in Paragraph 12 for two years subject to the conditions set forth in Paragraph 13.  After two years have elapsed, DHS will re-evaluate the status of the locations in Paragraphs 10 and 11 and their operating conditions in consultation with the State of California, the State of New Mexico, Sierra Club, and Southern Border Communities Coalition.

18

f.   After two years have elapsed, DHS agrees not to expend its fiscal year 2020, 2021, 2022, or 2023 barrier system appropriations[4] to construct bollard-style barrier fencing or similar fencing that precludes the transit of large mammals at the approximate locations listed in the charts in Paragraphs 10 and 11 unless and until DHS completes an environmental planning process, including compliance with the National Environmental Policy Act (NEPA), the Endangered Species Act (ESA), the National Historic Preservation Act (NHPA), and any other statute or regulation that is applicable to the proposed construction, makes any requisite findings or conclusions, and complies with the obligations that would be required by law for the proposed construction activity to proceed.  DHS's NEPA analysis will examine a reasonable range of alternatives to the proposed action and analyze the potential direct and cumulative impacts of the proposed action and alternatives, including potential impacts to species not listed as threated or endangered under the ESA.  If, for the purpose of achieving NEPA compliance, DHS prepares an Environmental Assessment (EA) and the EA reveals significant environmental impacts from the proposed action, DHS will prepare an Environmental Impact Statement (EIS).  Following completion of the EIS, should DHS decide to proceed with the proposed action, DHS agrees to take all reasonable steps to mitigate the significant impacts identified in the EIS.

**Mitigating Impacts of Border Barrier Lighting**

14.   As of the date of this agreement, DHS represents that the Yuma 1 border infrastructure project is the only § 284 and § 2808 Project Area that has fully functional barrier

---

[4] *See supra* note 2.

lighting.  DHS represents that the Yuma 1 project involved construction of approximately 5 miles of replacement pedestrian fencing near the Andrade Port of Entry in Yuma County, Arizona, pursuant to § 284, using transferred fiscal year 2019 DoD funds.  DHS represents that the lights in the Yuma 1 project area are currently turned on during the night. To mitigate the environmental impacts from the lighting, DHS represents that the light fixtures use light emitting diodes (LEDs) and agrees that the lights will be operated so that they focus on the patrol road and avoid upward light spillage to the maximum extent practicable.

15.    DHS will complete an environmental planning process, including actions consistent with applicable provisions of the National Environmental Policy Act, the Endangered Species Act, and the National Historic Preservation Act, for any § 284 and § 2808 Project Areas where new lighting is proposed to be installed.  DHS agrees not to install or utilize any additional border barrier lighting in any § 284 and § 2808 Project Area (beyond lighting already installed and utilized at Yuma 1) unless and until DHS completes the environmental planning process, makes any requisite findings or conclusions, and complies with the obligations that would be required by law for the proposed installation of lighting to proceed.  The environmental planning process(es) will identify the areas where barrier system lighting is proposed to be installed in the § 284 and § 2808 Project Areas.  In addition to notices provided to the general public, DHS agrees to separately provide the Sierra Club, Southern Border Communities Coalition, the State of California and the State of New Mexico with written notice of any proposed barrier system lighting in the § 284 and § 2808 Project Areas.  DHS also agrees that the environmental planning process(es) will include meaningful opportunities for Plaintiffs to provide comments and input in advance of installing any additional lighting in any § 284 and § 2808 Project Area.  For the areas in the Yuma 1 project area where lighting is installed as of date of this agreement, DHS agrees to confer and consult with the United States Fish and Wildlife Service ("USFWS") about the

impacts of the Yuma 1 lighting on ESA-listed species.  If USFWS determines that the Yuma 1 lights are adversely affecting ESA-listed species, DHS further agrees to modify, remove, or switch off the existing lighting in the Yuma 1 project area to mitigate such impacts, as recommended by USFWS.

16.     In the event border barrier lighting is installed and utilized in the § 284 and § 2808 Project Areas after completion of the environmental planning process described in Paragraph 15, DHS agrees to fund a study assessing the impact of border barrier lighting within the § 284 and § 2808 Project Areas where such lighting is installed.  The study will include evaluation of red spectrum lighting or lower temperature lighting to reduce potential impacts to wildlife.  DHS agrees to consult with Plaintiffs and appropriate officials within the U.S. Department of the Interior in planning the study.  The cost of the study shall not exceed $300,000.  Funding for the study shall come exclusively from DHS's fiscal year 2020 or 2021 barrier system appropriations as provided by the Department of Homeland Security Appropriations Act, 2020, Pub L. No. 116-93, Div. D, § 209, 133 Stat. 2317, 2512 (2019) and the Department of Homeland Security Appropriations Act, 2021, Pub L. No. 116-260, Div. F, § 210, 134 Stat. 1182, 1456-57 (2020), subject to the availability of those funds.  Defendants represent that such funding is currently available and that they will take all reasonable steps to ensure that such funds remain available to comply with this Agreement.

**Mitigating Impacts of Road Construction**

17.     Except as provided in Paragraphs 18 and 19, Defendants agree not to fund construction of new roads in the § 284 and § 2808 Project Areas using (a) money transferred pursuant to § 8005 of the Department of Defense Appropriations Act of 2019 and 2020, and undertaken pursuant to § 284; or (b) fiscal year 2015–2019 military construction funds made available pursuant to § 2808.  DHS also agrees not to fund construction of new roads in the § 284

and § 2808 Project Areas using DHS's fiscal years 2020, 2021, 2022, or 2023 barrier system appropriations as provided by the Department of Homeland Security Appropriations Act, 2020, Pub L. No. 116-93, Div. D, § 209, 133 Stat. 2317, 2512 (2019) and the Department of Homeland Security Appropriations Act, 2021, Pub. L. No. 116-260, Div. F, § 210, 134 Stat. 1182, 1456-57 (2020); the Department of Homeland Security Appropriations Act, 2022, Pub. L. No. 117-103, Div. D, 136 Stat. 49, 312-348 (2022); and the Department of Homeland Security Appropriations Act, 2023, Pub. L. No. 117-328, Div. F, 136 Stat. 4459, 4725-4759 (2022).

18.     Nothing in this agreement shall prohibit Defendants from constructing new roads in the § 284 and § 2808 Project Areas using the funds listed in Paragraph 17 if road construction is recommended by the responsible federal land management agency where the road construction would occur.  Prior to beginning any road construction using the funds listed in Paragraph 17 in any § 2808 Project Area, DHS will complete an environmental planning process, including actions consistent with applicable provisions of the National Environmental Policy Act, the Endangered Species Act, and the National Historic Preservation Act.  The environmental planning process will include information as to where the road construction is being proposed and provide opportunities for Plaintiffs to submit comments and provide input.  If Defendants construct new roads in any § 284 Project Area with the funds listed in Paragraph 17, DHS also agrees to consult with Plaintiffs in advance of any such road construction, including providing Plaintiffs with information that identifies areas where road construction is planned.

19.     Nothing in this agreement shall prohibit Defendants from taking any actions Defendants deem appropriate to repair or remediate existing roads in the § 284 and § 2808 Project Areas, including narrowing existing roads, flattening berms, grading existing roads, and addressing water flow issues with existing roads.

**Remediation of Mountain Areas in Luna and Hidalgo Counties, New Mexico**

20.     In the El Paso B project area in Luna County, New Mexico, there is an approximate half-mile stretch of the Carrizalillo Hills where construction activity began using blasting techniques, but no border barrier was built.  The GPS coordinates for this location are approximately 31.784, -107.93.

21.     In the Whitewater Mountains of Hidalgo County, New Mexico, there is an approximate three-mile segment of mountains where construction activity began using blasting techniques, but no border barrier was built.  The GPS coordinates for this location are approximately 31.33364, -108.6069 to 31.33343, -108.58153.

22.     As part of DHS's Phase 2 remediation work, DHS agrees to undertake the following activities in the areas described in Paragraphs 20 and 21:

   a.   DHS agrees to install appropriate safety measures to prevent harm to humans and wildlife associated with the steep sheer of the rock formations after blasting, including rock fall netting and fencing as appropriate.

   b.   DHS agrees to remove invasive species present on and near the cut away mountainsides and other construction sites in the areas described in Paragraphs 20 and 21.  DHS agrees to take appropriate actions to encourage native vegetation growth in the areas described in Paragraphs 20 and 21, including consultation with New Mexico and local federal land managers about the most appropriate measures to address invasive species and encourage native vegetation growth in the two areas.

**Remediation Within the Jacumba Wilderness and Other Measures to Mitigate Impacts to the Peninsular Bighorn Sheep**

23.     During DHS's Phase 2 remediation work in the Jacumba Wilderness area of the El Centro Border Patrol Sector, DHS agrees to have a biologist monitor in the area during

23

periods of active construction or ground-disturbing activity.  The biologist monitor shall have the authority to stop work in the event any Peninsular bighorn sheep come within close proximity to work activities.

24.     As part of DHS's Phase 2 remediation project work, DHS agrees to address water drainage problems and incomplete culvert installation adjacent to dirt construction roads in the El Centro A project area in Skull and Davies Valley, California.

25.     As part of DHS's Phase 2 remediation project work, DHS agrees to repair and remediate the existing road and surrounding area located in the El Centro A project area in the Jacumba Wilderness at approximately GPS coordinates of 32.629176N, 115.969088W to 32.629263, 115.967983W, including addressing any drainage issues in this area.  DHS agrees to consult with appropriate officials from the State of California in conducing the repair and remediation work in this area.

26.     As part of DHS's Phase 2 remediation project work, DHS agrees to remove the current rock fall mesh fencing in the El Centro A project area in the Jacumba Wilderness to reduce potential impacts to Peninsular bighorn sheep.

27.     As part of DHS's Phase 2 remediation project work, DHS agrees to remediate the berms adjacent to the access roads in Skull Valley to improve surface water flow into the surrounding landscape.  This work will include flattening the berms to align with the natural grading of the area such that surface water can naturally flow without obstruction from the berms.  Any safety or maintenance work on the roads will not block drainage from the nearby slopes or re-establish berms adjacent to the roadway.  DHS agrees to consult with appropriate officials from the State of California in conducing project work.

28.     As part of DHS's Phase 2 remediation project work, DHS agrees to provide up to $5,000 for the installation of signs near the wilderness boundary near entrance points into Skull

Valley.  The cost of the sign installation project shall not exceed $5,000.  Funding for the sign installation shall come exclusively from DHS's fiscal year 2020 or 2021 barrier system appropriations as provided by the Department of Homeland Security Appropriations Act, 2020, Pub L. No. 116-93, Div. D, § 209, 133 Stat. 2317, 2512 (2019) and the Department of Homeland Security Appropriations Act, 2021, Pub L. No. 116-260, Div. F, § 210, 134 Stat. 1182, 1456-57 (2020), subject to the availability of those funds.  Decisions about the specific placement and location of the signs will determined by appropriate officials for the U.S. Department of the Interior responsible for land management of the Jacumba Wilderness Area in consultation with officials from appropriate California wildlife agencies.

29.     Any construction equipment, materials, and debris from the § 284 and § 2808 border barrier construction projects located in the Davies Valley (California) near areas of cultural importance to the Kumeyaay Nation will be removed in accordance with a separate removal and treatment plan negotiated between DHS and the Kumeyaay Nation.  To reduce potential harm to Peninsular bighorn sheep, and absent objection from the Kumeyaay Nation, DHS will, as part of the implementation of the removal and treatment plan negotiated between DHS and the Kumeyaay Nation, remove the rope-style fencing near culturally-sensitive areas in the Davies Valley.  The rope-style fencing may be replaced with an alternative form of protective infrastructure.

30.     The approximate locations listed in the chart below identify areas in California within or near the Jacumba Wilderness Area where there are currently no border barriers.

| Location Number | GPS Coordinates | Approximate Length |
|---|---|---|
| 1 | ███████████████████ | .89 miles |
| 2 | ███████████████████ | 7.10 miles |

31. Defendants agree not to fund construction of bollard-style barrier fencing in the approximate locations listed in the chart in Paragraph 30 using (a) money transferred pursuant to § 8005 of the Department of Defense Appropriations Act of 2019 and 2020, and undertaken pursuant to § 284; and (b) fiscal year 2015–2019 military construction funds made available pursuant to § 2808.  DHS also agrees not to fund the construction of bollard-style barrier fencing or vehicle barriers within the gaps identified in the chart in Paragraph 30 using DHS's fiscal years 2020, 2021, 2022, or 2023 barrier system appropriations as provided by the Department of Homeland Security Appropriations Act, 2020, Pub L. No. 116-93, Div. D, § 209, 133 Stat. 2317, 2512 (2019) and the Department of Homeland Security Appropriations Act, 2021, Pub L. No. 116-260, Div. F, § 210, 134 Stat. 1182, 1456-57 (2020); the Department of Homeland Security Appropriations Act, 2022, Pub. L. No. 117-103, Div. D, 136 Stat. 49, 312-348 (2022); and the Department of Homeland Security Appropriations Act, 2023, Pub. L. No. 117-328, Div. F, 136 Stat. 4459, 4725-4759 (2022).

32. Defendants' agreement not to construct bollard-style barrier fencing or similar fencing at the approximate locations listed in the chart in Paragraph 30 using the sources of funds listed in Paragraph 31 is subject to the following conditions:

    a. DHS reserves the right to place alternative forms of wildlife-friendly infrastructure at the locations listed in the chart in Paragraph 30, and install barrier system attributes at the locations in Paragraph 30 to detect unauthorized entry into the United States.

    b. Razor wire fencing will not be utilized as an alternative form of infrastructure at the locations listed in the charts in Paragraph 30.  Barbed wire fencing may be used in locations where appropriate to prevent cattle from crossing the southern border of the United States.  DHS commits to using wildlife-friendly alternative

infrastructure that permits any ESA-listed species known to be present near the areas listed in Paragraph 30, including the Peninsular bighorn sheep, to pass over or under the infrastructure.

c.  DHS agrees not to construct bollard-style barrier fencing or similar fencing that precludes the transit of large mammals, including the Peninsular bighorn sheep, at the approximate locations listed in the chart in Paragraph 30 using the sources of funds listed in Paragraph 31 for two years subject to the conditions set forth in Paragraph 32.  After two years have elapsed, DHS may re-evaluate the status of the locations in Paragraph 30 and their operating conditions in consultation with the State of California, Sierra Club, and Southern Border Communities Coalition.

d.  After two years have elapsed, DHS agrees not to expend its fiscal year 2020, 2021, 2022, or 2023 barrier system appropriations[5] to construct bollard-style barrier fencing or similar fencing that precludes the transit of large mammals, including the Peninsular bighorn sheep, at the approximate locations listed in the chart in Paragraph 30 unless and until DHS completes an environmental planning process, including compliance with the National Environmental Policy Act (NEPA), the Endangered Species Act (ESA), the National Historic Preservation Act (NHPA), and any other statute or regulation that is applicable to the proposed construction, makes any requisite findings or conclusions, and complies with the obligations that would be required by law for the proposed construction activity to proceed.  DHS's NEPA analysis will examine a reasonable range of alternatives to the proposed action and analyze the potential direct and cumulative impacts of the proposed action and alternatives, including potential impacts to species not

---

[5] *See supra* note 2.

listed as threated or endangered under the ESA.  If, for the purpose of achieving

NEPA compliance, DHS prepares an Environmental Assessment (EA) and the EA

reveals significant environmental impacts from the proposed action, DHS will

prepare an Environmental Impact Statement (EIS).  Following completion of the

EIS, should DHS decide to proceed with the proposed action, DHS agrees to take

all reasonable steps to mitigate the significant impacts identified in the EIS.

**Invasive Species Management**

33.     As part of DHS's Phase 2 remediation project work, DHS will take appropriate

actions to remove and manage invasive plant species in the § 284 and § 2808 Project Areas.

DHS will either hire contractors or rely on the Department of the Interior to implement such

actions.  DHS agrees that the Sierra Club, the Southern Border Communities Coalition,

appropriate wildlife agencies from California and New Mexico, and local federal land managers,

shall be afforded meaningful opportunities to provide input concerning the most appropriate

measures to implement to remove and manage invasive plants in the § 284 and § 2808 Project

Areas, including consideration of reseeding areas to encourage native vegetation growth.

**Remove Blasting Caps Near Border Monument #38**

34.     As part of DHS's Phase 2 remediation project work, DHS will remove inert

blasting caps and detonation cords near Border Monument Marker 38 in New Mexico.

**Remediate Encroachment on New Mexico's Land**

35.     Defendants acknowledge that a border wall contractor (SLSCO) placed

equipment and materials on New Mexico's property in excess of its contractual requirements.

The U.S. Army Corps of Engineers notified SLSCO that this action exceeded SLSCO's

authorized work limits (*i.e.*, jobsite boundaries) and directed them to cease those operations and

restore the site at their own expense.  The U.S. Army Corps of Engineers also directed SLSCO to

perform the required clean-up and make-safe activities as part of SLSCO's contractual obligation to demobilize and leave the construction sites in a safe state.

36.     In the event the actions undertaken by SLSCO as part of its contractual obligations to close out its work responsibilities are insufficient to address New Mexico's concerns, DHS will consult with New Mexico as part of its Phase 2 remediation work to evaluate whether additional actions are needed.  If there is agreement between DHS and New Mexico that that SLSCO's actions have not sufficiently remediated the encroachment on New Mexico's property, DHS will address any additional remediation work as part of DHS's Phase 2 remediation projects.  Such remediation shall include, at a minimum, remediation equivalent to that done at § 284 and § 2808 Project Sites as detailed in Paragraph 28.

37.     For any future DHS border barrier system construction project and any remediation conducted pursuant to Paragraph 36, DHS agrees to seek and obtain New Mexico's consent to access New Mexico's land or to store construction materials and equipment on New Mexico's land.

**Decommission Water Wells**

38.     As part of DHS's Phase 2 remediation project work, DHS agrees to seal and decommission any water wells on federal land that that were established for construction of the § 284 and § 2808 projects, but are no longer needed to facilitate DHS's operation and maintenance of border barrier system infrastructure.  DHS agrees to consult with appropriate officials from the State of California, the State of New Mexico, Sierra Club and the Southern Border Communities Coalition regarding the identification of wells for potential closure that are no longer needed to facilitate DHS's operation and maintenance of border barrier system infrastructure.

**Decommission Temporary Construction Roads**

39.     As part of DHS's Phase 2 remediation project work, DHS will decommission temporary access roads used for ingress and egress of construction equipment and materials in the § 284 and § 2808 Project Areas.  Roads necessary for U.S. Border Patrol operational duties or to access border barrier system infrastructure, such as the border patrol roads immediately adjacent to the barrier, will remain open.

**Stabilization and Erosion Control of Slopes**

40.     As part of DHS's Phase 2 remediation project work, DHS agrees to implement appropriate stabilization and erosion control measures on slopes impacted by construction in the § 284 and § 2808 Project Areas.  DHS will consult with local federal land managers regarding the recommended methods to use for stabilization and erosion control (*e.g.*, coir logs, straw wattles) based on information specific to the impacted areas.

**Installation and Repair of Cattle Guards and Livestock Fencing**

41.     As part of DHS's Phase 2 remediation project work, DHS will repair or install cattleguards and livestock fencing where appropriate in the § 284 and § 2808 Project Areas. Repair and replacement of cattleguards and livestock fencing may include use of barbed wire. DHS commits not to use fencing that would preclude the passage of any ESA-listed species that is known to be present near the area of the proposed fencing to pass under or over the fencing.

**Improve Water Flow in Channels**

42.     As part of DHS's Phase 2 remediation project work, DHS will remove in-channel obstructions in the § 284 or § 2808 Project Areas that impede water flows.  DHS will consider alterations to in-channel hydrology and erosion control design to improve water flow in the § 284 or § 2808 Project Areas, such as removal of rip rap or concrete, on a location-by-location basis.  Any decisions by DHS to alter the water flow plans in the § 284 or § 2808 Project Areas

will be made in consultation with local federal land managers and hydrology experts after

evaluation of specific areas.  The State of California, the State of New Mexico, Sierra Club, and

Southern Border Communities Coalition shall have a meaningful opportunity to consult with

DHS about channel water flow projects as provided in Paragraph 56.

**Improve Water Drainage**

43.     As part of DHS's Phase 2 remediation project work, DHS agrees to install,

complete, or repair appropriate water drainage infrastructure (*e.g.*, culverts) in the § 284 and §

2808 Project Areas to improve water flow.  Decisions about implementation of specific water

drainage methods and techniques in the § 284 and § 2808 Project Areas will be made by DHS in

consultation with local federal land managers and hydrology experts.  The State of California,

the State of New Mexico, Sierra Club, and Southern Border Communities Coalition shall have a

meaningful opportunity to consult with DHS about water drainage projects as provided in

Paragraph 56.

**Improve Surface Water Flow Near Roads**

44.     As part of DHS's Phase 2 remediation project work, DHS agrees to improve

surface water flow near roads in § 284 and § 2808 Project Areas to avoid damage to the natural

surroundings.  Implementation of specific methods and techniques to improve surface water flow

in the § 284 and § 2808 Project Areas will be made by DHS in consultation with local federal

land managers and hydrology experts.  The State of California, the State of New Mexico, Sierra

Club, and Southern Border Communities Coalition shall have a meaningful opportunity to

consult with DHS about surface water flow projects near roads as provided in Paragraph 56.

**Cap Bollards and Pipes**

45.     To the extent there are remaining bollards and pipes that need to be capped after

the U.S. Army Corps of Engineers and its contractors complete the Phase 1 demobilization work,

DHS will agree to cap remaining bollards and pipes where necessary to prevent injuries to wildlife as part of its Phase 2 remediation project work in the § 284 and § 2808 Project Areas.

**Backfill Open Trenches**

46.     To the extent there are remaining open trenches after the U.S. Army Corps of Engineers and its contractors complete the Phase 1 demobilization work, DHS will appropriately fill any open trenches as part of its Phase 2 remediation project work in the § 284 and § 2808 Project Areas.

**Remediate Impacts to the Arizona Trail Head**

47.     As part of DHS's Phase 2 remediation project work, Defendants agree to consult with Sierra Club and Southern Border Communities Coalition about proposed projects to remediate the impacts of border barrier construction near border monument 102 and the southern end of Arizona National Scenic Trail.  Consultation will include DHS providing Sierra Club and Southern Border Communities Coalition with a meaningful opportunity to submit proposed remediation project ideas for this area.  DHS further agrees to provide Sierra Club and Southern Border Communities Coalition with any proposed remediation plans it develops for this area prior to implementing those plans.  Sierra Club and Southern Border Communities Coalition shall have a meaningful opportunity to provide comments and input prior to execution of any remediation plan for this area.

**Funding for Phase 3 Environmental Mitigation Projects**

48.     DHS agrees to allocate $45 million for Phase 3 environmental mitigation projects to offset or mitigate the impacts of border barrier construction in the § 284 and § 2808 Project Areas, subject to the availability of funds.  Funding for Phase 3 environmental mitigation projects shall come exclusively from DHS's fiscal year 2020 or 2021 barrier system appropriations as provided by the Department of Homeland Security Appropriations Act, 2020,

Pub L. No. 116-93, Div. D, § 209, 133 Stat. 2317, 2512 (2019) and the Department of Homeland

Security Appropriations Act, 2021, Pub L. No. 116-260, Div. F, § 210, 134 Stat. 1182, 1456-57

(2020), subject to the availability of those funds.  Defendants represent that such funding is

currently available and that they will take all reasonable steps to ensure that such funds remain

available to comply with this Agreement.  Funding for specific Phase 3 environmental mitigation

projects shall be allocated as set forth in paragraphs 49-55.

**Proctor Valley / Village 14 Purchase**

49.     DHS agrees to make a one-time payment to the State of California in the amount

of $25 million for the sole purpose of purchasing the Otay Ranch Village 14 property and

Planning Areas 16 and 19 (referred to collectively as "Village 14") located in the Proctor Valley

of California[6], subject to the availability of funds.  DHS will make the one-time payment to the

State of California, or an escrow agent designated by the State of California, no later than

November 1, 2023. Village 14 is approximately 1,291 acres and is located between the San

Diego National Wildlife Refuge, managed by the U.S. Fish and Wildlife Service, and the Rancho

Jamul Ecological Reserve, managed by the California Department of Fish and Wildlife.  The

State of California agrees that the $25 million payment from DHS shall be used solely and

exclusively for the purchase of Village 14.  The State of California agrees that, upon the State's

acquisition of Village 14, the property shall be placed in conservation status under the

management of the California Department of Fish and Wildlife.

50.     The State of California further agrees that, in the event the State of California is

unable to acquire ownership of the Village 14 property after DHS has sent the one-time $25

---

[6]     The San Diego County Assessor Parcel Numbers comprising the Village 14 are:  598-010-02-00; 598-020-04-00; 598-020-06-00; 598-021-02-00; 598-070-07-00; 598-070-09-00; 597-140-05-00; 597-150-07-00; 597-150-08-00; 597-150-12-00; 597-150-03-00; 597-150-13-00; 597-140-04-00; 597-020-06-00; 597-020-10-00; 597-190-23-00.

million payment, the State of California shall: (a) notify DHS of its inability to acquire

ownership of the Village 14 property by no later than April 15, 2024; and (b) refund the $25

million to DHS by no later than May 15, 2024, through an electronic funds transfer or other

appropriate means.

51.     In the event the State of California refunds the $25 million to DHS pursuant to

this agreement, DHS agrees to allocate the $25 million to other Phase 3 environmental

remediation projects located within the State of California to offset or mitigate the impacts of

border barrier construction in the § 284 and § 2808 Project Areas within California.

52.     DHS agrees to consult with appropriate officials from the State of California,

Sierra Club, Southern Border Communities Coalition, and within the U.S. Department of the

Interior, including the Carlsbad Office of the U.S. Fish and Wildlife Service (collectively "Phase

3 California Consultants"), to identify appropriate Phase 3 environmental mitigation projects to

offset or mitigate the impacts of border barrier construction in the § 284 and § 2808 Project

Areas within California.  DHS will provide the Phase 3 California Consultants with a meaningful

opportunity to submit proposed mitigation project ideas or locations, including consideration of

land acquisitions for conservation purposes in the Proctor Valley / Lower Otay Lakes area.  DHS

agrees not to oppose allocating any portion of the $25 million to a Phase 3 mitigation project in

California that is recommended by the U.S. Department of the Interior, provided the proposed

project is reasonably designed to offset or mitigate the impacts of border barrier construction in

the § 284 and § 2808 Project Areas within California, which include, but are not limited to,

impacts to the following species or their habitat: Peninsular bighorn sheep; coastal California

gnatcatcher; Quino checkerspot butterfly, Riverside fairy shrimp; San Diego fairy shrimp;

California burrowing owl, and the flat-tailed horned lizard.  DHS further agrees to provide the

Phase 3 California Consultants with any proposed plans for Phase 3 mitigation projects prior to

implementing those plans.  The Phase 3 California Consultants shall have a meaningful opportunity to provide comments and input prior to execution of any Phase 3 mitigation project in the State of California.

**Monitoring of Endangered and At-Risk Species**

53.     As part of its Phase 3 environmental mitigation work, DHS agrees to fund studies assessing the impacts of border barrier construction in the § 284 and § 2808 Project Areas on the Peninsular bighorn sheep, Sonoran desert pronghorn, Mexican gray wolf, jaguar, and ocelot. The cost of the monitoring studies of these species shall not exceed $1,100,000, of which $500,000 shall be allocated to an existing study of Peninsular bighorn sheep in California administered by the California Department of Fish and Wildlife.  Funding for the studies shall come exclusively from DHS's fiscal year 2020 or 2021 barrier system appropriations as provided by the Department of Homeland Security Appropriations Act, 2020, Pub L. No. 116-93, Div. D, § 209, 133 Stat. 2317, 2512 (2019) and the Department of Homeland Security Appropriations Act, 2021, Pub L. No. 116-260, Div. F, § 210, 134 Stat. 1182, 1456-57 (2020), subject to the availability of those funds.  Defendants represent that such funding is currently available and that they will take all reasonable steps to ensure that such funds remain available to comply with this Agreement.  The studies relating to the Sonoran desert pronghorn, Mexican gray wolf, jaguar, and ocelot will be conducted by sources procured or contracted by DHS with relevant experience and expertise for these types of studies, and include consideration of radio or satellite collaring. DHS agrees to consult with Sierra Club, Southern Border Communities Coalition, appropriate officials from California and New Mexico wildlife agencies, appropriate officials within the U.S. Department of the Interior, and non-governmental organizations performing similar studies of these species (collectively "Wildlife Study Consultants") about the implementation and execution of these studies.  Consultation will include DHS providing the Wildlife Study

Consultants with a meaningful opportunity to submit proposed plans and suggestions regarding the scope and design of any study.  DHS further agrees to provide the Wildlife Study Consultants with proposed study plan(s) prior to implementation.  The Wildlife Study Consultants shall have a meaningful opportunity to provide comments and input on the proposed study plan(s) prior to the start of any study.  The studies will be made available to the public upon completion.  With respect to the existing study of the Peninsular bighorn sheep, DHS agrees to make a one-time payment in the amount of $500,000, subject to the availability of funds, to the State of California by no later than November 1, 2023, for the sole purpose of funding the California Department of Fish and Wildlife's continued study of Peninsular bighorn sheep.  The California Department of Fish and Wildlife agrees provide the data from the study of the Peninsular bighorn sheep to the U.S. Fish and Wildlife Service, including digital data, annually by January 31 of each year as required by Native Endangered Species Recovery Permit ES-163017-2.

**Other Phase 3 Mitigation Projects**

54.     In addition to the Phase 3 funding allocations described in paragraphs 48-53, DHS agrees to allocate $18.9 million to other environmental mitigation projects that offset or mitigate the impacts of border barrier construction in the § 284 and § 2808 Project Areas.

55.     DHS agrees to consult with Sierra Club, Southern Border Communities Coalition, appropriate officials from California and New Mexico wildlife agencies and appropriate officials within the U.S. Department of the Interior (collectively "Phase 3 Mitigation Consultants") to identify appropriate environmental mitigation projects to undertake with the funding discussed in Paragraph 54.  DHS will provide the Phase 3 Mitigation Consultants with a meaningful opportunity to submit proposed mitigation project ideas or locations.  DHS agrees not to oppose allocating any portion of the $18.9 million set forth in Paragraph 54 to a Phase 3 mitigation project that is recommended by the U.S. Department of the Interior, provided the proposed

project offsets or mitigates the impacts of border barrier construction in the § 284 and § 2808 Project Areas.  DHS further agrees to provide the Phase 3 Mitigation Consultants with any proposed plans for Phase 3 mitigation projects prior to implementing those plans.  The Phase 3 Mitigation Consultants shall have a meaningful opportunity to provide comments and input prior to execution of any Phase 3 mitigation project.  Such projects shall, to the extent possible and subject to the consultation described in this paragraph, be selected and designed to offset or mitigate the impacts of border barrier construction across the § 284 and § 2808 Project Areas rather than focus on one or a few Project Areas.

**Consultation with Plaintiffs About Remediation and Mitigation Projects**

56.     DHS agrees to arrange bi-monthly video conferences or telephone calls with Sierra Club, Southern Border Communities Coalition, and appropriate officials from California and New Mexico to provide progress reports about Phase 2 and Phase 3 remediation and mitigation projects in the § 284 and § 2808 Project Areas.  DHS will provide descriptions of the work that is underway in the § 284 and § 2808 Project Areas, anticipated timelines for work expected to begin in the future, and respond to requests, questions, and input about the ongoing or upcoming remediation work.  In advance of each conference, DHS will provide updates and responses to any questions or inputs from previous conferences in writing, in order to facilitate meaningful consultation.

**Availability of Appropriations**

57.     In accordance with 31 U.S.C § 1341, 41 U.S.C. § 6301, and Federal law, Defendants' responsibility under this agreement is contingent upon the availability of appropriated funds.  Defendants represent that such funding is currently available and that they will take all reasonable steps to ensure that such funds remain available to comply with this

Agreement.  However, nothing in this this Agreement may be considered as implying that Congress will at a later date appropriate funds sufficient to meet any deficiencies.

58.     In the event that Defendants are unable to comply with their responsibilities due to a lack of appropriated funds, Defendants must notify Plaintiffs promptly.  Plaintiffs shall retain the right to reinstate proceedings pursuant to paragraph 73 of this agreement.

**Dismissal of Claims**

59.     Within 10 calendar days of the effective date of this Agreement, Plaintiffs will dismiss with prejudice the Lawsuits by having counsel file a Motion to Dismiss with Prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.  The Parties agree that any disputes relating to compliance with the terms of this Agreement shall be governed by Paragraph 73 of this Agreement.

**No Admission of Liability**

60.     This Agreement has been entered into by the Parties solely for the purposes of resolving disputed claims related to border barrier construction funded by (1) money transferred pursuant to section 8005 of the Department of Defense Appropriations Act of 2019 and 2020, and undertaken pursuant to 10 U.S.C. § 284; and (2) fiscal year 2015–2019 military construction funds made available pursuant to 10 U.S.C. § 2808, without further protracted legal proceedings and avoiding the expense and risk of further litigation.  Defendants deny liability as to each of the claims, motions, petitions, and requests that were raised, or that could have been raised, in the Lawsuits.  This Agreement does not constitute, and may not be construed as, a determination or an admission of a violation of any constitutional provision, statute, law, rule, regulation, policy, or contract by the Defendants.  Furthermore, none of the terms of this Agreement may be offered or received in evidence or in any way referred to in any civil, criminal, or administrative

action or proceeding other than proceedings permitted by law, if any, that may be necessary to consummate or enforce this Agreement.

**Release and Discharge**

61.     Plaintiffs, for themselves and their administrators, heirs, representatives, successors, or assigns, fully and forever waive, release and discharge the Defendants and their components, agents, employees and former employees, both in their official and their individual capacities, and the United States from any and all claims, demands, and causes of actions of every kind, nature or description, whether for monetary or equitable relief, and whether currently known or unknown, that Plaintiffs may have had, may now have, or may hereafter have arisen out of or in connection with border barrier construction funded by (1) money transferred pursuant to section 8005 of the Department Defense Appropriations Act of 2019 and 2020, and undertaken pursuant to 10 U.S.C. § 284; and (2) fiscal year 2015–2019 military construction funds made available pursuant to 10 U.S.C. § 2808.  This release shall not apply to (1) any claims Plaintiffs may assert against border barrier construction projects funded by other sources of funds, including funds appropriated by Congress to DHS, or (2) any dispute related to obligations set forth in this Agreement.

**Covenants Not to Sue or Commence Further Proceedings**

62.     Plaintiffs hereby covenant that they will not commence against the Defendants their components, agents, employees or former employees, either in their official or their individual capacities, or the United States any action, claim, suit, or administrative proceeding on account of any claim or cause of action that has been released or discharged by this Agreement, except as otherwise set forth in Paragraph 73 of this Agreement.

**Rule of Construction**

63.     This Agreement shall be considered a jointly drafted agreement and shall not be constructed against any party as the drafter.

**Integration**

64.     This Agreement and its Exhibits constitute the entire agreement and understanding between the Parties entered into in good faith, and no statement, representation, remark, agreement, or understanding, in oral or written form, that is not contained in this Agreement shall be enforced, recognized, or used to interpret this Agreement or its Exhibits. The Parties agree that any prior or contemporaneous representations or understandings not explicitly contained in this written Agreement, whether written or oral, are of no further legal or equitable force or effect.

**Severability**

65.     The provisions of this Agreement are severable.  Should any provision of this Agreement other than the provisions at paragraphs 49-52, for any reason, be deemed or held invalid or unenforceable, in whole or in part, by a court of law, said determination shall not affect any other provision of this Agreement.  If the provisions at paragraphs 49-52 are, for any reason, deemed or held invalid or unenforceable, in whole or in part, by a court of law, California reserves the right to exercise the terms set forth in paragraph 73 of this agreement.

**No Third Party Rights**

66.     This Agreement is not intended to create, and does not create, any third-party beneficiary rights or any other kind of right or privilege for any person, group, or entity.

**No Prior Assignment of Rights and Interests**

67.     Plaintiffs represent and warrant that they are the sole and lawful owners of all rights, titles, and interests in all claims and matters which they purport to release herein, and that they have not heretofore assigned or transferred, attempted to assign or transfer, or purported to assign or transfer any claim or matter released herein.

**Full Authority to Sign**

68.      The undersigned representatives of each party certify that they are fully authorized by the party or parties they represent to execute the Agreement on behalf of himself or herself, or on behalf of the party or entity on whose behalf he or she signs.

**Execution in Counterparts**

69.      This Agreement may be executed and delivered in counterparts.  Each counterpart, when executed, shall be considered one and the same instrument, which shall comprise the Agreement, which takes effect on the effective date of this Agreement.

**Modification and Amendment**

70.      This Agreement cannot be modified or amended except through a written instrument that specifically refers to this Agreement and that is signed by the Parties or their counsel.  No provision of this Agreement may be waived or altered except through a written waiver or amendment signed by the Parties or their counsel acting on their behalf.

**Binding Successors**

71.      This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, successors, assigns and personal representatives, including any persons, entities, departments or agencies succeeding to the interests or obligations of the Parties.

**Attorneys' Fees & Costs**

72.      The Parties agree that each party shall bear its own costs, expenses, and attorneys' fees associated with litigating the Lawsuits.

**Dispute Resolution**

73.      Plaintiffs may allege a breach of the terms and conditions of this Settlement Agreement only in the manner described as follows:

a.  Plaintiffs may elect to file a motion pursuant to Fed. R. Civ. P. 60(b)(6) seeking relief from the dismissal of the Lawsuits pursuant to Paragraph 59 of this Settlement Agreement.

b.  Prior to filing any such motion, the parties shall meet and confer in an attempt to resolve the dispute without the need for judicial intervention.  As part of the meet and confer process, counsel for Plaintiffs shall submit written notice alleging a breach of this Settlement Agreement to counsel for Defendants.  Such notice shall specify precisely the basis for the alleged breach, the provision(s) of this Agreement that allegedly has been breached, the facts and circumstances supporting such claim, and whether relief will be sought under Fed. R. Civ. P. 60(b)(6).  Plaintiffs shall not inform the Court of its allegation(s) at that time.  However, if Plaintiffs believe irreparable injury may occur absent immediate action ("in Emergency Circumstances") and if Defendants decline to preserve the status quo upon notice, Plaintiffs may immediately initiate proceedings before the court to preserve the status quo, provided the parties meet and confer before initiating any such proceedings.

c.  The notice of any alleged breach of this Settlement Agreement by Defendants must be submitted within sixty (60) days after Plaintiffs have, or should have had, knowledge of any alleged breach.  If Defendants fail to notify Plaintiffs of facts giving rise to a claim of breach of this Agreement during a regular conference as set forth in Paragraph 56, Plaintiffs shall not be deemed to have actual or constructive knowledge of such breach.  The notice of any alleged breach shall accordingly not be operative unless submitted to Defendants within sixty (60) days after Plaintiffs have, or should have had, knowledge of the alleged breach.

Any and all assertions of breach shall be forever waived if not asserted within the applicable limitations period.

d. Defendants shall have a period of forty-five (45) days after the receipt of such notice to take appropriate action to resolve the alleged claim.  However, as noted above in Paragraph 73(b), Plaintiffs may initiate court proceedings prior to expiration of Defendants' 45-day period for response in Emergency Circumstances.  In the event of any notice of breach, if requested to do so, Plaintiffs shall provide to Defendants any information and materials available to Plaintiffs that support the violation alleged in the notice.

e. If any assertion of breach by Plaintiffs is not resolved after consultation between the Parties' counsel within the forty-five (45) day period, or if, prior to the expiration of such forty-five (45) day period, counsel for Defendants advise counsel for Plaintiffs that no further action will be taken by Defendants, Plaintiffs may seek relief from the Court as set forth in Fed. R. Civ. P. 60(b)(6).  The 45-day period will not apply in Emergency Circumstances as set forth in this Paragraph.

f. Defendants' consent to the filing of a motion pursuant to Fed. R. Civ. P. 60(b)(6) shall not be deemed to waive any available defenses to the substance of such motion, including without limitation any and all jurisdictional defenses and any right or authority to contend that no breach of this Settlement Agreement has occurred, and Defendants otherwise reserve all available defenses to such motion, including without limitation any and all jurisdictional defenses and any right or authority to contend that no breach of this Settlement Agreement has occurred. Defendants' consent is not required for Plaintiffs to initiate court proceedings

under Fed. R. Civ. P. 60(b)(6), provided Plaintiffs have met and conferred as set forth in this Paragraph.

g.  Notwithstanding any motion filed pursuant to Fed. R. Civ. P. 60(b)(6), the Parties may continue to meet and confer in a good-faith attempt to resolve their dispute.

h.  This Settlement Agreement does not foreclose Plaintiffs from bringing any other measure to allege a breach by Defendants, but Defendants reserve the right to oppose such relief on any available ground, including without limitation any and all jurisdictional defenses and any right or authority to contend that no breach of this Settlement Agreement has occurred.

i.  Plaintiffs agree, however, that they will seek relief through the mechanisms defined in this section prior to seeking relief through any other measure and shall only seek relief through other measures should the Court deny a motion made by Plaintiffs pursuant to Fed. R. Civ. P. 60(b)(6) concerning the alleged breach for which Plaintiffs seek enforcement through other measures. This Settlement Agreement shall not be construed as Defendants conceding that any particular pleading or action by Plaintiffs is available.

**Effective Date**

74.    The effective date of this Agreement will be the date on which it is executed by all the undersigned Parties.  The Parties further agree that signature by electronic means shall have the same effect for all purposes as an ink-signed original agreement.

STATE OF CALIFORNIA
ROB BONTA
ATTORNEY GENERAL

By: Janelle M Smith

JANELLE M. SMITH
Deputy Attorney General

California Department of Justice
455 Golden Gate Ave, Suite 11000
San Francisco, CA  94102
Tel: (415) 510-3522
Fax: (415) 703-5843
Janelle.Smith@doj.ca.gov

STATE OF COLORADO
PHILIP J. WEISER
ATTORNEY GENERAL

By: _____

SHANNON W. STEVENSON
Solicitor General

Colorado Department of Law
1300 Broadway Street
Denver, CO  80203
Tel: (720) 703-0999
Shannon.Stevenson@coag.gov

STATE OF CONNECTICUT
WILLIAM TONG
ATTORNEY GENERAL


By: _____

JOSHUA PERRY
Solicitor General

Connecticut Office of the Attorney General
165 Capitol Ave
Hartford, CT 06106
Tel: (860) 808-5372
Fax: (860) 808-5387
Joshua.Perry@ct.gov

STATE OF DELAWARE
KATHLEEN JENNINGS
ATTORNEY GENERAL


By: _____

CHRISTIAN DOUGLAS WRIGHT
Deputy Attorney General

Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
Tel: (302) 683-8880
Christian.Wright@delaware.gov

STATE OF HAWAII
ANNE E. LOPEZ
ATTORNEY GENERAL

By: _____

ROBERT T. NAKATSUJI
Deputy Attorney General

Department of the Attorney General
425 Queen Street
Honolulu, HI  96813
Tel: (808) 586-1385
Fax: (808) 586-8116
Robert.T.Nakatsuji@hawaii.gov

STATE OF ILLINOIS
KWAME RAOUL
ATTORNEY GENERAL

By: _Sarah A. Hunger_

SARAH A. HUNGER
Deputy Solicitor General

Office of the Illinois Attorney General
100 West Randolph Street
Chicago, IL 60601
Tel: (312) 771-3885
Sarah.Hunger@ilag.gov

STATE OF MAINE
AARON M. FREY
ATTORNEY GENERAL

By: _____

JONATHAN R. BOLTON
Assistant Attorney General

Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
Tel: (207) 626-8800
Fax: (207) 287-3145
Jonathan.Bolton@maine.gov

STATE OF MARYLAND
ANTHONY G. BROWN
ATTORNEY GENERAL

By:

JEFFREY LUOMA
Assistant Attorney General

Office of the Attorney General
200 St. Paul Place, 20th Floor
Baltimore, MD 21202
Tel: (410) 576-6441
jluoma@oag.state.md.us

COMMONWEALTH OF MASSACHUSETTS
ANDREA JOY CAMPBELL
ATTORNEY GENERAL

By: _____

DAVID C. KRAVITZ
Deputy State Solicitor

Office of Attorney General Andrea Joy Campbell
One Ashburton Place, 20th Floor
Boston, MA  02108
Tel: (617) 963-2427
david.kravitz@mass.gov

PEOPLE OF MICHIGAN
DANA NESSEL
ATTORNEY GENERAL

By: _B Eric Restuccia_

B. ERIC RESTUCCIA
Deputy Solicitor General

Michigan Department of Attorney General
P.O. Box 30212
Lansing, MI  48909
Tel: (517) 335-7656
RestucciaE@michigan.gov

STATE OF MINNESOTA
KEITH ELLISON
ATTORNEY GENERAL

By:
JACOB CAMPION
Assistant Attorney General

Office of Minnesota Attorney General
445 Minnesota Street, Suite 1400
St. Paul, MN 55101-2131
Tel: (651) 757-1459
Fax: (651) 297-4348
jacob.campion@ag.state.mn.us

AARON D. FORD
Attorney General

By: /s/ Heidi Parry Stern
    Heidi Parry Stern (Bar. No. 8873)
    Solicitor General
    Office of the Nevada Attorney General
    555 E. Washington Ave., Ste. 3900
    Las Vegas, NV 89101
    HStern@ag.nv.gov

STATE OF NEW JERSEY
MATTHEW J. PLATKIN
ATTORNEY GENERAL

By: _____

JEREMY FEIGENBAUM
Assistant Attorney General

New Jersey Attorney General's Office
25 Market Street
Trenton, NJ  08625
Tel: (609) 376-3235
Jeremy.Feigenbaum@njoag.gov

STATE OF NEW MEXICO
RAÚL TORREZ
ATTORNEY GENERAL

By: _____     6 July 23

NICHOLAS M. SYDOW
Deputy Solicitor General

New Mexico Office of the Attorney General
201 Third St. NW, Suite 300
Albuquerque, NM  87102
Tel: (505) 717-3571
nsydow@nmag.gov

STATE OF NEW YORK
LETITIA JAMES
ATTORNEY GENERAL
ERIC R. HAREN
Special Counsel to the Solicitor General

By: _____

GAVIN G. MCCABE
Assistant Attorney General
Environmental Protection Bureau
New York State Office of Attorney General
28 Liberty Street, 19th Floor
New York, NY  10005
Tel: (212) 416-8469
Fax: (212) 416-6007
Gavin.McCabe@ag.ny.gov

STATE OF OREGON
ELLEN ROSENBLUM
ATTORNEY GENERAL

By: _____

JEANNE NICOLE DEFEVER
Senior Assistant Attorney General

Oregon Department of Justice
100 SW Market Street
Portland, OR  97201
Tel: (971) 673-1880
Fax: (971) 673-5000
Nicole.Defever@doj.state.or.us

STATE OF RHODE ISLAND
PETER F. NERONHA
ATTORNEY GENERAL


By: _Keith Hoffmann_

KEITH D. HOFFMANN
Special Assistant Attorney General

Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI  02903
Tel: (401) 274-4400
Fax: (401) 222-3016
khoffmann@riag.ri.gov

STATE OF VERMONT
CHARITY R. CLARK
ATTORNEY GENERAL

By:

BENJAMIN D. BATTLES
Assistant Attorney General

Vermont Attorney General's Office
109 State Street
Montpelier, VT  05609
Tel: (802) 793-8537
benjamin.battles@vermont.gov

For Plaintiffs Sierra Club and Southern Border Communities Coalition:

Dated:  July 13, 2023

Cecillia D. Wang
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Telephone:  (415) 343-0775
Email:  cwang@aclu.org

Sanjay Narayan*
Gloria D. Smith*
SIERRA CLUB ENVIRONMENTAL LAW PROGRAM
2101 Webster Street, Suite 1300
Oakland, CA 94612

Ankit Jain**
SIERRA CLUB ENVIRONMENTAL LAW PROGRAM
50 F Street NW, Washington, D.C. 20001
ankit.jain@sierraclub.org
(202) 495-3023

David Donatti**
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF TEXAS
P.O. Box 8306
Houston, TX 77288

Michelle (Minju) Y. Cho
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111

Hina Shamsi**
Omar C. Jadwat**
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004

*Attorneys for Plaintiff Sierra Club only
**Admitted *pro hac vice* in these cases

For the Federal Defendants:


BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

_____
ANDREW I. WARDEN
Senior Trial Counsel (IN Bar No. 23840-49)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:   (202) 616-5084
Fax:    (202) 616-8470
E-Mail:  Andrew.Warden@usdoj.gov


Dated:   July 10, 2023